# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ETTA CALHOUN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 18-1022 |
| v. ) | |
| ) | Judge Cathy Bissoon |
| INVENTION SUBMISSION ) | |
| CORPORATION, *et al.*, ) | Magistrate Judge Robert C. Mitchell |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

This case was referred to United States Magistrate Judge Robert C. Mitchell for pretrial proceedings in accordance with the Magistrates Act, 28 U.S.C. §§ 636(b)(l)(A) and (B), and Local Rules 72.C and 72.G.

Pending before the Court are two motions to dismiss Plaintiff's putative Amended Class Action Complaint ("Amended Complaint," Doc. 25) filed by two groups of Defendants.

The first Motion to Dismiss (Doc. 29), which also contains a Motion to Strike, was filed by Defendants Invention Submission Corporation d/b/a InventHelp ("InventHelp"), Western Invention Submission Corporation d/b/a Western InventHelp ("Western InventHelp"), Technosystems Consolidated Corporation, Technosystems Service Corporation, Universal Payment Corporation, Intromark Incorporated ("Intromark"), and Robert J. Susa (collectively, the "InventHelp Defendants").

The second Motion to Dismiss (Doc. 38) was filed by Defendants Thomas Frost, Thomas Frost, P.A., Kyle Fletcher, the Law Office of Kyle Fletcher, P.C., and Kaufhold & Dix (collectively, the "Attorney Defendants").

1

On January 3, 2019, the Magistrate Judge issued a Report and Recommendation (the "Report," Doc. 48) recommending that both Motions to Dismiss be granted in part and denied in part.[1]

On January 17, 2019, the InventHelp Defendants filed timely Objections to the Report ("InventHelp Objections," Doc. 49), as did Defendants Thomas Frost and Thomas Frost, P.A. ("Frost Defendants" or "Frost" and "Frost Objections," Doc. 50). Plaintiff timely opposed both the InventHelp Objections ("Opposition to InventHelp Objections," Doc. 51) and the Frost Objections ("Opposition to Frost Objections," Doc. 52) on January 31, 2019. On March 22, 2019, the Frost Defendants filed a Motion to Leave to Supplement their Objections (Doc. 53), which the Court denied on March 26, 2019 (Order Denying Defendant's Motion for Leave, Doc. 54) after finding that the Frost Defendants had waived the argument raised in their proposed supplement concerning Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") (id.).

This Court has conducted a *de novo* review of the pleadings and documents in this case, including the Report, Defendants' Objections and Plaintiff's Oppositions. For the reasons that follow, the Court will adopt the Report in part, modify the Report in part and reject the Report in part.

---

[1] Specifically, the Report recommended that the InventHelp Defendants' Motion to Dismiss be:
- granted to dismiss Robert J. Susa without prejudice;
- granted with respect to Counts II, VII, VIII, and IX of the Amended Complaint;
- denied with respect to Counts I, III, IV, V, and VI of the Amended Complaint; and
- denied as to the Motion to Strike.

And that the Attorney Defendants' Motion to Dismiss be:
- granted to dismiss Kyle A. Fletcher, the Law Office of Kyle Fletcher, P.C., and Kaufhold & Dix;
- denied as to Thomas Frost and Thomas Frost, P.A.;
- granted as to Count II of the Amended Complaint; and
- denied as to Counts IV, V, VI, VII, VIII, and IX such that those Counts remain against Thomas Frost and Thomas Frost, P.A.

As the Court writes only for the parties, the Court will assume the readers' familiarity with the relevant factual and procedural background, as stated in the Report, and proceed directly to Defendants' objections to the Report.[2]

**INVENTHELP OBJECTIONS**

The InventHelp Defendants raise several objections to the Report, arguing that: (1) this action is time-barred; (2) Plaintiff has failed to set forth sufficient facts to establish a claim under the American Inventors Protection Act, 35 U.S.C. § 297 ("AIPA"); (3) Plaintiff has failed to set forth sufficient facts to establish a claim under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"); and (4) the Report misapplied the gist of the action doctrine and the parol evidence rule in concluding that Plaintiff's fraud and negligent misrepresentation claims are sufficiently pleaded.[3] The Court will address these objections in turn.

