# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ETTA CALHOUN, SHERRY PORTER, and CYNTHIA GRAY, on behalf of themselves and all other persons similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>INVENTION SUBMISSION CORPORATION D/B/A INVENTHELP, TECHNOSYSTEMS CONSOLIDATED CORP., TECHNOSYSTEMS SERVICE CORP., WESTERN INVENTION SUBMISSION CORP., UNIVERSAL PAYMENT CORPORATION, INTROMARK INCORPORATED, ROBERT J. SUSA, THOMAS FROST, P.A., THOMAS FROST, JOHN DOE COMPANIES 1-10, JOHN DOE INDIVIDUALS 1-10,<br><br>      Defendants. | C.A. No. 2:18-cv-01022<br><br>CLASS ACTION<br><br>**DECLARATION OF JULIE PECHERSKY PLITT IN SUPPORT OF RESCHEDULING RULE 16 TELEPHONIC INITIAL CASE MANAGEMENT CONFERENCE** |

I, Julie Pechersky Plitt declare, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a Partner of the law firm of Oxman Law Group ("Oxman"), counsel of record for Plaintiffs Etta Calhoun, Sherry Porter, and Cynthia Gray ("*Calhoun* Plaintiffs") in the above captioned litigation.

2. I submit this Declaration in support of Plaintiffs' motion to reschedule to the earliest practicable time the Rule 16 Telephonic Case Management Conference that was originally scheduled for May 21, 2020, then adjourned to June 8, 2020, and now further adjourned to July 8, 2020. I have personal knowledge of the facts in this Declaration.

3. Class representation has become big business in the legal profession. Firms compete for lead counsel status and the potential for large fees. As a result of its extremely competitive nature, class action representation has spawned certain practices which are unscrupulous, or questionable at best. These often do not inure to the benefit of the class members.

4. This action is a tutorial on how a large class action firm can insinuate itself into an existing action with the sole intention of turning a quick buck. On behalf of my clients, and in the interests of promoting the best interests of the putative class members, the *Calhoun* Plaintiffs respectfully request that this Court not allow this to happen here.

5. On May 19, 2020, just two days before the originally scheduled *Calhoun* Rule 16 Conference, counsel for Plaintiffs in *Austin v. Invention Submission Corp., et al.*, 2:19-cv-01396, filed a "Motion for Leave to Attend Rule 16 Conference," (the "*Austin* Motion"). Therein, counsel in *Austin* represented that they and InventHelp had agreed to participate in a June 4, 2020 mediation and that "Berger Montague invites *Calhoun-Miclaus* Plaintiffs' counsel to attend and participate in the mediation . . . should they desire to do so. Berger Montague has met and conferred with Defendants on this point who state they have no objection." (*Austin* Motion ¶ 12).

6. The *Austin* Plaintiffs represented that they and InventHelp had already engaged a Philadelphia mediator Diane M. Welsh, to conduct the mediation. (*Austin* Motion ¶ 7). The *Austin* Plaintiffs' counsel are located in Philadelphia. The InventHelp Defendants' lead counsel practiced for many years in the Philadelphia office of Fox Rothschild.

7. The *Calhoun* Plaintiffs' counsel had absolutely no role in the selection or engagement of that mediator.

8. Prior to their participation in the June 4 mediation, *Calhoun* Plaintiffs had serious misgivings about the integrity and neutrality of that process.

9. To wit, counsel for the *Austin* Plaintiffs and InventHelp engaged in a course of conduct giving rise to an inference of collusion, including

- A meeting between Berger Montague, K & L Gates, and InventHelp principal Robert J. Susa three months *before* filing the *Austin* Complaint*;*

- Filing a seemingly custom-crafted Complaint that omitted Robert J. Susa as a named Defendant, even though the pertinent statute provides for Mr. Susa's strict personal liability;

- Arranging, *ex parte*, a last-minute mediation on the eve of discovery in the *Calhoun* Action and then 'generously' inviting counsel for the *Calhoun* Plaintiffs to attend.

10. Despite this, counsel for the *Calhoun* Plaintiffs agreed to participate, in good faith, in the interests of moving the case forward.

