IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Carla Austin and Nil Leone, individually and on behalf of all others similarly situated,<br><br>                  Plaintiffs,<br><br>    v.<br><br>Invention Submission Corp. d/b/a InventHelp, Western Invention Submission Corp. d/b/a Western InventHelp, Intromark Incorporated, and Technosystems Service Corporation,<br><br>                  Defendants. | No. 2:19-CV-01396<br><br>Judge Cathy Bissoon<br><br>Magistrate Judge Patricia L. Dodge |

### *AUSTIN* PLAINTIFFS' RESPONSE TO MOTION
### TO RESCHEDULE INITIAL CASE MANAGEMENT CONFERENCE

The *Austin* Plaintiffs, through their counsel Berger Montague ("BMPC"), respectfully submit this response to the motion filed by attorney Julie Plitt on behalf of the *Calhoun* Plaintiffs asking to reschedule the Rule 16 Telephonic Initial Case Management Conference ("CMC") scheduled for July 8, 2020. The date for the CMC was confirmed after Ms. Plitt stated that she did not oppose postponing the CMC. *See* Exhibit A (Ms. Plitt's June 5, 2020 email, redacted for mediation privilege[1], stating "I do not oppose putting off Monday's call with Judge Dodge."). Two business days later, Ms. Plitt filed this motion without meeting and conferring with the *Austin* Plaintiffs or Defendants. While the *Austin* Plaintiffs are available at any time set by the Court, there is no good cause to change the current schedule. To the contrary, Ms. Plitt's motion reveals

---

[1] *See* 42 Pa.C.S.A. § 5949 (governing confidential mediation communications and documents). In addition, the parties all signed a Confidentiality Agreement regarding their ADR process and mediation. The *Austin* Plaintiffs intend to comply with this statutory privilege and the Confidentiality Agreement.

that she is acting against the interests of the putative class members by trying to weaponize the ADR process in order to elevate herself to lead counsel status; derail the parties' ADR process; and engage in false and malicious attacks against the other counsel in the litigation as well as, stunningly, the mediator, retired federal Magistrate Judge Diane Welsh, who served honorably in the Eastern District of Pennsylvania from 1994 to 2005, and who has been employed as a mediator by JAMS since that time.[2]

BMPC is a pioneer in the use of class actions in the United States and has prosecuted hundreds of class actions, obtaining excellent results (well over $30 billion) for its clients and the classes they have represented, including in this Court.[3] BMPC employs over 120 people in offices throughout the United States and is regularly appointed by federal courts as lead or co-lead counsel in complex litigation. BMPC and its attorneys have rightly garnered over the past 50 years a nationwide reputation for professional integrity and ethical conduct. BMPC is no stranger to working with co-counsel. In this case, BMPC has tried mightily to cooperate with Ms. Plitt for the benefit of the proposed class members. However, these efforts have certainly not been reciprocated. Ms. Plitt's uncooperative tactics have operated to the detriment of the proposed class members, and, on that basis, the Court should not deem her qualified for a lead counsel position.

For example, Ms. Plitt failed to meet and confer with the parties before filing this scheduling motion – from which *her own co-counsel*, Kirby McInerney – ("KM") – is notably absent and did not join.

Against current world events, when attorneys need more than ever to act civilly toward one another, Ms. Plitt's vituperative attacks on the integrity of the undersigned counsel (with over 80 years collectively of class action experience), defense counsel, and the Hon. Diane M. Welsh

---

[2] Judge Welsh's biography is attached hereto as Exhibit B.
[3] BMPC's resume is attached hereto as Exhibit C.

(Ret.), are not well taken.[4] The Court should not allow Ms. Plitt's false statements to derail the ADR process. The second mediation date remains scheduled for July 2. Judge Welsh has been consulted and is willing to conduct the Zoom mediation, and the *Austin* Plaintiffs and InventHelp desire to move forward with the mediation. Ms. Plitt has offered no credible reason to disrupt this process, overseen by a well-respected retired federal Magistrate Judge whose credentials and integrity are impeccable, particularly because any settlement reached would ultimately be subject to scrutiny and approval by this Court.

If the Court has any reservations, however, the *Austin* Plaintiffs respectfully request that the Court designate instead one of its Magistrate Judges to either conduct or monitor the parties' settlement discussions. The parties can proceed on July 2 using Zoom if that date is amenable to the Court or can proceed on another date as needed. Judge Welsh has been consulted and is amenable to this. While it would be a regrettable consequence of Ms. Plitt's conduct, we recognize that substituting or adding a current judge of the Western District of Pennsylvania to oversee the mediation process going forward is within the Court's discretion.

