**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Carla Austin and Nil Leone, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>Invention Submission Corp. d/b/a InventHelp, Western Invention Submission Corp. d/b/a Western InventHelp, Intromark Incorporated, and Technosystems Service Corporation,<br><br>        Defendants. | No. 2:19-CV-01396<br><br>Judge Cathy Bissoon<br><br>Magistrate Judge Patricia L. Dodge |
| Etta Calhoun, Sherry Porter, and Cynthia Gray, on behalf of themselves and all other persons similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>Invention Submission Corporation d/b/a InventHelp, Technosystems Consolidated Corp., Technosystems Service Corp., Western Invention Submission Corp., Universal Payment Corporation, Intromark Incorporated, Robert J. Susa, Thomas Frost, P.A., Thomas Frost, John Doe Companies 1-10, John Doe Individuals 1-10,<br><br>        Defendants. | No. 2:18-cv-01022<br><br>Judge Cathy Bissoon<br><br>Magistrate Judge Patricia L. Dodge |

|  |  |
|---|---|
| Geta Miclaus, and Vim and Kevin Byrne, on behalf of themselves and all other persons similarly situated, | No. 2:20-cv-681 |
| Plaintiffs, | Judge Cathy Bissoon |
| v. | Magistrate Judge Patricia L. Dodge |
| Invention Submission Corporation d/b/a InventHelp, Technosystems Consolidated Corp., Technosystems Service Corp., Western Invention Submission Corp. d/b/a Western InventHelp, Universal Payment Corporation, Intromark Incorporated, Robert J. Susa, Thomas Frost, P.A., Thomas Frost, John Doe Companies 1-10, John Doe Individuals 1-10, | |
| Defendants. | |

*AUSTIN* **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT SHANON J. CARSON AND PETER R. KAHANA OF BERGER MONTAGUE PC AS INTERIM LEAD CLASS COUNSEL**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      PRELIMINARY STATEMENT .................................................................. 1

II.     BACKGROUND ...................................................................................... 4

        A.      The Related Cases.......................................................................... 4

        B.      The Mediation Of The Related Cases ............................................. 5

III.    ARGUMENT ........................................................................................... 7

        A.      Legal Standard For Appointment Of Interim Lead Class Counsel........................ 7

        B.      BMPC Conducted An Extensive Investigation Into The Facts And Circumstances Relating To InventHelp's Invention Promotion Services ............. 9

        C.      Messrs. Carson And Kahana Are Experienced Consumer Class Attorneys............................................................ 10

        D.      Mr. Carson And Mr. Kahana Are Well Versed In The Relevant Law ................. 13

        E.      BMPC Has The Resources To Properly Prosecute This Case............................. 13

        F.      Plitt/Oxman Are Not Qualified To Adequately Represent The Class ................. 14

          1.      The *Austin* Complaint By Design Does Not Copy *Calhoun*..................... 14

          2.      Plitt/Oxman Appear To Have Never Been Appointed as Lead Counsel In Any Consumer Class Action Case ......................... 15

          3.      Ms. Plitt Engaged In Deception By Falsely Representing Herself.......... 16

IV.     CONCLUSION........................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004) .................................................................. 13, 15, 17

*Michelle v. Arctic Zero, Inc.*,
   No. 12CV2063-GPC NLS, 2013 WL 791145 (S.D. Cal. Mar. 1, 2013) ................................... 7

*Outten v. Wilmington Tr. Corp.*,
   281 F.R.D. 193 (D. Del. 2012) ........................................................................... 13

*Roe v. Arch Coal, Inc.*,
   No. 4:15-CV-1026 (SNLJ), 2015 WL 6702288 (E.D. Mo. Nov. 2, 2015) ...................... 8, 9, 10

*Smith v. State Farm Mut. Auto. Ins. Co.*,
   301 F.R.D. 284 (N.D. Ill. 2014) .......................................................................... 8

*Spencer, et al. v. The Hartford Financial Services Group, Inc.,*
   *et al.*, 256 F.R.D. 284 (D. Conn. 2009) ................................................................. 12

*Tolmasoff v. Gen. Motors, LLC*,
   No. 16-11747, 2016 WL 3548219 (E.D. Mich. June 30, 2016) ............................................. 8

**Statutes**

§ 297(a) ............................................................................................................... 5

35 U.S.C. § 297 ..................................................................................................... 4

**Rules**

Fed. R. Civ. P. 23 (g)(1) ......................................................................................... 7

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv) ....................................................................... 1, 7

Fed. R. Civ. P. 23(g)(2) ......................................................................................... 7

Fed. R. Civ. P. 23(g)(2), (4) ................................................................................... 8

Fed. R. Civ. P. 23(g)(3) ................................................................................... 1, 7, 8

PA ST RPC Rule 4.1 ............................................................................................ 17

Rule 23(g) ........................................................................................................ 1, 4

ii

Rule 23(g)(1)(B) ........................................................................................................ 7

Rule 23(g)(1)(C) ........................................................................................................ 7

Rule 42(a) of the Federal Rules of Civil Procedure ........................................................ 1

**Other Authorities**

MANUAL FOR COMPLEX LITIGATION § 21.11 (4th ed. 2004) ......................................................... 9

Plaintiffs Carla Austin and Nil Leone ("*Austin* Plaintiffs") submit this memorandum of law in support of their motion to appoint Shanon J. Carson and Peter R. Kahana of Berger Montague PC ("BMPC") as Interim Lead Class Counsel pursuant to FED. R. CIV. P. 23(g)(3) with respect to the related cases: (a) *Austin, et al. v. Invention Submission Corporation, et al.,* No. 2:19-cv-01396 (W.D. Pa.); (b) *Calhoun, et al. v. Invention Submission Corporation, et al.*, No: 2:18-cv-01022 (W.D. Pa.); (c) *Miclaus, et al. v. Invention Submission Corporation, et al.*, No. 2:20-cv-00681 (W.D. Pa.); and (d) any subsequently filed related case (collectively, the Related Actions").

