IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ETTA CALHOUN, SHERRY PORTER and CYNTHIA GRAY, on behalf of themselves and all other persons similarly situated, | ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 18-1022 ) Consolidated with ) Civ. A. No. 2:19-cv-1396 |
| v. | ) Civ. A. No. 2:20-cv-681 ) ) |
| INVENTION SUBMISSION CORPORATION d/b/a INVENTHELP, et al., | ) ) ) |
| Defendants. | ) |

MEMORANDUM OPINION

Plaintiffs Etta Calhoun, Sherry Porter and Cynthia Gray (collectively referred to as the "Calhoun Plaintiffs") brought this class action against defendants Invention Submission Corporation d/b/a InventHelp, Western Invention Submission Corporation d/b/a Western InventHelp, Technosystems Consolidated Corporation, Technosystems Service Corporation, Universal Payment Corporation, Intromark Corporation and Robert J. Susa (collectively referred to as the "InventHelp Defendants") and Thomas Frost and Thomas Frost, P.A. (collectively referred to as the "Frost Defendants"). The Calhoun Plaintiffs assert claims under the American Inventors Protection Act, 35 U.S.C. § 297 (AIPA), and Pennsylvania common law.[1] Simply put, they claim, among other things, that Defendants engaged in fraudulent invention promotion practices and services that harmed aspiring inventors and entrepreneurs.

---

[1] The common law claims include fraud, negligent misrepresentation, breach of contract, unjust enrichment and breach of fiduciary duty.

In October 2019, Plaintiffs Carla Austin and Nil Leone (collectively referred to as the "Austin Plaintiffs"), who are represented by a different law firm, commenced a class action styled *Austin v. Invention Submission Corporation*. While similar in focus to the *Calhoun* case, the Complaint asserts causes of action some but not all of the defendants named in *Calhoun* and the claims are not entirely identical.

Counsel for the Calhoun Plaintiffs filed a third related class action in May 2020 with three named plaintiffs (collectively referred to as the "Miclaus Plaintiffs"), *Miclaus v. Invention Submission Corporation*, against the same defendants identified in *Calhoun*. The claims asserted in *Miclaus* are substantially similar to those in *Calhoun*.

By order dated July 15, 2020, all three cases were consolidated at the *Calhoun* case number.

Presently pending before the Court are competing motions filed by counsel for the Calhoun and Miclaus Plaintiffs and counsel for the Austin Plaintiffs, (ECF Nos. 133, 142), both seeking to be named interim lead class counsel for all of the consolidated cases. The motions have been fully briefed (ECF No. 135, 144, 151) and oral argument was held on August 5, 2020.

For the reasons that follow, the Court concludes that appointment of interim lead class counsel is warranted in this case and the law firm of Berger Montague, PC will be appointed as interim lead class counsel.

**A. Relevant Procedural History**

The *Calhoun* action was originally commenced in the United States District Court for the Eastern District of Pennsylvania in June 2018.[2] Subsequently, on Plaintiffs' motion, the *Calhoun*

---

[2] The Complaint was signed by Richard Levan and Jon-Jorge Aras of Levan Legal (who are no longer counsel of record). Julie Pechersky Plitt and Marc Oxman of the Oxman Law Group were

lawsuit was transferred to the United States District Court for the Western District of Pennsylvania. Two rounds of motions to dismiss were resolved, and the operative document is the Second Amended Complaint (ECF No. 56) to which all Defendants have responded.

The *Austin* class action was commenced in October 2019. It names as defendants Intromark Corporation, Invention Submission Corporation, Technosystems Service Corporation and Western Invention Submission Corp. After Defendants' motion to dismiss was granted in part and denied in part, the remaining defendants, Invention Submission Corporation and Western Invention Submission Corp., filed their Answer in June 2020.

Finally, in the *Miclaus* action, which was commenced in May 2020 against the same defendants as named in the *Calhoun* action, the parties have agreed that a responsive pleading is not due until fourteen days after the pending motions to appoint interim lead counsel are decided.

The initial case management conference in the *Calhoun* case has been deferred for several reasons. In addition to the fact that some of the parties engaged in a mediation effort in June and July, these three actions were consolidated in July for purposes of discovery and other pretrial matters.

As noted, both the *Calhoun* and *Austin* Plaintiffs' counsel, the Oxman Law Group, PLLC ("Oxman"), and the *Austin* Plaintiffs' counsel, Berger Montague, PC ("BMPC"), now seek appointment as interim lead counsel.

**B. Standard of Review**

Federal Rule of Civil Procedure 23(g)(1) provides that a court that certifies a class must appoint class counsel. The factors that a court must consider include:

- The work counsel has done in identifying or investigating potential claims;

---

identified at that time as "of counsel." Ms. Plitt and Mr. Oxman entered their appearances in this Court on September 14, 2018 after the case was transferred here.

- Counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action;

- Counsel's knowledge of the applicable law; and

- The resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). A court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class" when appointing class counsel. Fed. R. Civ. P. 23(g)(1)(B). "If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).

Pursuant to Rule 23(g)(3), a court may designate interim lead class counsel to act on behalf of a putative class before determining whether to certify the action as a class action. Courts have applied the same requirements to this determination that are applicable to the appointment of class counsel upon class certification. *See, e.g., Outten v. Wilmington Trust Corp.*, 281 F.R.D. 193, 197 (D. Del. 2012); *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *2 (S.D. Cal. Mar. 1, 2013). This includes evaluating whether the proposed counsel will fairly and adequately represent the interests of the class. *Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 288 (N.D. Ill. 2014) (citing Fed. R. Civ. P. 23(g)(2), (4)). *See also* Manual for Complex Litigation (4th) § 21.11 at *1 (Federal Judicial Center 2004). Among other reasons why such appointment is appropriate, designation of interim lead counsel can clarify responsibility for protecting the interests of the class during precertification activities. *Id.*

### C. Discussion

While there are only three cases that have been consolidated, the Court concludes that there is a need for the appointment of interim lead counsel for the putative class at this time.

Indeed, the various constituencies concur that it is appropriate here. Suffice it to say that based upon the nature of recent filings and communications in this case, appointing one law firm to address pre-certification issues is not only advantageous from a streamlining perspective, but is also necessary based on the highly acrimonious relationship between counsel for the plaintiffs. Thus, in order to advance these consolidated cases through discovery and class certification in an expeditious manner, one law firm will be named as interim lead counsel.

Both law firms spend a substantial amount of effort in portraying counsel from the other law firm in the most negative light possible and highlighting what they believe to be improper behavior. Both firms accuse each other of misconduct, unethical behavior and a lack of professionalism. "When class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011). By way of example only, Oxman argues that BMPC advertised for clients using the *Calhoun* complaint without revealing that it was not involved in the case. In turn, BMPC contends that Oxman's counsel contacted BMPC and pretended to be a defrauded inventor. They both also cry foul about matters related to the mediation and the reasons for the withdrawal of the Kirby McInerney law firm as co-counsel for the Calhoun Plaintiffs. Neither law firm has explained how the Court could resolve these conflicting accusations or why it should do so at this time, however. *See In re HSBC Bank USA, N.A., Debit Card Overdraft Fee Litig.*, 2013 WL 3816597, at *10 (E.D.N.Y. July 22, 2013) (law firms challenged each other's ability to serve as class representatives, but the court deemed that argument premature and more appropriately reserved for the class certification stage of this litigation).

Admittedly, some of the conduct alleged is indeed troubling. The Court declines, however, to engage in fact finding and credibility determinations with regard to the parties' mudslinging because in large measure, these accusations are not relevant to the resolution of this matter, other than reinforcing the importance of appointing interim lead class counsel in this case.

Therefore, the Court directs its focus to the factors delineated in Rule 23(g). The first factor that the Court must consider is the work that counsel has done in identifying or investigation potential claims.  Oxman correctly notes that it filed the *Calhoun* case more than 18 months prior to the time that BMPC filed the *Austin* case, that the *Calhoun* complaint identifies additional defendants (the Frost Attorneys, Robert Susa and Universal Payment Corporation) and that unlike the *Austin* action, the Calhoun Plaintiffs rely upon theories of recovery that will more comprehensively protect the interests of the putative class. Oxman contends that the *Austin* complaint is "watered down" as it only alleges negligent conduct and seeks only non-monetary relief, unlike the *Calhoun* complaint that includes allegations of intentional conduct that would result in more significant relief for the class. BMPC counters that the *Calhoun* complaint is "unfocused" and denies that the *Austin* complaint merely alleges negligent conduct and seeks only injunctive relief.  BMPC also notes that as the cases have been consolidated, all named defendants and all asserted claims remain in the consolidated actions.

BMPC also asserts that rather than relying upon the efforts of the Oxman firm, it began investigating and identifying potential claims in mid-2018 and has been contacted by over one thousand potential class members.

Based upon the information provided to the Court, it appears that both law firms have performed a significant amount of work in investigating and bringing their respective claims.

While both have raised various collateral matters regarding this issue, the Court does not find that they are dispositive. Moreover, the Court declines to analyze counsels' respective litigation strategies at this stage of the proceedings. Therefore, it concludes that both law firms have engaged in a substantial amount of investigation and effort in bringing plaintiffs' claims, and this factor does not weigh significantly in favor of either firm.