1. *Whether Plaintiff's claims are time-barred*

As to the first objection, the Report correctly concludes that the discovery rule applies to the statutes of limitations for Plaintiff's claims. (Report 27 (citing Niiaryee v. Davison Design & Dev., Inc., 2018 WL 1072439, at *3 (W.D. Pa. Feb. 27, 2018)); id. at 37.) The Report, however, did not address the operative accrual dates for certain claims. The Court writes here to clarify

---

[2] For reference, the nine Counts in the Amended Complaint are as follows: Count I (AIPA claims against the InventHelp Defendants); Count II (UTPCPL claims against all Defendants); Count III (TCPA claims against the InventHelp Defendants); Count IV (fraud claims against all Defendants); Count V (negligent misrepresentation claims against all Defendants); Count VI (breach of contract claims against all Defendants); Count VII (breach of the duty of good faith and fair dealing claims against all Defendants); Count VIII (unjust enrichment claims against all Defendants); Count IX (breach of fiduciary duty claims against all Defendants).
[3] The InventHelp Defendants also object to the Report's recommendation to deny their motion to strike Plaintiff's references to Defendants' allegedly "criminal" activities. The Court agrees with the Report that such allegations are relevant to Plaintiff's theories of liability and will adopt the Report's recommendation to deny that motion at this stage of the proceedings.

those dates and, in so doing, finds that Plaintiff's claims related to the omission of AIPA-required disclosures are time-barred, contrary to the Report.

Plaintiff alleges three types of AIPA claims: (1) claims stemming from the omission of information required to be disclosed under 35 U.S.C. § 297(a) prior to execution of an invention promotion contract; (2) claims stemming from the inaccuracy of information that Defendants affirmatively communicated, contrary to the disclosure requirements under 35 U.S.C. § 297(a);[4] and (3) claims under 35 U.S.C. § 297(b) for material misrepresentations and omissions beyond the required disclosures of 35 U.S.C. § 297(a).

---

[4] The AIPA explicitly requires that:

> An invention promoter shall have a duty to disclose the following information to a customer in writing, prior to entering into a contract for invention promotion services:
>
> (1) the total number of inventions evaluated by the invention promoter for commercial potential in the past 5 years, as well as the number of those inventions that received positive evaluations, and the number of those inventions that received negative evaluations;
>
> (2) the total number of customers who have contracted with the invention promoter in the past 5 years, not including customers who have purchased trade show services, research, advertising, or other nonmarketing services from the invention promoter, or who have defaulted in their payment to the invention promoter;
>
> (3) the total number of customers known by the invention promoter to have received a net financial profit as a direct result of the invention promotion services provided by such invention promoter;
>
> (4) the total number of customers known by the invention promoter to have received license agreements for their inventions as a direct result of the invention promotion services provided by such invention promoter; and
>
> (5) the names and addresses of all previous invention promotion companies with which the invention promoter or its officers have collectively or individually been affiliated in the previous 10 years.

35 U.S.C. § 297(a). The Court will refer to these disclosures as "AIPA-required" or "AIPA-mandated" figures.

The first category of claims is time-barred. Specifically, Plaintiff's claims concerning the InventHelp Defendants' failure to disclose AIPA- required information are time-barred because a reasonably diligent person would have known that the law required such disclosures at the time Plaintiff entered into her contracts with Defendants, starting the limitations clock at the time the agreements were executed. As this Court wrote in Niiaryee:

> "The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises." Haugh v. Allstate Ins. Co., 322 F.3d 227, 231 (3d Cir. 2003) (citing Crouse v. Cyclops Indus., 745 A.2d 606, 611 (2000)). However, under Pennsylvania's discovery rule, the statute of limitations does not accrue "until the injured party discovers or reasonably should discover that he [or she] has been injured and that his [or her] injury has been caused by another party's conduct." Fine v. Checcio, 870 A.2d 850, 859 (Pa. 2005).

Niiaryee, 2018 WL 1072439, at * 3. In applying this rule, the Court "must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he [or she] has been injured and by what cause." Id. (quoting Fine, 870 A.2d at 858). Where "reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law." Id. (quoting Fine, 870 A.2d at 858-59).

Plaintiff entered into an agreement with InventHelp on February 18, 2012, a second agreement with InventHelp on August 2, 2013, and an agreement with Intromark also on August 2, 2013. (See Report 4-7.) Plaintiff alleges that the disclosures she received from the InventHelp Defendants during this time omitted certain AIPA-required information, such as the number of customers who received licensing agreements. (Report 24.) As a matter of law, Plaintiff cannot claim that any omissions of AIPA-required information were undiscoverable through the exercise of due diligence; the omission of such information would have been immediately apparent from the face of Defendants' disclosure documents. Plaintiff's injury from

the lack of such disclosure was similarly immediately discoverable, as the statute provides for either "actual damages" or "statutory damages in a sum of not more than $5,000." 35 U.S.C. §§ 297(b)(1)(A), 297(b)(1)(B). As a result, a plaintiff exercising reasonable diligence would have known of her right to sue for at least $5,000 in damages at the moment she executed her contracts with an invention promoter, following the promoter's failure to make AIPA-required disclosures.