11. The *Calhoun* Plaintiffs' counsel attended the June 4, 2020 mediation.

12. The June 4 mediation was not productive as to *Calhoun* and the InventHelp Defendants.

13. Both *Calhoun* and *Austin* assert violations of the American Inventors Protection Act of 1999, 35 U.S.C. § 297 ("AIPA"). But, the *Calhoun* case names nine (9) defendants, including InventHelp principal Mr. Susa, and *Austin* only names two (2). All nine *Calhoun* defendants have survived two rounds of dismissal motions.

14. The AIPA prohibits two types of malfeasance on the part of companies like InventHelp. Subsection (a) requires detailed disclosures of certain data as to the firms' customers, including the number of customers who have obtained licensing agreements, among other things ("Disclosure Violations"). Subsection (b) prohibits "false and fraudulent" representations ("Representation Violations"). The *Calhoun* action alleges both Disclosure Violations and Representation Violations. The *Austin* action alleges only Representation Violations.

15. In September 2017, I was approached by a potential plaintiff concerned with InventHelp's fraudulent conduct. Oxman then began a lengthy and intensive preliminary investigation to determine whether InventHelp was engaging in fraud and otherwise actionable behavior, and to determine whether such malfeasance was occurring on a systemic, company-wide basis.

16. On June 1, 2018 Oxman filed the *Calhoun* complaint.

17. At some point shortly thereafter, a seemingly informational "Alert" was posted on the website, Classaction.org, entitled, "*InventHelp Hit with Class Lawsuits Over Invention Promotion Scam.*"

18. Attached to this "Alert" was the *Calhoun* Complaint and the "Alert" quoted language from the Complaint verbatim. Attached to this Declaration as **Exhibit A** is a true and correct copy of a March 14, 2019 screenshot entitled, "*InventHelp Hit with Class Lawsuits Over Invention Promotion Scam.*"

19. The "Alert" contains the directive, "<u>To learn more about the lawsuits and how you can get involved, simply fill out the form on this page,</u>" and elsewhere states, "Fill out the form on this page and tell us what happened to you.  One of the attorneys handling <u>this investigation</u> may then reach out to you directly."

20. As it turns out, the "Alert" is a client solicitation for Berger Montague.  However, it nowhere identifies that it is an advertisement on behalf of Berger Montague.  Instead, it posts the *Calhoun* Complaint and quotes extensively from it.  When I discovered the posting I had no idea that it was in any way connected to Berger Montague.

21. The solicitation violates Pennsylvania Rule of Professional Conduct Section 7.2(i), which states:  "All advertisements and written communications shall disclose the geographic location, by city or town, of the office in which the lawyer or lawyers who will actually perform the services advertised principally practice law.  If the office location is outside the city or town, the county in which the office is located must be disclosed."

22. The solicitation does not disclose <u>the manner</u> in which Classaction.org is compensated by Berger for posting this advertisement.

23. The solicitation thus also runs afoul of Pennsylvania Rule of Professional Conduct 7.2(k), which directs that "A lawyer shall not, directly or indirectly (whether through an advertising cooperative or otherwise), pay all or part of the costs of an advertisement by a lawyer not in the same firm or by any for-profit entity other than the lawyer's firm, unless the advertisement discloses the name and principal office address of each lawyer or law firm involved in paying for the advertisement and, if any lawyer or law firm will receive referrals from the advertisement, the circumstances under which referrals will be made and the basis and criteria on which the referral system operates."

24. In early 2019 I filled out the form provided on the InventHelp solicitation on the Classaction.org website using my personal email address. At that point, I had no idea that it was a solicitation on behalf of Berger Montague.

25. On April 9, 2019 I received an email from Berger Montague responding to the form and offering a "free consultation." At that point, the Classaction.org solicitation quoting from and attaching the *Calhoun* Complaint remained online.

26. I called the number provided in Berger Montague's email and spoke with associate Devona Thomas, who stated that she was assigned to the case. I posed numerous questions about the *Calhoun* Action, including explicitly referencing Plaintiff Etta Calhoun's "Word of God Bedding," and at no point did Ms. Thomas disclose that Berger Montague was not representing the *Calhoun* Plaintiffs and that Berger Montague in fact had not filed any action against InventHelp whatsoever.