### A. BMPC Included Ms. Plitt In All Facets Of The Mediation

BMPC assembled all of the emails from the time InventHelp agreed to the mediation to the present between BMPC and Ms. Plitt (and her co-counsel), and they demonstrate conclusively that BMPC has been inclusive, open, and transparent at all times. Many of these emails are subject to the statutory mediation privilege and/or the parties' Confidentiality Agreement, but they are available to be produced to the Court *in camera* upon request and with the agreement of the parties.

---

[4] On June 10, 2020, one day after this motion was filed, Ms. Plitt, *again acting without KM*, served on the parties a Notice of Intent To File Motion For Sanctions, with an accompanying signed declaration. These documents contain yet more wildly false statements, including but not limited to ridiculous allegations against the Hon. Diane Welsh (Ret.), that are disrespectful and inexcusable. The *Austin* Plaintiffs and BMPC reserve all rights with respect to these statements.

3

This record proves that after the Court rescheduled the initial *Calhoun* conference from May 21, 2020 to June 8, 2020 (to accommodate the first day of mediation), the undersigned counsel had several calls with Ms. Plitt's co-counsel at KM (with whom BMPC has successfully and cooperatively co-counseled on other class action matters), to discuss the mediation. KM conveyed BMPC's proposals to Ms. Plitt, and following these calls, Ms. Plitt agreed to participate in the mediation. While Ms. Plitt did not select the mediator, she and KM were welcomed into the ADR process. Subsequently, *Calhoun* counsel, including Ms. Plitt: (a) reviewed and approved the ADR Confidentiality Agreement before it was executed by Ms. Plitt on May 27, 2020; (b) received and had the opportunity to comment and participate with respect to numerous versions of draft settlement term sheets before they were communicated to Defendants; (c) received all information and documents that were in the possession of the *Austin* Plaintiffs, which had been provided by Defendants; (d) spoke with BMPC multiple times regarding strategy; (e) were made aware that *Austin* Plaintiffs' had previously furnished a first set of proposed ADR Discovery on Defendants; and (f) prepared and served a mediation statement (with KM) upon Judge Welsh and InventHelp counsel, and received copies of all parties' mediation statements.[5] In addition, all Plaintiffs' counsel received a set of documents furnished by InventHelp on June 2, 2020 that were produced under the Confidentiality Agreement and mediation privilege.

BMPC conferred with their accounting consulting expert who is a CPA with over 40 years of experience about certain financial documents contained within the InventHelp production of June 2d, and on a subsequent telephone call, shared the opinions of that consultant with *Calhoun* counsel, and offered them the opportunity to speak with the consultant, but they did not. *Austin*

---

[5] On June 1, 2020, the undersigned counsel submitted to Ms. Plitt a proposed joint mediation statement for her consideration and mark-up, but Ms. Plitt stated her preference to file a separate mediation statement solely on behalf of the *Calhoun* class, again demonstrating her preference not to cooperate.

counsel also worked on June 3, 2020 to prepare and serve an additional set of comprehensive requests for sworn financial information from InventHelp and its owner Robert Susa, to which *Calhoun* counsel was asked but did not see any need to provide input or edits.

The first mediation session on June 4, 2020 proceeded by Zoom for approximately eleven hours and was a productive use of time that made progress but did not result in a settlement – a routine occurrence for a first day of mediation in a complex case such as this one. At the conclusion of the session, a second session was scheduled for July 2, 2020 (ECF No. 118), which date, as detailed below, was chosen *to accommodate Ms. Plitt's schedule* and her inability to mediate on earlier dates offered by Judge Welsh.

During the mediation, BMPC and KM worked cooperatively to fashion (and having Judge Welsh present to defense counsel), at least two iterations of proposed settlement demand terms. These term sheets were approved by all Plaintiffs' Counsel including Ms. Plitt before they were delivered to Defendants.

### B.     Ms. Plitt's Motion And Declaration Contain False Statements

Ms. Plitt's brief and declaration (and served sanctions motion that has not yet been filed), now bizarrely claim that BMPC, K&L Gates, and Judge Welsh are engaged in a conspiracy to enter a collusive settlement agreement. There is no conspiracy, and Ms. Plitt's motions are unhinged from reality. The claim that BMPC has tried to exclude Ms. Plitt is demonstrably false, when, at every turn (and as dozens of emails reflect), BMPC tried to cooperate with Ms. Plitt. In fact, even right after the filing of *Austin*, on October 28, 2019, BMPC reached out to Ms. Plitt, and on November 1, 2019, offered her a leadership role in the case by sending her a proposed written co-counsel agreement. This overture was summarily rejected by Ms. Plitt.