## I.   <u>PRELIMINARY STATEMENT</u>

The *Austin* Plaintiffs filed their class action complaint on October 25, 2019 as related to the *Calhoun* action, and both lawsuits assert claims against Defendants Invention Submission Corp. d/b/a InventHelp and Western Invention Submission Corp. d/b/a Western InventHelp (collectively, "InventHelp"), for breach of contract and other misconduct concerning invention promotion services marketed to consumers. If a settlement is not reached via the current ADR process (of which the Court is aware), the Related Actions will enter the discovery phase. The *Austin* Plaintiffs have simultaneously moved to consolidate the Related Actions for all purposes pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.

Shanon J. Carson and Peter R. Kahana of BMPC are eminently qualified to serve as Interim Lead Class Counsel under the factors set forth in Rule 23(g). *See* Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). Not only is BMPC a nationally recognized, premier complex litigation law firm that employs over 65 attorneys and has a successful 50-year history of protecting Americans' rights through the class action device, but Mr. Carson and Mr. Kahana together have 60 years of experience successfully prosecuting consumer and other class actions, and have served as lead or co-lead counsel in many matters for which they have received formal judicial praise.

Mr. Carson and Mr. Kahana have, and will, continue to aggressively protect the interests of the putative class members in the Related Actions. They are versed in the facts and claims that have been asserted and have performed an extensive, independent investigation and analysis of the cases. They have the full support and resources of BMPC, a law firm that has earned a nationwide reputation for professional integrity and has a historic track record of maximizing recovery for its clients. BMPC has recovered well over $30 billion for its clients and the classes that its attorneys have represented. Among other things, BMPC and its attorneys are known for working cooperatively and collegially with other law firms, leading teams, and obtaining excellent results.

Attorneys Julie Plitt and Marc Oxman of the Oxman Law Group, PLLC (together, "Plitt/Oxman"), as counsel for the *Calhoun* and *Miclaus* plaintiffs, previously filed a motion to consolidate the *Austin* and *Calhoun* cases and asked the Court to appoint Ms. Plitt and her co-counsel, Kirby McInerney, LLP ("KM"), as Interim Co-Lead Counsel, to the exclusion of BMPC which had made repeated efforts to work cooperatively with Plitt/Oxman.[1] *See Calhoun*, ECF No. 99. While Plitt/Oxman's motion was denied without prejudice as being "premature" (*Calhoun*, ECF No. 108), it contained baseless accusations disparaging BMPC in a transparent attempt by Plitt/Oxman to wrest control of the Related Actions.

Despite this, BMPC continued its efforts to cooperate, by filing a motion to attend the initial Rule 16 conference in *Calhoun* in order to invite Ms. Plitt to participate in a mediation that the undersigned counsel set up with InventHelp to take place on June 4, 2020 before a well-

---

[1] For example, after filing *Austin* on October 25, 2019, BMPC contacted Ms. Plitt on November 1, 2019, and offered to work jointly and cooperatively. Because of Ms. Plitt's lack of response, BMPC persisted in those efforts never knowing until June 17, 2020 that Ms. Plitt had tried to contact defense counsel and settle out the entire case, including the *Austin* case. *See Calhoun*, ECF No. 125 at 3 ("Momentarily setting aside the fact that **Calhoun counsel** contacted the undersigned in November 2019 (after the *Austin* case was filed) to discuss settlement on behalf of the entirety of the class (including the *Austin* class), the Motion is a transparent attempt to lobby for lead class counsel at the expense of the purported class that *Calhoun* counsel purports to represent."). Given this fact, Plitt/Oxman's current position regarding ADR is curious.

respected retired United States Magistrate Judge, the Honorable Diane Welsh (Ret.). As stated to the Court at the time, *Austin* counsel believed that "this is what the Court would desire" given "the paramount interest of the Court and all counsel in advancing the dual goals of (a) efficient case management and (b) potential global settlement of these…cases…." *Austin* Motion to Attend R. 16 Conf., *Calhoun*, ECF No.116, at ¶¶ 12-13.

Mr. Oxman attended that first day of the mediation only partially before leaving (demonstrably showing his disinterest in the case). Ms. Plitt attended most of the mediation but she too left before the mediator declared the first day concluded. After the conclusion of the first day of mediation, and after a second session scheduled for July 2, 2020 was set (*Calhoun*, ECF No. 119), Ms. Plitt agreed in writing to postpone the Rule 16 conference in *Calhoun*. She then did an about face by filing – *again without meeting and conferring with anyone* – a Motion to Reschedule Initial Telephonic Case Management Conference (*Calhoun*, ECF No. 120). This motion not only requested to reschedule the Rule 16 conference that had been postponed *with Ms. Plitt's consent* two days earlier, but also sought to "immediately reinstate the *Calhoun* Plaintiffs' motion for appointment as lead counsel, *see* ECF No. 99," bar any opposition thereto by *Austin* plaintiffs (by deeming the *Austin* plaintiffs' previously filed Motion To Attend Rule 16 Conference (*Calhoun*, ECF No. 116) as "their opposition thereto"), and designate Ms. Plitt as lead counsel (for cases that are not yet even consolidated). *Calhoun*, ECF No. 121 at 11.