Turning to the next factor, the Court has evaluated counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action. Oxman contends that it has more than sufficient experience to handle this case. Clearly, counsel of record for the Calhoun Plaintiffs are experienced attorneys who have handled sophisticated litigation matters. It also appears that they are one the first law firms to prosecute AIPA class claims. Although both Mr. Oxman and Ms. Plitt have experience in handling class action litigation, Ms. Plitt's experience has primarily been on behalf of defendants. The Oxman firm has not been previously appointed lead plaintiff's counsel in a class action case.[3]

BMPC indicates that it has fifty years of experience handling consumer class actions and that attorneys Shanon Carson and Peter Kahana, who have sixty years of combined experience, have successfully litigated and settled many claims on behalf of class plaintiffs. Both have identified multiple matters in which they served as co-lead counsel for consumer class claims. BMPC emphasizes its years of experience handling plaintiff class action lawsuits, including some before other members of this Court.

The Court concludes that BMPC has significantly more experience handling consumer

---

[3] Oxman has indicated that if it is appointed as interim lead class counsel, a second law firm with significant class action experience would enter its appearance on behalf of the Calhoun Plaintiffs. The Court cannot evaluate this other law firm, however, because it has insufficient information to do so. Instead, it bases its decision on the current motion, in which the Oxman firm seeks to be appointed as interim lead counsel.

class actions than Oxman, particularly as lead class counsel. This factor strongly weighs in favor of BMPC.

Regarding counsel's knowledge of the applicable law, both firms appear to have the requisite knowledge. The Oxman firm notes that there are very few cases filed under the AIPA but it has brought three of them.[4] BMPC criticizes Oxman for filing multiple cases instead of bringing them as one action in one court. As noted above, while the Court will not examine the litigation strategy of the two law firms, the multiple filings do not appear to be the most efficient manner in which to proceed.

The fourth factor relates to the resources that the law firms can and will devote to these actions. Oxman has already committed substantial resources to this case and commits to continue to do so, including taking all necessary discovery, the use of advanced software systems for analyzing electronic documents, and the commitment of investigative professionals and attorneys needed to advance the complex claims here and to represent Plaintiffs and the class adequately against highly qualified defense counsel.

BMPC is also willing and able to expend the resources necessary to ensure the vigorous prosecution of the claims in these consolidated actions. BMPC indicates that it has a lengthy record of success in terms of leading complex consumer class action cases against some of the largest and wealthiest corporations in the world. At oral argument, BMPC noted that it has spent approximately 2400 hours and $39,000 litigating the case thus far.

---

[4] At oral argument, the Court inquired as to the status of another AIPA case filed by Oxman in the Southern District of New York ("*Zanotti*"). Ms. Plitt stated that the court recently dismissed the InventHelp defendants from the *Zanotti* case, although she indicated that she was considering refiling the claim in state court.

Oxman and BMPC both have already committed substantial time, effort and resources to their respective cases and remain willing to continue to devote all necessary resources to advance the claims asserted in these actions.

Based upon the parties' submissions, it is evident that both law firms have investigated and identified multiple claims, have demonstrated a sophisticated knowledge of the law and a willingness to commit resources to the resolution of these cases. However, BMPC has significantly more experience in prosecuting class actions, particularly in the role of lead plaintiffs' counsel, than does the Oxman firm. Thus, the fact that Oxman was first to file a claim on behalf of the putative class is insufficient to tip the balance in its favor, particularly given BMPC's more extensive experience. *See Lowery v. Spotify USA Inc.*, 2016 WL 6818756, at *1 (C.D. Cal. May 23, 2016) (declining to appoint as lead class counsel an attorney who filed first but had "never served on an executive committee, steering committee, or any facet of a leadership structure of a complex class action" and further declining to appoint a firm whose class action experience was on the defendant's side); *Cadena v. American Honda Motor Co.*, 2020 WL 3107798, at *4 (C.D. Cal. June 9, 2020) (law firm that filed first was "capable of handling this class action [but] the relative experience of [the second firm] in automotive defect class actions suggests that they would be 'best able to represent the interests of the class.'")

Therefore, the Court concludes that it is appropriate to appoint BMPC as interim lead class counsel.[5]

---

[5] At oral argument, counsel for the InventHelp Defendants expressed support for the appointment of BMPC as lead counsel because of their view that if BMPC is appointed, these actions will advance in a more coordinated, expeditious and cooperative manner. While Defendants may take this position for any number of reasons, the Court acknowledges its counsel's thoughtful oral argument which provided some further insight into the present acrimony in this case to date.

As a final matter, the Court notes that this appointment is interim in nature and can and will be reexamined if a class is certified. Moreover, going forward, it anticipates and expects all counsel to engage in their advocacy in a professional and ethical manner, and that all counsel for Plaintiffs will cooperate fully with each other in advancing the interests of all members of the putative class.

An appropriate order will be entered.

BY THE COURT:

_____
PATRICIA L. DODGE
United States Magistrate Judge

Dated:  August 25, 2020