The limitations period for Plaintiff's AIPA-omission claims began to run when Plaintiff signed the agreements for which Defendants failed to make AIPA-required disclosures in 2012 and 2013. Plaintiff executed these agreements prior to June 1, 2014 (the date four years prior to Plaintiff's initiation of the instant suit). These claims are barred by the four-year statute of limitations applicable to the AIPA. See 28 U.S.C. § 1658(a) (AIPA claims are subject to the federal four-year "catch-all" statute of limitations). The court will dismiss Plaintiff's AIPA-omission claims as time-barred.

The second and third categories of claims—claims based on inaccurate affirmative disclosures and omissions beyond the requirements of the AIPA—as well as Plaintiff's breach of contract claims, are not time-barred, as the Report correctly concludes. Plaintiff alleges that she believed InventHelp was not defrauding her and was fulfilling its contractual and statutory duties as of March 8, 2016, (Amended Complaint ¶ 114). (Report 28, 37.) There is no indication on the face of the Amended Complaint that, prior to June 1, 2014, Plaintiff should have been aware that Defendants' affirmative disclosures were false, that they had omitted material information (beyond information the AIPA explicitly required to be disclosed), or that Defendants were in

6

breach of their contractual obligations.[5] Accordingly, at this stage of the proceedings, the Court cannot conclude that these claims accrued prior to June 1, 2014.

Although the limitations period for Plaintiff's tort claims is only two years, 42 Pa. C.S. § 5524(7), there is likewise no indication on the face of the Amended Complaint that Plaintiff should have been aware of Defendants' alleged scheme prior to June 1, 2016. The Court thus agrees with the Report's conclusion on this point as well, and cannot conclude that these claims are time-barred. (Report 28-29.)

2. *Whether Plaintiff's AIPA claims are sufficient under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)")*

In their initial briefing, as well as in their objections to the Report, the InventHelp Defendants have raised no arguments concerning the sufficiency of Plaintiff's allegations under Rule 9(b). (See generally InventHelp Defendants' Brief in Support of Motion to Dismiss, Doc. 30; InventHelp Objections.) Those arguments are therefore waived at this stage. Anspach v. City of Philadelphia, 503 F.3d 256, 258 n.1 (3d Cir. 2007) ("Absent compelling circumstances not present here, failure to raise an argument in one's opening brief waives it."). Accordingly, the Court will analyze the sufficiency of Plaintiff's AIPA claim under the familiar Rule 12(b)(6) standard.[6]

---

[5] Neither is it apparent from the face of the Amended Complaint, as Defendants allege, that the deliverables under the first agreement were fully completed by April 2012, such that the first breach of contract claim accrued in April 2012, (InventHelp Objections 15); that the second breach of contract claim accrued in April 2014, under a similar theory (id. at 15-16); or that the third breach of contract claim is unavailable because the agreement imposed no obligations on Intromark (id. at 16). The Court finds that such matters are best addressed at the summary judgment stage, when the Court can better evaluate the factual circumstances surrounding the contract. See Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 429-30 (Pa. 2001); Masciantonio v. SWEPI LP, 2014 WL 4441214, at *6 n.5 (M.D. Pa. Sept. 9, 2014).

[6] In deciding whether to grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must take as true all of the well-pleaded facts in the complaint, Fowler v. UPMC Shadyside, 578 F.3d 201, 211 (3d Cir. 2009), and determine whether these facts raise a reasonable expectation that discovery will reveal the evidence necessary to prove each element

7

The InventHelp Defendants argue that Plaintiff's AIPA allegations are insufficient because Plaintiff merely states in general terms that Defendants' disclosures were inaccurate, without explaining how the numbers were wrong. (InventHelp Objections 5.)[7] As to affirmatively false representations of the AIPA-required figures, the InventHelp Defendants argue that Plaintiff's allegations rely on asserted inconsistencies among the various numbers they reported to Plaintiff at different times and via different legal entities. (Id. at 4-5.) The InventHelp Defendants contend that these figures are mutually consistent. (Id.) Upon close examination of the Amended Complaint, the Court agrees with the InventHelp Defendants that Plaintiff's allegations, construed favorably toward Plaintiff, fail to imply any inconsistencies among the numbers reported.