27. According to the *Austin* Motion, Berger attended "an in-person settlement conference at Defendants' counsel's offices in Pittsburgh PA on August 9, 2019 . . . that was also attended by Mr. Robert Susa, President of InventHelp." (*Austin* Motion ¶ 6).

28. As of that date, August 9, 2019, Berger had not filed any action and the solicitation on Classaction.org that attached the *Calhoun* Complaint remained online collecting potential plaintiffs.

29. On or about October 25, 2019, Berger Montague filed the *Austin* Complaint. The Complaint did not name Mr. Susa as a Defendant. This is curious to say the least, given that the American Inventors Protection Act provides for strict *personal liability* of "the officers, directors, or partners" of invention promotion companies found in violation of the Act. 35 U.S.C. § 297(b)(1).

30. The *Austin* Complaint did not name Universal Payment Corporation, the "financing arm" of InventHelp, as a Defendant. This is curious to say the least, given the integral part that entity plays in InventHelp's malfeasance.

31. The *Austin* Complaint did not name Technosystems Consolidated Corporation, the InventHelp Defendants' parent company, as a Defendant. This is curious to say the least, given that it is a potentially deep-pocket Defendant.

32. The *Austin* Complaint did not name the patent attorney Thomas Frost Defendants. This is curious to say the least, given that Mr. Frost was an indispensable part of the fraud, and his deposition will almost certainly give rise to key evidence.

33. Immediately after filing *Austin* on October 25, 2019, Berger and Classaction.org revised the advertisement, removing the *Calhoun* Complaint link and quotes, and replacing them with the *Austin* Complaint and new quotes from that action. Attached hereto as **Exhibit B** is a true and correct copy of a screenshot of the new solicitation, printed on April 1, 2020. That new advertisement still does not comport with the requirements of the Pennsylvania Rules of Professional Conduct because it does not identify that it is soliciting clients on behalf of Berger Montague and it does not disclose the manner in which it is compensated by Berger Montague, although it does attach the *Austin* Complaint and remove the *Calhoun* Complaint.

34. On or about October 29, 2019 I spoke with Messrs. Carson and Kahana about their copy-cat action. I took contemporaneous notes during that conversation, which I retained. They told me that Berger Montague met with InventHelp President Robert Susa during the summer. I was taken aback and deeply unimpressed by their unethical tactics,

inferior work product, and that Mr. Carson was not at all conversant with the most basic facts about his own case.

35. According to my notes taken during that call, Shanon Carson told me that Berger began investigating a potential action against InventHelp in February 2019. Peter Kahana told me that he had been referred an InventHelp client around that time and was examining the issues when *Calhoun* "appeared on the docket." I did not find these statements credible in part because I knew Berger had been soliciting clients via the Classaction.org advertisement quoting from the *Calhoun* Complaint. Contrary to his representations to me on the October 29, 2019 call, Mr. Carson now claims that Berger began investigating *Austin* in the "late summer/early fall of 2018." (*Austin* Motion ¶ 21).

36. On January 15, 2020, the InventHelp Defendants filed a motion for sanctions against Oxman Law, requesting a Court Order demanding removal of a website describing the lawsuit launched by Oxman. (*See* ECF Nos. 75, 76). Curiously, the InventHelp Defendants did not make a corresponding motion against Berger Montague, even though the *Austin* case had been filed by that point and the language on Berger's solicitation on Classaction.org was virtually identical to that on Oxman's website. This is particularly noteworthy because the Berger Classaction.org InventHelp solicitation is extremely-well optimized and is likely viewed by at least as many people as the Oxman InventHelp website, thus collecting lots of potential plaintiffs. InventHelp moved against Oxman, but not Berger.

37. On April 1, 2020, the *Calhoun* Plaintiffs filed a motion for consolidation and for appointment as interim lead counsel. The papers submitted in support of that motion attached the misleading Classaction.org advertisement and unmasked Berger Montague's deceptive solicitation in violation of the Pennsylvania Rules of Professional Conduct.