It speaks volumes that Ms. Plitt withheld this pertinent history from the Court. Worse, Ms. Plitt likewise withheld  all along that she had long ago contacted InventHelp and, unbeknownst to

5

BMPC, tried unsuccessfully to settle the entire litigation *including* the *Austin* matter -- a fact that has only come to light in InventHelp's brief filed today.

### 1. The Mediation And All Interactions With InventHelp Have Been At Arms' Length

#### a. The Parties Exchanged Relevant Information Prior to Mediation

Ms. Plitt's assertion that the mediation has been conducted without the benefit of discovery[6] is false. As Ms. Plitt is well aware, BMPC served ADR-related discovery that, among other things, included comprehensive requests for information that would allow Plaintiffs to test Defendants' ability to pay settlement funds, and comprehensive requests related to the class composition and InventHelp's practices. With Ms. Plitt's knowledge and consent, the undersigned counsel sought detailed financial statements on June 3, 2020, in addition to the original ADR Discovery propounded by *Austin* Plaintiffs' counsel on April 21, 2020. Furthermore, the Joint Status Report filed the day after the first mediation session stated that "the parties made sufficient progress with the help of the mediator such that they agreed: (a) on the production of additional information by InventHelp to Plaintiffs' Counsel within the next ten (10) business days; and (b) to reconvene following that production to continue the mediation…on July 2, 2020." *Calhoun*, ECF No. 118.[7] These requests show that Ms. Plitt's claim that BMPC would settle the case without pertinent information is false. Also, if Ms. Plitt believed the parties lacked sufficient information to mediate, the proper avenue is to draft and serve supplemental ADR-related discovery requests,

---

[6] Memorandum In Support of Rescheduling Motion, *Calhoun* ECF No. 121 at 2, 9.
[7] There is an important balancing that must be taken into account in cases that involve "inability to pay" arguments as it may be important not to waste what little resources might be available on unnecessary formal discovery when those resources might be better spent directly on a class settlement, in order to benefit the settlement class members.

which Ms. Plitt has never suggested. In fact, it is BMPC, working with their CPA consultant, drafted and served appropriate financial discovery on the individual defendants that Ms. Plitt sued.

### b. There Is No Collusion

Ms. Plitt's allegations of collusion are specious. Ms. Plitt engages in various *ad hominem* attacks on the parties and the mediator that are fabricated for one purpose, to be appointed as lead counsel. In fact, early mediations serve the interests of class members in numerous respects. *See, e.g.*, *In re SFBC Int'l Inc.*, 310 F. App'x 556, 558 (3d Cir. 2009) (it was "appropriate [to] try[ ] to settle the case early while there were still substantial insurance proceeds which were available to settlement" when concluding that the district court had acted properly in approving a settlement achieved at an early stage.) (internal citations omitted); *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007-NR, 2019 WL 5394751, at *9 (W.D. Pa. Oct. 22, 2019) ("Counsel 'undertook significant risk to achieve a substantial settlement amount, and should not be penalized for settling the case early in the litigation.' To the contrary, the early settlement of potentially costly litigation is commendable. Considerable judicial time and resources were no doubt conserved by the parties' resolution of this case before dispositive motions or trial. As a result, the Court finds that Plaintiffs have competent counsel whose considerable skill and experience likely facilitated the early and efficient settlement of this matter."); *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 315CV07658MASLHG, 2020 WL 3166456, at *15 (D.N.J. June 15, 2020) ("In addition, it is appropriate to reward counsel and incentivize counsel to pursue the best possible result for the Class and not punish counsel for negotiating an advantageous settlement on behalf of the Class at the early stages of the litigation."). Similarly here, engaging in early ADR and with the benefit of a sufficient ADR-discovery record should be commended, particularly given certain positions taken by InventHelp that can be discussed with the Court at a later time.

Ms. Plitt's motion presumes that avoiding a mediation is the proper method for her to ward off the specter of an improper settlement. This, however, evinces ignorance of the fact that before any class action settlement can be approved, Rule 23 of the Federal Rules of Civil Procedure requires not one but two rounds of court approval: preliminary approval necessary to authorize notice to the class; and final approval following notice to the class, to determine whether any settlement reached is fair, reasonable, and adequate.[8] Ms. Plitt and her clients would certainly have an opportunity to participate in that process, and to object to any settlement terms they believe to be inappropriate. While there is ample authority supporting class members' ability to challenge settlements as inadequate or improper, Ms. Plitt cites no precedent, and offers no rationale, for stopping parties from engaging in good-faith voluntary mediated settlement discussions before a professional neutral.