That motion, filed by Ms. Plitt *without the knowledge or consent of her own co-counsel*, KM, made wildly inaccurate and irresponsible statements claiming that the mediation was not at arm's-length and other claims of improper conduct to make it appear that BPMC was unqualified to serve as class counsel.[2] With that filing and her related conduct, Plitt/Oxman only succeeded in

---

[2] Ms. Plitt likewise accused defense counsel K&L Gates and the mediator, Judge Welsh, of ethical misconduct and filed a complaint against Judge Welsh with JAMS. Judge Welsh served honorably as a U.S.

showing they do <u>not</u> meet the requirements of Rule 23(g). Most tellingly, Plitt/Oxman's own co-counsel KM filed a motion yesterday to completely withdraw from the case (*Calhoun* ECF No. 130) which the Court immediately granted (*Calhoun*, ECF No. 131), apparently for irreconcilable conflicts with Plitt/Oxman, who did not cc their own co-counsel on multiple important communications and documents, and took positions that KM would not support.[3]

## II.    BACKGROUND

### A.    The Related Cases

The *Austin* complaint asserts two narrowly focused claims against InventHelp for violation of the American Inventors Protection Act, 35 U.S.C. § 297 ("AIPA") and breach of contract. ECF No. 1. The *Austin* plaintiffs allege that in violation of § 297(b) of the AIPA, the InventHelp Defendants misrepresented and/or omitted to disclose that they lacked reasonable and systematic procedures to accurately assure that: (a) its Data Bank was not rife with defunct companies; (b) invention matching searches were performed in a manner capable of identifying those Data Bank companies most likely to be interested in a particular invention so as to yield optimum results for procuring a good faith review; and (c) the same Data Bank company did not receive the same invention brochure multiple times. The *Austin* Plaintiffs allege that InventHelp, in derogation of the contract for invention submission services, failed to adequately maintain its Data Bank of registered companies or execute its promises to submit their inventions to Data Bank companies that were even a general industry match—which breached Paragraphs 1.A and 1.D of the Plaintiffs' Submission Agreements. *Austin* Motion to Attend R. 16 Conf., *Calhoun*, ECF No. 116, at ¶ 29.

---

Magistrate Judge in the Eastern District of Pennsylvania from 1994 to 2005 and has been employed as a mediator by JAMS since that time. *See* ECF No. 126, at 2 & Exhibit B.

[3] *Austin* counsel has now confirmed in writing that, in addition to not consulting with KM before filing the Motion to Reschedule the Rule 16 Conference (*Calhoun*, ECF No. 120), Plitt/Oxman did not consult or serve KM with its purported Notice of Intent To File Motion For Sanctions.

The *Calhoun* case brings similar claims alleging that InventHelp's business structure is a sham intended to defraud aspiring inventors for services that InventHelp never intended to provide. *Calhoun*, ECF No. 56, SAC ¶¶ 8, 32, 36, 304, 320. It asserts claims under the AIPA and for breach of contract, but also names additional defendants and includes claims that do not focus on misrepresentations regarding the InventHelp Data Bank itself. The *Calhoun* action instead focuses on the disclosures that § 297(a) of the AIPA requires and the allegation that InventHelp created false 60-day licensing agreements that it presented to its clients to falsely inflate § 297(a)'s mandatory disclosure numbers which are then distributed to potential InventHelp customers. *See Austin* Motion to Attend R. 16 Conf., *Calhoun*, ECF No.116, at ¶¶ 30-31.[4]

### B.   The Mediation Of The Related Cases

As a result of *Austin* counsel's substantial efforts, BMPC and defense counsel K&L Gates recently agreed to proceed to mediation on June 4, 2020. BMPC invited Plitt/Oxman and KM to attend. As *Austin* counsel previously apprised the Court, one of the key goals of the first day of mediation was to address the financial condition of InventHelp (both generally and specifically

---

[4] *Calhoun* also alleges that InventHelp: (a) advertises on its website that certain companies are included in the InventHelp Data Bank when they are not; (b) uses bait-and-switch tactics to upsell clients from the initial low cost promotion contract (known as a Basic Information Package or "BIP") to the more expensive Submission Agreement (that includes an optional suite of added services); (c) induces potential customers to sign the Submission Agreement by misrepresenting the terms of payment obligations; and (d) employs intimidation and threats to collect debts from inventor clients owed under those Submission Agreements. *Calhoun* also asserts claims against patent attorneys, Frost Associates and Attorney Thomas Frost, related to their involvement with InventHelp and its patent referral services, alleging that the patent attorneys created misleadingly hopeful patent search results and reports that were intended to induce plaintiffs and class members to purchase InventHelp's Submission services. The undersigned counsel are concerned that the *Calhoun* approach forecasts the inexperience of Plitt/Oxman in the area of consumer class actions and their lack of knowledge and experience regarding the applicable law, especially as it pertains to class certification. For example, the allegations in *Calhoun* unnecessarily contain a sprawling hodgepodge of individualized facts and oral communications highlighted within more than 400 paragraphs of disjointed allegations ranging, for example, from the fact that  InventHelp defendants falsely told consumers during initial meetings that their ideas are novel and marketable to induce them to purchase the full suite of services it offers (*Calhoun* SAC, ¶ 11), and deliberately generated fake paperwork to send to clients to create the impression that InventHelp is working on their behalf when it is not (*Calhoun* SAC, ¶ 32).

due to the Coronavirus Pandemic), as that issue weighs among the factors that a court must consider when evaluating the fairness, reasonableness, and adequacy of any class action settlement against the attendant risks of litigation. *Austin* Plaintiffs' Motion for Leave to Attend Rule 16 Conference. *Calhoun,* ECF No. 116 at 6, ¶ 15.