Specifically, any apparent inconsistencies are resolved by considering the InventHelp disclosures apart from the Western InventHelp disclosures. Plaintiff's assertion of inconsistency does not alter the Court's ability to add up the numbers she alleges and conclude otherwise. Insofar as Plaintiff alleges an AIPA claim based on affirmative misrepresentation of the AIPA-mandated disclosures, Plaintiff's raw assertion that these figures are inaccurate is insufficient to state a claim. She has provided no basis on which the Court could infer that these figures are mutually inconsistent or inaccurate and has failed to raise a reasonable expectation that discovery will reveal those numbers to be wrong.[8] As a result, the Court will grant Defendants' motion to

---

of plaintiff's claims, Thompson v. Real Estate Mortgage Network, 748 F.3d 142, 147 (3d Cir. 2014).

[7] As the Court already has concluded that Plaintiff's AIPA-omission claims are time-barred, the Court will address only the remaining categories of Plaintiff's AIPA claims: those concerning affirmatively false representations of AIPA-required figures and those concerning materially false statements or omissions apart from the mandated disclosures.

[8] Plaintiff alleges also that numbers represented to other potential class members were inconsistent with the numbers she received. (Id. at ¶¶ 96-99.) None of these allegations

dismiss Plaintiff's AIPA claim to the extent that claim is based on affirmative misrepresentations of AIPA-required figures.

As to materially false statements or omissions apart from the mandated disclosures, Plaintiff alleges specific misrepresentations that suffice under the Rule 12(b)(6) standard. For example, she alleges that the InventHelp Defendants represented to her that her idea was mailed to twenty listed "Data Bank" companies. (Amended Complaint ¶ 100.) Contrary to that representation, Plaintiff alleges that

> [s]ome of the companies [on the list] do not exist and are purposefully misspelled to resemble actual existing companies that have no relationship with InventHelp (for example, listing the company as 'Inc.' instead of 'LLC'). Other "Data Bank" companies claim to have no relationship with InventHelp, and have not signed any confidentiality agreements, or any agreements whatsoever, with InventHelp. Upon information and belief, some of the companies are sham companies and/or are affiliated with InventHelp.

(Id. at ¶ 101.) Such allegations are sufficiently specific to state a "material false or fraudulent statement or representation . . . by that invention promoter." 35 U.S.C. § 297(b)(1).

In sum, Plaintiff has sufficiently pleaded an AIPA claim based on materially false representations (or omissions) unrelated to the AIPA-mandated disclosures, but she has not sufficiently pleaded an AIPA claim related to the AIPA-mandated disclosures.

3. *Whether Plaintiff's TCPA claim is sufficient under Rule 12(b)(6)*

The InventHelp Defendants argue that Plaintiff's allegations concerning her TCPA claim are insufficient under Rule 12(b)(6) because her allegations are conclusory as to the use of an Automatic Telephone Dialing System ("ATDS"), a required element under Plaintiff's theory of liability. District Courts within the Third Circuit and elsewhere generally have found that bare allegations concerning the use of an ATDS are not enough to state a TCPA claim. Compare Zemel v. CSC Holdings LLC, 2018 LEXIS U.S. Dist. 201917, at *8-*9 (D.N.J. Nov. 29, 2018) (collecting cases and finding that a plaintiff met his burden by pleading specific facts that imply

the use of an ATDS), with Douek v. Bank of Am. Corp., 2017 U.S. Dist. LEXIS 141785, at *5 (D.N.J. Aug. 28, 2017) (collecting cases and finding that a plaintiff failed to meet his burden by failing to allege specific facts implying the use of an ATDS).

This case resembles others in which a plaintiff's allegations were found to be lacking. Plaintiff's specific allegations concerning Defendants' use of an ATDS are minimal: "Upon information and belief, Defendants use automatic telephone dialing systems and/or other prohibited means to call Class Plaintiffs' cell phones after being told to cease and desist." (Amended Complaint ¶ 169). There are no other facts alleged in the Complaint that would suggest the use of an ATDS, particularly given the prior relationship Plaintiff alleges she had with the InventHelp Defendants. While Plaintiff does allege harassing and unwanted contact over the phone from Defendants, (id. at ¶¶ 27, 116, 172), none of her allegations imply to any degree that the people who called her used an ATDS to do so.