38. After the April 1 filing, in a tacit acknowledgement that its solicitations ran afoul of the Pennsylvania Disciplinary Rules, Berger again revised the solicitation on Classaction.org, *for the very first time* inserting the language, "**The information submitted on this page will be forwarded to Berger Montague who has sponsored this investigation**." However, the advertisement still does not disclose "the name and principal office address of each lawyer or law firm involved in paying for the advertisement and, if any lawyer or law firm will receive referrals from the advertisement, the circumstances under which referrals will be made and the basis and criteria on which the referral system operates." Pa.R.Prof.C. 7.2(k). A true and correct copy of a May 19, 2020 screenshot of that advertisement is attached hereto as **Exhibit C.**

39. Following several rounds of negotiations, on May 14, 2020, parties in the *Calhoun* Action filed a joint Rule 26(f) Planning Meeting Report.

40. On May 14, 2020, the *Calhoun* parties filed a joint Stipulation Selecting ADR Process. (ECF No. 115). That Stipulation states, "The parties have not agreed upon a neutral at this time . . . . However, the parties will continue to work diligently to identify an agreed-upon neutral and will advise the Court once the parties have come to an agreement." That Stipulation is attached hereto as **Exhibit D**.

41. A Telephonic Case Management Conference in *Calhoun* was scheduled for May 21, 2020 in accordance with the Initial Local Rule 16.1 Scheduling Order entered on April 23, 2020. (ECF No. 110).

42. The first time Berger Montague informed Oxman Law of their intention to file a "motion to attend" the May 21 Conference in the *Calhoun* Action was *8:50 a.m.* the morning of May 19, 2020. A true and correct copy of Berger's May 19, 2020 email is attached hereto

as **Exhibit E**.  In the email, counsel for the *Austin* Plaintiffs vaguely asserted that they had "information to share with you and the Court about the litigation" – without providing further explanation – and asked the *Calhoun* Plaintiffs to respond by no later than *10:30 a.m.* whether they consented to or did not oppose the *Austin* Plaintiffs' request.  *Id.*  Berger filed the *Austin* Plaintiffs' "Motion to Attend Rule 16 Conference" that same day at *11:48 a.m.  See* ECF No. 116.  It was only upon reading their motion papers that the *Calhoun* Plaintiffs first learned of Berger's and InventHelp's settlement-related maneuverings.

43. By Memorandum Order dated May 28, 2020, Judge Bissoon adopted the Report and Recommendation of Magistrate Judge Patricia L. Dodge and **DISMISSED WITH PREJUDICE** the *Austin* Action's claims against Intromark Incorporated and Technosystems Service Corporation.  Thus, the only two Defendants in that action are InventHelp and Western InventHelp.  By contrast, there are nine (9) named Defendants in the *Calhoun* Action (including Robert Susa, Intromark and Technosystems Services), all of which moved to dismiss, and all of which remain in the case by Decisions and Orders of the Court.

44. Despite misgivings about the integrity and neutrality of the process, counsel for the *Calhoun* Plaintiffs attended and participated in good faith in the June 4, 2020 mediation.

45. Counsel for the *Calhoun* Plaintiffs had no role whatsoever in choosing the mediator and/or evaluating the mediator's impartiality because counsel for InventHelp and *Austin* had engaged the mediator and set the date, "inviting" the *Calhoun* Plaintiffs' counsel to attend at the last minute.

46. The *Austin* parties filed a Joint Status Report on June 5, 2020 averring that in their view, "the parties worked in good faith through the mediator and exchanged proposals

for settlement but were not able to reach a settlement," and that they had agreed to reconvene on Thursday July 2, 2020.

47. The *Calhoun* Plaintiffs and Defendants reached an impasse in the mediation, and *Calhoun* counsel <u>unequivocally will not take part</u> in the follow-up July 2 session.

48. In accordance with Section 2.9 and Appendix A of the ADR Policies and Procedures of the U.S. District Court for the Western District of Pennsylvania, the *Calhoun* Plaintiffs plan to serve and file in due course a motion for sanctions for failure to engage in mediation in good faith.

49. In accordance with the Stipulation Selecting ADR Process filed by the parties in *Calhoun*, **Exhibit D** hereto, the *Calhoun* Plaintiffs and Defendants "have not agreed upon a neutral at this time."

50. The *Calhoun* Plaintiffs respectfully request that the Court reschedule the Telephonic Case Management Conference in *Calhoun* at its earliest convenience so that the parties may commence formal discovery.

51. I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Briarcliff Manor, New York
        June 9, 2020

<u>/s/ Julie Pechersky Plitt</u>
Julie Pechersky Plitt