Ms. Plitt's concocted personal "inference of collusion" is based solely on pure speculation, stringing together a serious of totally unrelated events. *See* Plitt Decl., ECF No. 122, ¶¶ 9 & 36. None of these events support Ms. Plitt's fabricated claims. First, BMPC did not initiate direct contact with Defendant Robert Susa prior to filing. Rather, BMPC contacted *K&L Gates*, InventHelp's counsel, who then arranged, *unbeknownst to BMPC*, for Mr. Susa to be present at the meeting BMPC arranged with K&L Gates prior to filing.

Second, the *Austin* Plaintiffs intentionally filed a complaint that was deliberately constructed with an aim toward achieving class certification and not pleading issues that InventHelp would later argue are individualized. Ms. Plitt forgets that Judge Bissoon's April 9, 2019 Memorandum Order (*Calhoun*, ECF No. 55), dismissed Robert Susa as a party from the

---

[8] If an experienced mediator and former federal Magistrate Judge such as Judge Welsh believes that it is worth the parties' time to participate in a Zoom mediation for simply one more day (*i.e.*, without having to travel and from the comfort of counsels' own homes), after already having expended 11 hours in a first day of mediation, then any rational class counsel would do so.

*Calhoun* Amended Complaint. In their Second Amended Complaint, however, the *Calhoun* Plaintiffs allege that Susa signed checks that were sent to two of the Plaintiffs in the amount of $500 each for a "60 day license," which InventHelp falsely represented had come from licensees. Report & Recommendation, *Calhoun*, ECF No. 78, at 18. It is on this basis that the Court recommended to deny the InventHelp defendants' motion to dismiss Susa with respect to Counts I (AIPA 35 U.S.C. § 297 (a)), IV (fraud) and V (negligent misrepresentation). *Id*. at 18, affirmed by Judge Bissoon's March 25, 2020 Memorandum Order (*Calhoun*, ECF No. 96).

<u>Third</u>, Ms. Plitt characterizes the mediation as being scheduled at the "eleventh hour." *Calhoun* ECF 106 at 2. This is also false. The mediation was scheduled when communications had progressed between the *Austin* Plaintiffs and InventHelp based on the circumstances of their litigation (which coincided with the time period that the InventHelp defendants were in the midst of filing Objections to the Court's Report & Recommendation denying those defendants' motion to dismiss the *Austin* Complaint under Rule 12(b)(b) (*Austin*, ECF No. 23), and to which *Austin* Plaintiffs were busy filing their responses (*Austin*, ECF Nos. 24 and 27). Ms. Plitt and her co-counsel were immediately invited to and attended the mediation without any objection to its timing. The timing of the mediation would only support an inference of collusion if the timing had the effect of excluding a party, or if the timing evinced desperation, neither of which occurred here. Indeed, if Ms. Plitt was right, and the mediation was scheduled on short notice to facilitate a quick settlement, then one would expect that the conclusion of the story would be that the case would settle at the mediation, something which demonstrably did not occur.

<u>Fourth</u>, BMPC had nothing to do with InventHelp's decision to seek sanctions against the Oxman Law Group. Ms. Plitt characterizes the Oxman Law Group's website as containing "identical language" to the classaction.org site. Again, this is false. The Oxman Law Group site

9

included links to various media stories, which Inventhelp argued contained "damaging hyperbole and editorial" statements in violation of Rule 3.6 of the Pennsylvania Rules of Professional Conduct. *See Calhoun*, ECF No. 90. The classaction.org site did not contain these same links. Presumably, InventHelp moved for sanctions against the Oxman Law Group because of these links.

In summary, Ms. Plitt's allegations defy logic and do not constitute good cause for changing the date of the Rule 16 conference or derailing the parties' ADR process. BMPC and its attorneys have an unblemished professional reputation and history of working collegially with co-counsel to reach optimal results in difficult and complex cases and have been open and forthcoming with Ms. Plitt at all times. Ms. Plitt has rejected these overtures, proving the old adage that no good deed goes unpunished.

### 2. Ms. Plitt's Unfounded Conclusions Regarding The Mediation Process Evince Her Lack of Class Action Experience

Ms. Plitt's motion also fails to accurately recount events as they transpired, for example, Ms. Plitt states that an impasse was reached with Defendants in the mediation. This is not accurate. The *Austin* Plaintiffs believe that continued progress has been made since the mediation. While there is no guarantee that a settlement will be reached during the second day of mediation, the parties have set the groundwork and additional discovery is being produced to ensure a productive and meaningful session. Ms. Plitt in unaware of that progress because she has *quit the process*, which definitively is not in the best interest of the putative class members. Judge Welsh would not have scheduled a second mediation date if she did not believe that progress had been made or if she believed the parties were truly at an impasse.