As is typical in complex class action cases, the mediation lasted into the evening (but only approximately 11 hours). On June 5, 2020, the *Austin* plaintiffs and InventHelp filed a Joint Status Report reporting that the mediation did not result in a settlement but that the parties made some progress and scheduled a second session for July 2, 2020; and further, that *Calhoun* counsel had been consulted and agreed regarding the postponement of the Rule 16 conference. *Calhoun*, ECF No. 118. After reviewing this information, the Court rescheduled the Rule 16 conference in *Calhoun* for July 8, 2020. *Calhoun*, ECF No. 119.

On the following Tuesday, June 9, 2020, Plitt/Oxman filed their Motion to Reschedule the Rule 16 Conference (*Calhoun*, ECF No. 120). The Court declined Plitt/Oxman's request to reinstate the previously denied motions to consolidate and appoint them as lead counsel but said counsel could refile or file anew those motions after which a briefing schedule would then be established for responses. *Calhoun*, ECF No. 124. The Court declined to reschedule the Rule 16 conference and permitted the parties in *Austin* to proceed with the July 2 mediation with Judge Welsh. *Calhoun*, ECF No. 129.

In the estimation of BMPC, Kirby McInerney is a sophisticated and reputable New York law firm with class action experience. The lawyers from KM participated in the parties' pre-mediation and mediation discussions and are first-hand witnesses to Plitt/Oxman's conduct and know the falsity and absurdness of Plitt/Oxman's allegations. They know that Plitt/Oxman's allegation of collusion between BMPC, K&L Gates, and the Mediator, Judge Welsh, is silly and

has no basis in reality. KM's withdrawal yesterday from its relationship with Plitt/Oxman and from the *Calhoun* case entirely speaks volumes.

## III.   ARGUMENT

### A.   Legal Standard For Appointment Of Interim Lead Class Counsel

FED. R. CIV. P. 23 (g)(1) sets forth the factors a court must consider in appointing class counsel, including:

1.   The work counsel has done in identifying or investigating potential claims;

2.   Counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

3.   Counsel's knowledge of the applicable law; and

4.   The resources counsel will commit to representing the class.

FED. R. CIV. P. 23(g)(1)(A)(i)-(iv). Rule 23(g)(1)(B) also allows a court to "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class" when appointing class counsel, as well to "order [pursuant to Rule 23(g)(1)(C)] potential class counsel to provide information on any subject pertinent to the appointment…." And, "[i]f more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." FED. R. CIV. P. 23(g)(2).

Rule 23(g)(3) authorizes a court to designate interim lead class counsel to act on behalf of a putative class before determining whether to certify the action as a class action, and in that situation the same requirements in appointing class counsel when a court certifies a class would apply. *See Michelle v. Arctic Zero, Inc.*, No. 12CV2063-GPC NLS, 2013 WL 791145, at *2 (S.D. Cal. Mar. 1, 2013) ("While Rule 23(g)(1) applies to class counsel and does not address interim class counsel, courts look to Rule 23(g)(1) factors to appoint interim class counsel."). This includes evaluating whether the proposed counsel will fairly and adequately represent the interests of the

class. *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014) (citing Fed. R. Civ. P. 23(g)(2), (4)).

Given the present circumstances in which (a) the *Austin* Plaintiffs and InventHelp are now engaged in a continuing ADR process and mediation aimed at globally resolving the issues presented by the Related Actions; (b) Plitt/Oxman unilaterally withdrew from participating in that process (against the interests of the proposed classes); (c) Plitt/Oxman regrettably and needlessly attempted to weaponize the ADR process to gain a leg up on trying to be appointed as lead counsel, and continues its course of making false statements and drawing absurd "inferences"; (d) Plitt/Oxman lack the requisite consumer class action experience to adequately litigate and represent the proposed classes; and (e) Plitt/Oxman's *own co-counsel* KM thought it imperative to withdraw yesterday from its relationship with Plitt/Oxman (after only serving as co-counsel for less than three months), there is an immediate and urgent need for the Court to designate interim class counsel to protect the interests of the putative class members in the Related Actions. *See Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at \*9 (E.D. Mich. June 30, 2016) (appointing interim class counsel where competing cases "may follow" and "the Court believe[d] that it would be beneficial to formally identify the counsel responsible, at this pre-certification stage, for protecting the interests of the putative class members"); *Roe v. Arch Coal, Inc.*, No. 4:15-CV-1026 (SNLJ), 2015 WL 6702288, at \*3 (E.D. Mo. Nov. 2, 2015) (appointing interim class counsel because the litigation "would benefit from designated interim class counsel for efficient case management.").

Messrs. Carson and Kahana are well-qualified to serve as Interim Lead Class Counsel and have demonstrated that they have and will continue to advocate in the best interests of the class members. Their appointment comports with the purpose of Rule 23(g)(3). Appointing Messrs.