Accordingly, the Court will reject the Report's recommendation as to this claim and grant Defendants' motion to dismiss this claim.

4. *Whether the gist of the action doctrine and the parol evidence rule bar Plaintiff's tort claims*

The InventHelp Defendants' final objection concerns whether Plaintiff's contracts with Defendants prevent her from stating fraud and negligent misrepresentation claims. Defendants argue that the Court cannot consider their verbal representations, which concern subjects addressed in Plaintiff's contracts with Defendants, as evidence that Plaintiff's claims sound in tort or as evidence to show tortious conduct. (InventHelp Objections 9-10, 10 n.11.) Specifically, they argue that their three contracts with Plaintiff were fully integrated written agreements, necessitating the exclusion of their verbal representations under the parol evidence

rule and also the dismissal of Plaintiff's tort claims under the gist of the action doctrine. (Id. at 9, 9 n.10, 10, 10 n.11.)

Plaintiff responds that the contracts themselves contain misrepresentations of fact, and that the terms of the contracts she signed were misrepresented to her when she executed them (that is, fraud in the execution of those agreements).[9] (Opposition to InventHelp Objections 12-14.)

Pennsylvania law permits parol evidence where a plaintiff pleads fraud in the execution of a contract. Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 206 (Pa. 2007) ("the parol evidence rule is not applied to a fraud in the execution of a contract claim"). However, a plaintiff cannot use parol evidence to establish that she was fraudulently induced to sign a contract where the contract's representations are contrary to a defendant's alleged pre-contractual misrepresentations. Id. at 207 ("a party cannot be said to have justifiably relied on prior representations that he [or she] has superseded and disclaimed through a fully integrated written contract" (citing Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 439 (Pa. 2004))).

Plaintiff's Amended Complaint alleges both that "Defendants . . . fraudulently misrepresent the actual content of the contracts . . . thereby tricking Class Plaintiffs into signing documents that state different terms and conditions than those represented by Defendants," (e.g., Amended Complaint ¶ 20), and that Defendants make fraudulent pre-contractual representations that are contradicted by the terms of the contracts themselves, (e.g., id. at ¶ 26).

---

[9] Plaintiff also responds that Defendants' argument is internally inconsistent because she signed two fully integrated agreements simultaneously, creating ambiguity about which document would be the full agreement. The Court need not address this argument, as it ultimately concludes that Plaintiff's claims are allowed on other grounds.

At this juncture, without greater clarity on the specific nature of the fraud-in-the-execution allegations—that is, sufficient detail to allow the Court to understand what terms and conditions were falsely represented as being contained in the contract—such claims cannot be separated from Plaintiff's fraud-in-the-inducement claims, which allege that the contract terms contradict pre-contractual representations.

As a result, the Court agrees with the Report's conclusion that the parol evidence rule does not bar Plaintiff's tort claims at the motion to dismiss stage under the Rule 12(b)(6) standard; the Court may revisit the viability of Plaintiff's tort claims at a later stage if Plaintiff fails to adduce evidence to support the specific nature of her claims. The Court agrees also with the Report's analysis and conclusion concerning the gist of the action: the primary nature of the duty that Plaintiff alleges Defendants violated is a general societal duty not to defraud others, which exists apart from any contract. (Report 34-35.) As a result, the gist of the action doctrine does not bar Plaintiff's tort claims.

**FROST OBJECTIONS**

The Frost Defendants object to the Report on two grounds: (1) Plaintiff's allegations are insufficient to give rise to specific personal jurisdiction over the Frost Defendants in Pennsylvania; and (2) all of Plaintiff's claims against the Frost Defendants should be dismissed under Rule 12(b)(6). The Court will now address each of these objections.

*1. Whether the Court has specific personal jurisdiction over the Frost Defendants*

The Report finds two independent bases for the exercise of specific personal jurisdiction over the Frost Defendants: their purposefully directed activities at residents of Pennsylvania and their role as knowing co-conspirators in a Pennsylvania conspiracy (pursuant to the absent co-conspirator doctrine). At present, the Court finds that the latter ground is sufficient for the

exercise of specific personal jurisdiction over the Frost Defendants, and so will address only that ground.

The Court agrees with the Report that there is personal jurisdiction over the Frost Defendants under the absent co-conspirator doctrine. As quoted in the Report, "[u]nder Pennsylvania law, personal jurisdiction [over] a non-forum co-conspirator may be asserted only where a plaintiff demonstrates that substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that the non-forum co-conspirator was aware or should have been aware of those acts." Santana Prods. Inc. v. Bobrick Washroom Equip., 14 F. Supp. 2d 710, 718 (M.D. Pa. 1998).