Additionally, the *Austin* Plaintiffs, Defendants and Ms. Plitt's co-counsel at KM all stated that they were available to participate in a second day of mediation on June 9, 2020, but Ms. Plitt

10

said she was not available because of a scheduling conflict. Judge Welsh then suggested June 18 and Ms. Plitt tentatively accepted.[9] After learning that defendants could only participate in mediation on June 18 for a half-day and feeling that a full day was necessary, Judge Welsh then suggested July 2. Again, the only reason the parties got out as far on the calendar as July 2 (albeit it was only a few weeks), was because of *Ms. Plitt's* schedule and asserted conflict on June 9. Restated, the additional several weeks was not because Defendants or the *Austin* Plaintiffs wanted that additional time (to delay discovery, as falsely asserted by Ms. Plitt). Quite the contrary, it was to accommodate Ms. Plitt.

### 3. *Austin* Plaintiffs' Counsel Have Acted At All Times In Keeping With Their Ethical Responsibilities

BMPC's advertising for this case has been public (on the internet), transparent, and ethical. The website classaction.org, which is operated by a vendor called Season 4, LLC, complies with applicable ethics rules, including by disclosing BMPC as a sponsor for the site.

---

[9] In fact, Ms. Plitt stated that while she was available, she could not give a final confirmation for that date because she first had to check with her senior partner, Marc Oxman, who attended only the first few hours of the first day of mediation. Restated, and this bears emphasis because it is coming from someone who hopes to be appointed as lead counsel, Ms. Plitt was unable to, and explicitly said she *did not have the authority* within her small law firm, to even schedule a day of mediation without first consulting with and obtaining authority from her boss, Mr. Oxman (whom BMPC has not observed as a participant in the prosecution of this case). This is not the conduct of a lawyer who seeks to be appointed as lead counsel.



*See* https://www.classaction.org/contributing-firms. With respect to Ms. Plitt's other website-related arguments, a scheduling motion to change the date of a Rule 16 conference is not the place for them, though the *Austin* Plaintiffs and BMPC reject those arguments and reserve all rights.[10]

## **CONCLUSION**

The *Austin* Plaintiffs respectfully request that the Court not reschedule the CMC because there is no good cause for doing so. The parties should be allowed to refrain from expending resources engaging in formal discovery or preparing for a full-blown Rule 16 scheduling conference, so that they can proceed to mediation on July 2, 2020. Ms. Plitt is welcome to attend that session, just as she is welcome to serve ADR-related discovery requests or otherwise participate constructively in the process. In the alternative, the *Austin* plaintiffs, with the consent of InventHelp and Judge Welsh, are willing to continue the mediation before or with the

---

[10] It is possible that Ms. Plitt violated certain Rules of Civil Procedure and Pennsylvania Rules of Professional Conduct, but this motion is not the appropriate place to assert such arguments, and BMPC and the *Austin* Plaintiffs reserve all rights and arguments regarding Ms. Plitt's recent conduct in this motion and her served but not filed motion for sanctions.

participation of a U.S. Magistrate Judge of the Western District of Pennsylvania assigned by the Court.

On July 3, 2020, the *Austin* Plaintiffs will file a status report on the mediation status with the Court. At that time, the Parties will either report that: (a) a proposed settlement has been reached and propose a schedule for Court approval; (b) further progress toward a settlement has been made; or (c) that no settlement can be reached at this time. If the answer is that no settlement can be reached at this time, then the *Austin* Plaintiffs propose that the Court then set a schedule for briefing the lead counsel issue so that leadership issues are decided prior to the parties undertaking additional litigation.

Respectfully submitted,

*/s/ Shanon J. Carson*
Shanon J. Carson
Peter R. Kahana
Amanda Trask
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
scarson@bm.net
pkahana@bm.net
atrask@bm.net

*Counsel for the Austin Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2020 I, Shanon Carson, served the foregoing in *Calhoun, et al. v. Invention Submission Corporation, et al.*, No. 2:18 -cv-01022 (W.D. Pa.) and *Austin, et al. v. Invention Submission Corporation, et al.*, No. 2:19-CV-01396 via ECF on all counsel of record.

/s/ *Shanon Carson*
Shanon Carson