Carson and Kahana will "clarif[y] responsibility for protecting the interests of the class[] during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." MANUAL FOR COMPLEX LITIGATION § 21.11 (4th ed. 2004). Messrs. Carson and Kahana are the attorneys best able to represent the interests of the class.

### B. BMPC Conducted An Extensive Investigation Into The Facts And Circumstances Relating To InventHelp's Invention Promotion Services

Mr. Kahana began investigating InventHelp in the late summer and/or early fall of 2018 after having been referred an InventHelp customer by another attorney in Colorado. Mr. Kahana initiated a general due diligence investigation into InventHelp's background, practices, track record, and business structure, which included an interview of the proposed client and review of the client's documents. *See Austin* Motion to Attend R. 16 Conf., *Calhoun*, ECF No.116, at ¶ 21.

After concluding the litigation was meritorious, Mr. Kahana discovered two pending class cases against InventHelp: (a) *Zanotti, et al. v. Invention Submission Corp., et al.*, No. 7:18-cv-05893-NSR (S.D.N.Y), a case filed by Plitt/Oxman in New York state court on January 24, 2018 on behalf of Julie Zanotti, Ronese Brooks, and Sherry Porter, that had been removed to the Southern District of New York; and (b) *Calhoun*, which was filed in the Eastern District of Pennsylvania (at No. 2:18-cv-01022) on June 1, 2018 with Ms. Plitt and Mr. Oxman listed as being "of counsel" (*Calhoun*, ECF No. 1), that was transferred to this Court on August 8, 2018 (*Calhoun*, ECF No. 11). Mr. Kahana was concerned about the manner in which Plitt/Oxman were litigating the *Calhoun* and *Zanotti* matters as well as the simultaneous prosecution of *Zanotti* and *Calhoun* in different courts. *Id.*, *Calhoun*, ECF No. 116, ¶¶ 22-23.

BMPC continued its investigation, including by having a vendor post a webpage so that BMPC could hear from additional customers and evaluate their experiences. Since the webpage

was created, BMPC has been contacted <u>by over 1,000</u> potential class members, many of whom have requested BMPC's representation, and if given the choice, would prefer Mr. Carson and Mr. Kahana to be appointed as interim lead class counsel. *Id.*, *Calhoun*, ECF No. 116, ¶ 24. After hundreds of hours of interviews and additional work, the retention and payment of a private investigator, and substantial research into the facts and law, the *Austin* Plaintiffs filed their complaint on October 25, 2019, relying on BMPC's extensive knowledge and experience prosecuting consumer class actions, to plead claims that BMPC believed would be successful as class claims. The *Austin* lawsuit was also filed after *Austin* counsel met in person with InventHelp counsel and its client, Robert Susa, to better understand InventHelp's stance regarding the claims.[5]

### C.   Messrs. Carson And Kahana Are Experienced Consumer Class Attorneys

Mr. Carson is a Managing Shareholder and member of the Executive Committee at BMPC. He is qualified to serve as Interim Lead Class Counsel based on his history of successfully prosecuting complex consumer class actions and his involvement in this matter. Below are just a few examples of consumer cases in which Mr. Carson has been appointed as lead or co-lead class counsel:[6]

    i)  *Allergan BIOCELL Textured Breast Implant Products Liability Litigation*, No. 2:19-md-02921, MDL No. 2921 (D.N.J.). Mr. Carson was recently appointed as Co-Lead Counsel in this nationwide MDL class action/mass tort litigation pending in the District of New Jersey against medical device manufacturer Allergan.

---

[5] As previously noted, *Austin* counsel contacted Ms. Plitt after filing the case to try and work cooperatively. Ms. Plitt informed *Austin* counsel on January 6, 2020 that she was possibly interested in working together but wanted to wait until the Court decided the pending motion by InventHelp to dismiss the *Calhoun* plaintiffs' Second Amended Complaint. BMPC reached out *again* to Ms. Plitt to discuss the joint prosecution of the cases, and Ms. Plitt confirmed a call for April 2, 2020. However, *with no advance notice to BMPC*, Ms. Plitt on April 1, 2020 – one day before the scheduled telephone conference – filed her motion for consolidation and appointment as co-lead counsel with KM who *had just entered its appearance that same day*.

[6] *See* Shanon J. Carson Bio, available at https://bergermontague.com/attorneys/shanon-j-carson/ for additional information regarding Mr. Carson's class action experience.

ii) *Beckett v. Aetna, Inc.,* No. 17-cv-03864 (E.D. Pa.). Mr. Carson served as Co-Lead Counsel in this case that involved the public disclosure of patient HIV information. It was alleged that Aetna mailed letters to 12,000 insureds with the insureds' HIV medication information visible through a large transparent window on the envelope, and that the HIV information was accessible to third parties such as family members, roommates, neighbors, and mail carriers. The case settled in 2018 within only a few months after it was filed, resulting in a non-reversionary $17 million cash fund plus significant non-monetary relief. Each class member received an automatic payment of $500 without being required to fill out a claim form, and class members were also allowed to submit claims for up to $20,000 for financial or non-financial harm resulting from the disclosure.

iii) *In re CertainTeed Fiber Cement Siding Litigation*, MDL No. 2270 (E.D. Pa.). Mr. Carson served as Co-Lead Counsel and obtained final approval of a non-reversionary cash settlement of over $103 million in this MDL product liability class action concerning CertainTeed Corporation's allegedly defective fiber cement siding, on behalf of a nationwide class.

iv) *Citibank Force-Placed Insurance Litigation*, Nos. 5:12-cv-00820, 1:13-cv-353 (N.D.N.Y.). Mr. Carson served as Co-Lead Counsel and obtained a settlement valued at $110 million in this consolidated class action on behalf of nationwide classes of borrowers whose mortgage loans were serviced by Citibank or CitiMortgage and who were force-placed with hazard, flood, or wind insurance by Citi.

v) *Arnett v. Bank of America, N.A.*, No. 3:11-cv-1372 (D. Or.). Mr. Carson served as Co-Lead Counsel and obtained a non-reversionary cash settlement of $31 million on behalf of a nationwide class of borrowers whose mortgage loans were serviced by Bank of America and who were force-placed with flood insurance.