Plaintiff alleges that the Frost Defendants had an agreement with InventHelp, a Pennsylvania corporation with its principal place of business in Pittsburgh, concerning the referral of customers for patent services as part of a scheme to defraud InventHelp's customers; that substantial acts in furtherance of that conspiracy, such as InventHelp's referral of customers for patent services, took place in Pittsburgh;[10] and that the Frost Defendants were aware of those Pennsylvania-based acts. (Report 19-21.)

The Frost Defendants object that Plaintiff's allegations fail to establish that they had knowledge of the Pennsylvania activities in furtherance of the alleged conspiracy. (Frost Objections 8-11.) However, a review of the Amended Complaint reveals this argument to be without merit once reasonable inferences are drawn in Plaintiff's favor. (See, e.g., Amended Complaint ¶ 79 ("Mr. Frost had first-hand knowledge of hundreds of customers referred by

---

[10] Plaintiff alleges both that that "Frost had first-hand knowledge of hundreds of customers referred by InventHelp," (Amended Complaint ¶ 79), and that InventHelp has its principal place of business in Pittsburgh, Pennsylvania, (id. at ¶ 32). Drawing all reasonable inferences in Plaintiff's favor, the Court infers that InventHelp's referrals and other core business activities took place in Pittsburgh, Pennsylvania.

InventHelp that did not receive utility patents and complained that InventHelp is a fraud."); id at ¶ 76 ("Defendant Frost receives all or a substantial portion of his business from Defendants."); id at ¶ 7 ("Defendant InventHelp is the conduit through which all Class Plaintiffs are defrauded.").) As the Report correctly concludes, Plaintiff's allegations are sufficient at this stage for the Court to exercise specific personal jurisdiction over the Frost Defendants under the absent co-conspirator doctrine.

   *2. Whether Plaintiff has sufficiently pleaded tort and breach of contract claims against the Frost Defendants under Rule 12(b)(6)*

While the Frost Objections allude to Rule 9(b) without citation, (Frost Objections 5 ("a plaintiff who claims fraud must plead with particularity those facts that support their claim")), the Frost Defendants raised no such arguments in the Brief Supporting their Motion to Dismiss, (Doc. 39). Entertaining such an argument now would circumvent the general requirement that a party must raise any arguments it intends to make in its opening brief supporting a motion. See Anspach, 503 F.3d at 258 n.1. Further, in this case, it would circumvent the purpose of the Magistrates Act, 28 U.S.C. §§ 636(b)(l)(A) and (B), and Local Rules 72.C and 72.G, by requiring this Court to consider a ground not presented to the Magistrate Judge and which Plaintiff has had no opportunity to address in her prior briefs. As with the InventHelp Objections, the Court deems any argument concerning Rule 9(b) waived.

The Court will now address each category of claim alleged against the Frost Defendants under the 12(b)(6) pleading standard.

*a. Plaintiff has sufficiently pleaded fraud and negligent misrepresentation claims against the Frost Defendants*

The Frost Defendants argue that the Report failed to address their distinct argument that there were no factual allegations as to fraud and negligent misrepresentation against them specifically. However, the Report notes that Plaintiff makes her relevant allegations against "all Defendants," (Report 32), and these allegations include an allegation of a conspiracy involving all Defendants, (Amended Complaint ¶ 30). Thus, Plaintiff responds to the Frost Objections that "co-conspirators can be held liable for the torts of one another, and an independent stand-alone claim for civil conspiracy need not be alleged in the complaint to do so." (Opposition to Frost Objections 4 (citing WhiteSand Research, LLC v. Sehn, 2018 WL 2728847, at *3-*4 (Pa. Super. Ct. June 7, 2018)).) The Court agrees with Plaintiff and with the Report, and will not dismiss these claims against the Frost Defendants at this time.

*b. Plaintiff has sufficiently pleaded breach of contract against the Frost Defendants as an alternative theory of liability*

The Frost Defendants argue that Plaintiff cannot simultaneously plead that there was no contract between themselves and Plaintiff, and that they breached a contract with Plaintiff. (Frost Objections 13.) To the contrary, Plaintiff may do just that, particularly where there is ambiguity as to the existence of a contractual relationship. Fed. R. Civ. P. 8(d)(3) ("Inconsistent Claims or Defenses. A party may state as many separate claims or defenses as it has, regardless of consistency."). The Report correctly concludes that the allegations in the Amended Complaint are sufficient to show that there was a contract between Plaintiff and the Frost Defendants, (Report 38), even though it is also true that Plaintiff pleads that there was no such contract as an alternate theory of liability (given the possibility that this Court will find that no contract existed between the relevant parties).