Mr. Kahana is a shareholder at BMPC and is qualified to serve as Interim Lead Class Counsel due to his history of successfully prosecuting numerous complex consumer class actions and his involvement in this matter. For example, Mr. Kahana has served as lead or co-lead class counsel in the following cases:

i) *Ormond v. Anthem, Inc., et al.*, No. 1:05-cv-01908 (S.D. Ind. 2012). Mr. Kahana served as Co-Lead Class Counsel and achieved a settlement of $90 million for breach of fiduciary duty and negligence claims (certified for trial in 2009) on behalf of a class of former policyholder-members of Anthem Insurance Companies, Inc. alleging the class was paid insufficient cash compensation in connection with Anthem's conversion from a mutual insurance company to a publicly owned stock insurance company (a process known as "demutualization").[7]

---

[7] *See* Peter R. Kahana Bio, available at https://bergermontague.com/attorneys/peter-r-kahana/ for judicial praise regarding his efforts in *Ormond* (quoting Amended Final Order Approving Class Settlement, ECF

ii) *Spencer, et al. v. The Hartford Financial Services Group, Inc., et al.*, 256 F.R.D. 284 (D. Conn. 2009). Mr. Kahana achieved a settlement of $72.5 million in this class action against The Hartford and its affiliates on behalf of a class of personal injury and workers compensation claimants for the Hartford's alleged deceptive business practices in settling these injury claims for Hartford insureds with the use of structured settlements.[8]

iii) *Nationwide Mutual Insurance Company v. O'Dell, et al.*, Circuit Court of Roane County, W. Va., Civ. Action No. 00-C-37. Mr. Kahana achieved a settlement of $75 million in this case asserting claims for breach of contract, Unfair Trade Practices Act and insurance bad faith tort claims on behalf of a class of West Virginia automobile policyholders (certified for trial in 2007) alleging that Nationwide Mutual Insurance Company failed to properly offer and provide them with state-required optional levels of uninsured and underinsured motorist coverage.

iv) *Bergonzi v. CSO*, No. C2-4096 (D.S.D.). Mr. Kahana achieved a settlement in 2004 for $20 million on behalf of a class of cancer victims alleging that their insurer refused to pay for health insurance benefits for chemotherapy and radiation treatment. For his efforts in regard to this case, Mr. Kahana was named a recipient of the American Association for Justice's Steve J. Sharp Public Service Award.

v) Mr. Kahana was a member of the trial team that prosecuted *In re Exxon Valdez*. No. 2:90-MC-00789 (D. Alaska). In connection with this case, Mr. Kahana was selected among other co-lead class counsel in 1995 to share the Trial Lawyer of the Year Award by the Public Justice Foundation.

A sampling of additional consumer class cases where BMPC attorneys in the Consumer

Department chaired by Mr. Carson have recently been appointed to leadership roles include:

i) *In re JUUL Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, No. 19-md-02913 (N.D. Cal.). BMPC serves as a member of the steering committee in this broad-ranging MDL involving claims against Juul related to its sale and marketing of Juul vaping devices and its misrepresentations regarding Juul's vaping devices' potency and addictiveness. The case is ongoing.

ii) *In re: American Medical Collection Agency, Inc. Customer Data Security Breach Litig.*, No. 19-md-02904 (D.N.J.). BMPC currently serves on the Court-appointed Plaintiffs' Steering Committee in the Quest Diagnostics track, which is the largest track in the coordinated MDL proceedings. In this class action, computer hackers stole confidential information including Social Security numbers, medical information, and

---

No. 780, 10), in addition to judicial praise for other class cases on which Mr. Kahana has significantly participated.

[8] For judicial praise regarding Mr. Kahana's efforts in *Spencer, see id* (quoting Final Approval Hearing Transcript, dated September 21, 2010, ECF No. 243, Tr. 66:7-17, 67:12-68:4, & 71: 15-2).

other sensitive information of over 20 million patients of various medical labs. The case is ongoing.

iii) *In re: Experian Data Breach Litig.*, No. 15-cv-01592 (C.D. Cal.). BMPC served on the Plaintiffs' Steering Committee in this data breach class action in which computer hackers stole 15 million Social Security numbers and related personal information from a Big-Three credit reporting agency. The case settled in 2019 for benefits valued at over $170 million. Settlement benefits included two years of free credit monitoring and identity theft insurance; reimbursement of out-of-pocket costs and lost time; and various injunctive measures.

### D.      Mr. Carson And Mr. Kahana Are Well Versed In The Relevant Law

"Experience and knowledge of the law is of the utmost importance when determining lead counsel." *Outten v. Wilmington Tr. Corp.,* 281 F.R.D. 193, 200 (D. Del. 2012); *see also In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (the "most persuasive" factors in choosing lead counsel may be proposed counsel's "experience in, and knowledge of, the applicable law in this field"). Mr. Carson and Mr. Kahana have practiced class action law for decades and handled complex matters and pressed claims successfully through class certification and to settlement. The qualifications and experience of proposed Interim Lead Class Counsel are detailed in the BMPC Firm Resume attached hereto as Exhibit 1).