15

*c. Plaintiff cannot plead breach of the duty of good faith and fair dealing as a standalone claim, but has pleaded this claim as part of her breach of contract claim*

Under Pennsylvania law, the duty of good faith and fair dealing arises under the law of contracts and when a plaintiff alleges a breach of that duty, such a claim is subsumed by the plaintiff's breach of contract claim; put simply, breach of the duty of good faith and fair dealing cannot exist as a standalone claim. Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013) (citing Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank, 901 A.2d 1248, 1253 (Pa. Super. Ct. 2002) and LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 392 (Pa. Super. Ct. 2008)). For this reason, the Court will dismiss Plaintiff's standalone claim as to breach of this duty, but will consider the relevant allegations as a component of her breach of her contract claim. See Davis v. Wells Fargo, 824 F.3d 333, 352 (3d Cir. 2016) (plaintiff's breach of the covenant of good faith and fair dealing "claim should be dismissed and his arguments concerning bad faith should be addressed in connection with his surviving breach of contract claim").

The Frost Defendants object that the Amended Complaint contains no allegation that they breached any duty owed to her, including the duty of good faith and fair dealing. (Frost Objections 14.) As a component of her breach of contract claim, Plaintiff must allege dishonesty "in fact in the conduct or transaction concerned" apart from a breach of an explicit contract term in order to sufficiently state a breach of the duty of good faith and fair dealing. Heritage Surveyors & Eng'rs, Inc., 801 A.2d at 1253 (quoting Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank & Trust Co., 560 A.2d 151, 153 (Pa. Super. Ct. 1989)). The Amended Complaint alleges that, apart from various violations of explicit contract terms, all Defendants (including the Frost Defendants) falsely "represented to Plaintiff and Class Members that they would make best efforts" to comply with their contractual obligations. (Amended Complaint ¶ 206.) Such an

allegation sufficiently states a breach of the covenant of good faith and fair dealing implied by the parties' alleged contract.

Therefore, contrary to the Report's recommendation to allow this claim to stand alone, the Court will dismiss this claim and consider it as a sufficiently pleaded component of Plaintiff's breach of contract claim.

> *d. Plaintiff has sufficiently pleaded unjust enrichment and breach of fiduciary duty against the Frost Defendants as alternative theories of liability*

The Court finds that Plaintiff has sufficiently pleaded unjust enrichment and breach of fiduciary duty in the alternative to her breach of contract theory against the Frost Defendants, and will adopt the Report's analysis and conclusions as to these claims. The Frost Defendants object that, despite the Report's findings, Plaintiff failed to allege the elements of an unjust enrichment claim or a breach of fiduciary duty claim against them. (Frost Objections 14-15.)

Under Pennsylvania law, the elements of unjust enrichment are: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999).

As to unjust enrichment, Plaintiff has sufficiently pleaded that claim against the Frost Defendants by alleging or clearly implying:[11] (1) that she paid money, which was placed in

---

[11] Plaintiff's response in opposition to the relevant motion to dismiss includes, as attachments, several documents that are cited in her Amended Complaint, (e.g., Amended Complaint ¶ 74), and that are integral to her allegations. These include the Preliminary Patentability Search and Opinion ("PPSO") sent from Thomas Frost, P.A. to Plaintiff on April 5, 2012 (Exhibit A to Plaintiff's Response in Opposition, hereinafter "PPSO," Doc. 43-2), the Basic Information Package Agreement between Western InventHelp and Plaintiff, executed on February 18, 2012 (Exhibit B to Plaintiff's Response in Opposition, hereinafter "BIPA," Doc. 43-3), and the PPSO Referral Request executed on February 18, 2012 (Exhibit C to Plaintiff's Response in

escrow for the Frost Defendants for the patent services ultimately provided by the Frost Defendants, (PPSO Referral Request); (2) that the Frost Defendant received this money upon the delivery of the PPSO, (see id.); and (3) that the Frost Defendants signed a PPSO that was "nothing but boilerplate drivel, meant to appear professional," that was "purposefully confusing so that unsuspecting inventors will proceed with expensive 'Submission Services' with InventHelp," and that was part of scheme to defraud Plaintiff. (Amended Complaint ¶¶ 77, 78.) At this early stage in the litigation, these allegations are sufficient to state a claim for unjust enrichment, in the alternative to Plaintiff's breach of contract theory.