### E.      BMPC Has The Resources To Properly Prosecute This Case

BMPC is willing and able to expend the resources necessary to ensure the vigorous prosecution of Plaintiffs' and the class's claims. BMPC has a lengthy record of success leading complex consumer class action cases against some of the largest and richest corporations in the world. This case is no different. BMPC is a top-tier plaintiffs' class action and complex litigation law firm, that has been a pioneer in the use of class actions in the United States. *See Austin* Motion to Attend R. 16 Conf., *Calhoun*, ECF No.116, at ¶ 18 (BMPC is frequently highly ranked by U.S. News in their annual "Best Law Firms" report and other nationally recognized publications). BMPC currently employs over 65 attorneys and a large support staff.

### F.  Plitt/Oxman Are Not Qualified To Adequately Represent The Class

The Court should not appoint Plitt/Oxman as interim class counsel. They have revealed their inadequacy by, among other things, making false statements to the Court and in Ms. Plitt's recent declaration served on the parties; including about BMPC, K&L Gates, and the mediator, Judge Welsh. Unfortunately, while there is still time for Plitt/Oxman to recant and withdraw their false statements,[9] based on a telephone conference this morning the undersigned counsel believes that Plitt/Oxman will continue its sad campaign of false "inferences." Both the *Austin* Plaintiffs and InventHelp responded (*Calhoun*, ECF No. 125 & 126), each separately pointing out the misrepresentations. *Austin* counsel will not plow old furrows here and incorporate their response to the rescheduling motion as if fully set forth herein. In sum, Plitt/Oxman has shown zero interest in working cooperatively with others, including its own co-counsel KM (as demonstrated by KM's withdrawal yesterday).[10]

### 1.  The *Austin* Complaint By Design Does Not Copy *Calhoun*

Plitt/Oxman's previously filed motion to appoint itself as lead counsel incorrectly stated that the *Austin* Complaint is a copycat of the *Calhoun* Complaint. This is not true. The Court already addressed some of the differences between these cases (*see Austin,* ECF 24 at 2-4). The *Austin* complaint *does not* relate identical facts, allege identical counts, plead an identical class definition, or bring claims against the same set of defendants as *Calhoun*. Ms. Plitt even chides

---

[9] Pennsylvania Rule of Professional Conduct 3.1 ("Meritorious Claims and Contentions") states that a lawyer "shall not…assert or controvert an issue [in a proceeding], unless there is a basis in law and fact for doing so that is not frivolous….", while Rule 3.3 ("Candor Toward the Tribunal") states that a lawyer "shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer…or (3) offer evidence that the lawyer knows to be false."

[10] Moreover, regarding Plitt/Oxman's allegations, they know full well that all other participants (including the mediator) are barred from disclosing mediation communications but as stated previously, these communications have been collected and can be shown to the Court *in camera* if that becomes necessary.

*Austin* counsel for *not copying Calhoun,* criticizing *Austin* counsel for not including Universal Payment Corporation as a defendant, not suing individual patent attorneys, or including Robert Susa, president of each of the InventHelp entities, as an individual defendant. *Calhoun*, ECF No. 99-2, at 7. Ms. Plitt claims that the *Calhoun* SAC's allegations "are far more robust" because the *Calhoun* SAC, "asserts more claims against more defendants." *Calhoun*, ECF No.99-2, at 19. Putting aside the fact that quantity is never a substitute for quality, it is manifest through her own words that Ms. Plitt has effectively conceded that *Austin* does not copy *Calhoun*. Ironically, Plitt/Oxman also felt the need to file the *Miclaus* case that overlaps the allegations filed in *Austin*.

The fact is that after nearly two full years of litigating multiple rounds of Rule 12(b)(6) motions, the *Calhoun* case is no further along than *Austin* even though the latter was filed only eight months ago. This does not include time spent by Plitt/Oxman litigating the virtually identical but even earlier filed *Zanotti* case that was recently dismissed on June 2, 2020 without prejudice. *Zanotti*, ECF No. 156. Nobody would say that Plitt/Oxman's model is one of efficiency.

## 2. Plitt/Oxman Appear To Have Never Been Appointed as Lead Counsel In Any Consumer Class Action Case

Plitt/Oxman recognized their lack of class action experience when they brought KM into the case on the day they filed their previous motion to appoint. That motion candidly spoke more about KM's class action experience than their own, since Plitt/Oxman have little experience in this specialized practice area. *See Calhoun*, ECF No. 99-2, at 12-15.[11] Now, Plitt/Oxman's plan has

---

[11] According to Westlaw Analytics, attached as Exhibit 2, Ms. Plitt has been counsel in a total of five class actions, three of which are the current InventHelp cases, *Calhoun*, *Zanotti* (No. 7:18-cv-05893-NSR (S.D.N.Y)) and *Miclaus* (No. 2:20-cv-00681-CB (W.D. Pa.)). In 2004, Ms. Plitt represented the <u>defendant</u> in *Caltagirone v. New York Community Bancorp Inc., et al.*, No. 1:04-CV-04872 (E.D. N.Y.). Ms. Plitt was also on the defendants' side in *Abramsky, et al. v. Alstam, SA, et al.*, No. 1:03-CV-06595 (S.D.N.Y.). The same Westlaw Analytics states that Ms. Plitt represented plaintiffs in just 12% of her cases. *Id.* She thus appears to lack experience in the field. *See also* Lex Machina report attached hereto as Exhibit 3, also confirming that Ms. Plitt has limited consumer class action experience.

backfired because based on Plitt/Oxman's conduct, KM has withdrawn from the case. In short, Plitt/Oxman lack the consumer class action experience to be appointed as lead counsel over the Related Actions.