Plaintiff likewise has sufficiently alleged a breach of fiduciary duty under Pennsylvania law. The elements of breach of fiduciary duty are: (1) the existence of a fiduciary relationship; "[(2)] that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; [(3)] that the plaintiff suffered injury; and [(4)] that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring[ing] about plaintiff's injuries." Conquest v. WMC Mortgage Corp., 247 F. Supp. 3d 618, 633 (E.D. Pa. 2017) (quoting Dinger v. Allfirst Fin., Inc., 82 F. App'x 261, 265 (3d Cir. 2003)).

Plaintiff has sufficiently pleaded that claim against the Frost Defendants by alleging: (1) that Mr. Frost acted as her patent attorney, (id. at ¶ 75); (2) that as her patent attorney, he had a fiduciary duty to disclose InventHelp's fraudulent scheme because he knew of customers'

---

Opposition, hereinafter "PPSO Referral Request," Doc. 43-4). There is no dispute as to the authenticity of these documents. The Court will consider the contents of these documents as components of Plaintiff's allegations without converting Defendants' motions into motions for summary judgment. See In Re Burlington Coat Factories Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) ("[A] document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment.")

complaints about that scheme, yet he failed to disclose the nature of the scheme (id. at ¶¶ 79, 82); (3) that she suffered an injury in the form of her expenses for services that were never provided, (id. at ¶ 162); and (4) that the Frost Defendants' failure to disclose the nature of the scheme to her was a real factor contributing to her injury, (see id. at ¶¶ 82, 114, 115, 117).

The Court thus finds that the Frost Defendants' objections to the Report's conclusions lack merit.

* * *

Accordingly, for the reasons stated above,[12] the Report (Doc. 48), is **ADOPTED** in part, **MODIFIED** in part, and **REJECTED** in part. Defendants' Motions to Dismiss are **GRANTED** in part and **DENIED** in part as follows:

The InventHelp Defendants' Motion to Dismiss (Doc. 29) is:

- **GRANTED** to dismiss Robert J. Susa as a party;

- **GRANTED** with respect to Counts II, III, VII, VIII, and IX of the Amended Complaint;

- **GRANTED** with respect to Count I insofar as that Count rests on AIPA-mandated disclosures;

- **DENIED** with respect to the remainder of Count I, as well as Counts IV, V and VI of the Amended Complaint; and

- **DENIED** as to the Motion to Strike.

And, the Attorney Defendants' Motion to Dismiss (Doc. 38) is:

- **GRANTED** to dismiss Kyle A. Fletcher, the Law Office of Kyle Fletcher, P.C., and Kaufhold & Dix as parties;

---

[12] In addition, to the extent that no objections were raised concerning conclusions in the Report as to standing, Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and the sufficiency of Plaintiff's allegations concerning breach of fiduciary duty against several Defendants, the Court agrees with and adopts those conclusions.

19

- **DENIED** as to Thomas Frost and Thomas Frost, P.A.;

- **GRANTED** as to Counts II and VII of the Amended Complaint; and

- **DENIED** as to Counts IV, V, VI, VIII and IX such that those Counts remain against Thomas Frost and Thomas Frost, P.A.

All of the above dismissals are without prejudice. If Plaintiff wishes to file a second amended complaint to address any of the pleading deficiencies identified herein, she may do so on or before **April 30, 2019**. This will be Plaintiff's last and final opportunity to amend her complaint. See generally Taylor v. Pilewski, 2008 WL 4861446, at *3 (W.D. Pa. Nov. 7, 2008) ("[the c]ourt need not provide endless opportunities" for amendment, especially where such opportunity already has been enjoyed); Houser v. Postmaster Gen. of U.S., 573 F. App'x 141 (3d Cir. 2014) (affirming dismissal without leave to amend, based on court's finding that "[it] would be inequitable to require [the d]efendant, who already once ha[d] exhaustively and successfully defended [the p]laintiff's grievances, to respond to a continuous stream of formal and informal attempted amendments"). If Plaintiff does not file a second amended complaint by April 30, 2019, all of the claims dismissed above will be dismissed with prejudice.

IT IS SO ORDERED.

April 9, 2019                                s\Cathy Bissoon
                                             Cathy Bissoon
                                             United States District Judge

cc (via ECF email notification):

All Counsel of Record