### 3.     Ms. Plitt Engaged In Deception By Falsely Representing Herself

BMPC has sponsored an investigative webpage related to this case since March 14, 2019. Since the website went live, BMPC has been contacted by over 1,000 potential class members. BMPC has now realized that, unbeknownst to the firm, BMPC was also contacted directly by Ms. Plitt, masquerading as a potential client. Specifically, on April 9, 2019, Ms. Plitt contacted BMPC through its website using the last name Koudjis. As Ms. Plitt attested in her declaration to the original motion for interim co-lead class counsel appointment, she "filled out the form provided using a personal email address" (*Calhoun*, ECF No. 99-3, ¶ 9).

In response to Ms. Plitt filling out the online form (using the last name Koudjis), BMPC intake analyst Devona Thomas sent her a follow up email on April 9, 2019. Ms. Thomas addressed her email to Ms. Koudjis, the alias Ms. Plitt used when she filled out the form. Ms. Plitt's Declaration attaches a *redacted* version of the email Ms. Thomas sent in response to Ms. Plitt's website submission (using the last name "Koudjis"). The original, *unredacted* email response is attached as Exhibit 4. It shows that Ms. Plitt's form was not only submitted under the alias of "Julie Koudjis," but *also* that in contacting BMPC, Ms. Plitt (using the last name "Koudjis") falsely stated that "I was scammed by InventHelp and i [*sic*] want to be part of the lawsuit. Please call me at 646-352-2422."

On May 2, 2019, in response to Ms. Plitt's (using the last name "Koudjis") claim that she was personally impacted by Inventhelp's conduct and that she wished to be contacted so she could participate in the lawsuit, a BMPC intake analyst called Ms. Plitt (using the last name Koudjis). The records from the call show that Ms. Plitt continued to falsely pretend to be a class member.

Ms. Plitt (using the last name Koudjis) never revealed that she was in fact the attorney for plaintiffs in *Calhoun* and was not actually someone who had been "scammed by InventHelp." Had Ms. Plitt truthfully identified herself as an attorney in *Calhoun*, an attorney from BMPC would have immediately contacted her to discuss her concerns.

Ms. Plitt's conduct was in clear violation of the rules of professional conduct, which clearly prohibit the use of deception in the practice of law. *See* PA ST RPC Rule 4.1. ("In the course of representing a client, a lawyer shall not…knowingly make a false statement of fact or law to a third person."). Ms. Plitt's conduct also violated the website's terms and conditions, to which she had expressly agreed.[12]

In addition to being substantively unethical, the timing of Ms. Plitt's deceptive conduct also undermines her claim that there was something improper about the website BMPC sponsored. Ms. Plitt did not contact anyone to complain about the site using her real identity until approximately *six and a half months after* she contacted BMPC through the site falsely claiming to be a class member in need of assistance. On October 28, 2019, nearly six and a half months after she contacted the site using the last name Koudjis, Ms. Plitt contacted classaction.org (not BMPC), asking that classaction.org take down the link to the *Calhoun* complaint. *Id*. Classaction.org

---

[12] The website provides the following, in pertinent part:

6. Eligibility and Accuracy of User Information

You must be at least 18 years of age to use the Site and the Service. Our website and services are for residents of the United States only. If you live outside the United States, please do not use our website or services. Any person suspended or removed from use of the Service for any reason may not access the Site or otherwise use the Service. In consideration of your use of the Service, you agree to:

1. **Provide true, accurate, current and complete information about yourself when completing a contact, registration or any other type of form;** and

2. If you provide any information that is untrue, inaccurate, not current or incomplete, or S4 has reasonable grounds to suspect that such information is untrue, inaccurate, not current or incomplete, S4 has the right to refuse any and all current or future use of the Service (or any portion thereof).

*See* https://www.classaction.org/terms-of-use (emphasis added).

removed the link to the *Calhoun* complaint which within 24 hours' notice of Ms. Plitt's complaint. Rather than masquerading as a class member in an apparent attempt to gather information about BMPC's investigation, Ms. Plitt could have simply been truthful about her identity and requested a change to the site in the Spring 2019. Instead, Ms. Plitt did nothing for approximately six-and-a-half months.  Ms. Plitt's Declaration, however, omits this history, omitting both her use of an artifice to gain information, as well as information about the length of time when she was aware of the site and did nothing. In addition to lacking experience and making false statements, Plitt/Oxman's use of deception and her lack of candor to the tribunal about these important facts make the firm inadequate to lead the Related Actions.

## IV.   <u>CONCLUSION</u>

Based upon the foregoing, the *Austin* Plaintiffs respectfully request that the Court appoint Shanon J. Carson and Peter R. Kahana of BMPC as Interim Lead Class Counsel.

Dated: June 25, 2020                                   Respectfully submitted,


/s/ Shanon J. Carson_____

Shanon J. Carson
Peter R. Kahana
Amanda Trask
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Fax: (215) 875-4604
scarson@bm.net
pkahana@bm.net
atrask@bm.net

18