IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GETA MICLAUS, VIM BYRNE and KEVIN BYRNE, on behalf of themselves and all other persons similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　vs<br><br><br><br><br>INVENTION SUBMISSION CORPORATION d/b/a INVENTHELP, et al.,<br><br>　　　　　Defendants. | <br><br><br><br><br><br><br>Civil Action No. 20-681<br>Consolidated with 18-cv-1022<br>Consolidated with 18-cv-1396<br>Judge Bissoon<br>Magistrate Judge Dodge |

## REPORT AND RECOMMENDATION

I.  Recommendation

It is respectfully recommended that the Motion to Dismiss of Defendants Invention Submission Corporation d/b/a InventHelp, Western Invention Submission Corporation d/b/a Western InventHelp, Technosystems Consolidated Corporation, Technosystems Service Corporation, Universal Payment Corporation, Intromark Incorporated and Robert J. Susa (ECF No. 45) be denied.

II.  Report

Plaintiffs Geta Miclaus and Vim and Kevin Byrne bring this action on their own behalf and on behalf of all others similarly situated, raising claims under the American Inventors Protection Act, 35 U.S.C. § 297 (AIPA) and Pennsylvania common law. Plaintiffs allege that the defendants, while purporting to act as invention promoters and patent attorneys, in fact are engaged in a deceptive and fraudulent invention promotion scam that has bilked them and thousands of other aspiring inventors and entrepreneurs out of millions of dollars for services

that the defendants do not provide and never intend to provide. Named as Defendants are: Invention Submission Corporation d/b/a InventHelp ("InventHelp"), Western Invention Submission Corporation d/b/a Western InventHelp ("Western InventHelp"), Technosystems Consolidated Corporation, Technosystems Service Corporation, Universal Payment Corporation, Intromark Incorporated ("Intromark") and Robert J. Susa (together, "the InventHelp Defendants"); Thomas Frost and Thomas Frost, P.A. (together, the "Frost Attorney Defendants"); John Doe Companies 1-10, and John Doe Individuals 1-10.

Presently pending before the Court for disposition is a partial motion to dismiss (ECF No. 45) filed by the InventHelp Defendants, which has been fully briefed (ECF Nos. 46, 48, 52).[1] The InventHelp Defendants seek dismissal of the AIPA disclosure omission claim in Count I of the Complaint.

### A. Relevant Procedural History

Plaintiffs commenced this action, which is related to Civ. A. No. 18-1022, *Calhoun v. Invention Submission Corp.* ("the *Calhoun* Action"), in May 2020. Federal question jurisdiction is based on the AIPA claims alleged in Count I, 28 U.S.C. § 1331, as well as the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA) because the amount in controversy exceeds the sum of $5 million, exclusive of interest and costs, and is a class action in which one member of the class of plaintiffs was a citizen of a state different from the defendants (Compl. ¶ 61).[2] In addition to the AIPA claim, Plaintiffs assert claims of fraud, negligent misrepresentation, breach of contract, unjust enrichment and breach of fiduciary duty.

This case has been consolidated for purposes of discovery and other pretrial proceedings

---

[1] On October 30, 2020, the Frost Attorney Defendants filed an Answer to the Complaint, although they did so in the *Calhoun* Action., Civ. A. No. 18-1022 (ECF No. 172). No appearance has been entered on behalf of John Doe Companies 1-10 or John Doe Individuals 1-10.
[2] ECF No. 1.

with the *Calhoun* Action, as was a third case, *Austin v. Invention Submission Corp.*, Civ. A. No. 19-1396.

The pending partial motion to dismiss with respect to the AIPA omission claims in Count I of this case have been fully briefed.

### B. Standard of Review

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. *Id.* at 679.

As noted by the Third Circuit in *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011), a 12(b)(6) inquiry includes identifying the elements of a claim, disregarding any allegations that are no more than conclusions and then reviewing the well-pleaded allegations of the complaint to evaluate whether the elements of the claim are sufficiently alleged. If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment

would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). The InventHelp Defendants have attached to their motion the AIPA disclosures that were made to the named Plaintiffs (ECF No. 48 Exs. A-C) and Plaintiffs have submitted these and other documents in connection with their opposition to the motion (ECF No. 49). The parties have not disputed the authenticity of these documents. Therefore, all of these documents may all be considered without converting the motion into a motion for summary judgment.

### C. Facts[3]

#### 1. General Overview

As explained herein, the AIPA requires invention promoters to make certain disclosures to potential clients prior to entering into contracts for invention promotion services. 35 U.S.C. § 297(a). The statute provides a cause of action for customers who have been injured by any materially false or fraudulent statements or omissions made by invention promoters. 35 U.S.C. § 297(b).

Plaintiffs allege that the InventHelp Defendants' AIPA disclosures omit statutorily mandated information, that Western InventHelp clients are not provided with proper AIPA-mandated disclosures and that Defendants provide no AIPA-mandated disclosures with regard to Intromark, with whom customers sign Submission Agreements). (Compl. ¶¶ 3-5.)

---

[3] Only those facts that are relevant to the partial motion to dismiss are cited herein.

According to Plaintiffs, fraud permeates all of the dealings and contracts between the Class Plaintiffs and all of the Defendants. This includes fraudulently misrepresenting the content of various contracts and inducing the Class Plaintiffs to enter into these contracts. As a result, the Class Plaintiffs executed documents that have different terms and conditions than those represented by Defendants. (*Id.* ¶¶ 37-38.)

According to the Complaint, InventHelp first sells customers a "Basic Information Package" ("BIP"), resulting in their receipt of a "Report" and a "Preliminary Patentability Opinion" issued by the Frost Attorney Defendants which falsely state that they are eligible to obtain design or utility patents. When customers review these documents, InventHelp pressures them to purchase its "Submission Services Agreement" at costs ranging between $13,500 and $30,000. (*Id.* ¶¶ 10-15.) *See also id.* ¶¶ 68, 97.

Plaintiffs allege that InventHelp also falsely represents that "today is the very last day" of a "special" or "promotion" that will save customers hundreds or thousands of dollars. (*Id.* ¶ 39.) If clients indicate that they cannot afford the more expensive services, InventHelp suggests that they obtain a loan from Universal Payment Corporation ("UPC"), which Plaintiffs allege is associated with InventHelp and is an entity with no physical address. (*Id.* ¶¶ 26, 30-31.)

2. Relevant Facts Regarding Plaintiff Miclaus

In 2017, Plaintiff Miclaus created a potential invention. After seeing several InventHelp television commercials, she contacted the company through its website, inventhelp.com. (*Id.* ¶¶ 70-71.)

In August 2017, Ms. Miclaus received an email from InventHelp providing her with contact information for "Your InventHelp representative, Jim Cardiges." She met with Mr. Cardiges in September 2017. He told her that her idea was extremely marketable and carried

immense potential for profit. During their meeting, Ms. Miclaus entered into two agreements with Western InventHelp: a BIP Agreement for which she paid $760, and a Preliminary Patentability Search and Opinion Referral Request for $215. (*Id.* ¶¶ 75, 79-81.)

Mr. Cardiges presented her with two InventHelp disclosure documents at their meeting. One of them states that: "From 2014-2016, we signed Submission Agreements with 7,039 clients. As a result of our services, 159 clients have received license agreements for their products, and 35 clients have received more money than they paid us for these services." (*Id.* ¶ 82; ECF No. 46 Ex. C.)

The second InventHelp disclosure provided to Ms. Miclaus states:

> The total number of inventions evaluated by InventHelp for commercial potential in the past five years is 0. InventHelp does not attempt to evaluate inventions and accepts most inventions for its services…. The total number of customers who have contracted with InventHelp in the past 5 years is 10,323.... [T]he total number of clients known to have received more money than they paid InventHelp for submission services as a direct result of these services is 45. The total number of customers known by InventHelp to have received license agreements for their inventions as a direct result of InventHelp services is 236."

(*Id.* ¶ 83; Plitt Aff. Ex. B; ECF No. 46 Ex. A.)

Plaintiffs assert that although Ms. Miclaus did not know it at the time, the numbers in both of these disclosure documents were incomplete, false and misleading by virtue of their inclusion of sham licensing agreements, and their exclusion of information required by the AIPA. (*Id.* ¶ 84.)

Mr. Cardiges also provided Ms. Miclaus with Western InventHelp disclosure documents at the meeting. Those disclosures state: "The total number of customers who have contracted with the Company for invention development services prior to the last thirty (30) days is 63,859. The number of customers that have received by virtue of this invention developer's performance, an amount of money in excess of the amount of money paid by the customer to this invention

developer is 0." Plaintiffs allege that among other omissions, the disclosures failed to provide information as to Western InventHelp customers' receipt of licensing agreements, and thus are in violation of the AIPA. (*Id.* ¶ 85.)

In October 2017, Ms. Miclaus met Mr. Cardiges for a second time at InventHelp's office to go over the results of her BIP report and the Thomas Frost P.A. Preliminary Patentability Opinion. Mr. Cardiges, a non-lawyer, "explained" the Patentability Report and gave Ms. Miclaus legal advice. Based on the information provided to her by Mr. Cardiges, she agreed to move forward with submission services, and signed a $14,500 Submission Agreement with Western InventHelp. Plaintiffs note that all "Submission Agreements" with InventHelp and/or Western InventHelp are identical. (*Id.* ¶¶ 101-02.)

The Submission Agreement includes the following language:

WESTERN INVENTION SUBMISSION CORPORATION (WISC) is the name of the corporation contracting to perform the invention development services. WISC is operating under its registered name, Western InventHelp. There are no parent, subsidiary or affiliated companies that will engage in performing invention development services under this Contract except for INVENTION SUBMISSION CORPORATION, an affiliate, and TECHNOSYSTEMS SERVICE CORPORATION, an affiliate. Company is also affiliated with INTROMARK INCORPORATED, which attempts to market inventions where substantial interest has been expressed in accordance with paragraph 1.N above.

(*Id.* ¶ 103; Plitt Aff. Ex. D.)

Ms. Miclaus also signed an Intromark Proposal. All InventHelp Defendant clients who signs up for submission services also sign an Intromark Proposal; the Intromark Proposals are identical and uniform. (*Id.* ¶¶ 111-12.)

The Intromark Proposal provides that:

Whereas Intromark, Inc. is a Pennsylvania corporation which is engaged in the business of assisting inventors in attempting to market their inventions, products or ideas.

7

> Whereas, Intromark understands that Western InventHelp submits ideas, inventions, and products to industry in an attempt to obtain a good faith review, and that some of these may generate substantial interest such that it will be useful to attempt to market and to license them; and Western InventHelp does not market or sell inventions.
>
> Western InventHelp shall only submit to Intromark, and Intromark agrees to accept in accordance with this Proposal, inventions, ideas or products in which substantial interest has been expressed, or where Intromark in its discretion believes it would be useful to attempt marketing for the purpose of trying to obtain a sale or licensing agreement.
>
> The parties agree that Intromark shall have access to all of Client's and Western InventHelp's submission materials and complete files in connection with Intromark's agreement to accept said invention, idea or product for marketing.
>
> Client further agrees that Intromark during the term of this Proposal shall have the exclusive right to negotiate, and to execute contracts on Client's behalf for the sale or licensing of the idea, invention or product.
>
> Intromark will attempt to market Client's idea, invention or product only in the event that substantial interest is expressed in Client's idea. If a licensing agreement or outright sale results, Intromark shall receive twenty percent (20%) of all royalties paid or of the total sales price paid.... Intromark shall be compensated as stated above, even if the royalties are earned or the sale is made after the termination of this Agreement for any reason.

(*Id.* ¶¶ 113-18; Plitt Aff. Ex E.)

When she signed the Submission Agreement and Intromark Proposal contracts, Ms. Miclaus was not provided with complete or accurate disclosures of, among other things, the number of customers the companies had in the last five years, the number of positive and negative evaluations, the number of customers who received a net profit from inventions, the number of customers who received license agreements, or the names and addresses of invention promotion companies with whom the companies or their officers were affiliated in the last ten (10) years. (*Id.* ¶ 119.)

Further, Ms. Miclaus was not provided with any InventHelp AIPA disclosures or Intromark Incorporated AIPA disclosures at the October 2017 meeting. Ms. Miclaus was

8

provided with Western InventHelp disclosures at that meeting stating that "The total number of customers who have contracted with Company for Invention development services prior to the last thirty (30) days is 65,666. The number of customers that have received, by virtue of this invention developer's performance, an amount of money in excess of the amount of money paid by the customer to this invention developer is 0." This disclosure omits any information as to licensing agreements, among other omissions, and is in violation of the AIPA. (*Id.* ¶¶ 120-22.)

### 3. Relevant Facts Regarding Plaintiffs Vim and Kevin Byrne

In 2017, Plaintiffs Kevin and Vim Byrne had an idea for a new invention. In July 2017, they met with InventHelp representative Brian Werner at InventHelp's office. Mr. Werner expressed interest in their idea and told them that it carried enormous potential for profit. On July 13, 2017, Mr. and Mrs. Byrne signed a BIP Agreement with Western InventHelp and a retail installment contract with "private money lender" UPC for $760.00. The Byrnes' credit card was charged by "Techno Inventhelp." (*Id.* ¶¶ 139-41.)

Mr. Werner provided Mr. and Mrs. Byrne purported AIPA disclosures at that meeting on behalf of the entity InventHelp. Those disclosures state:

> The total number of customers who have contracted with InventHelp in the past 5 years is 10,323. The total number of customers to have received a net financial profit as a direct result of invention promotion services provided by InventHelp is unknown. However, the total number of clients known to have received more money than they paid InventHelp for submission services as a direct result of these services is 45. The total number of customers known by InventHelp to have received license agreements for their inventions as a direct result of InventHelp services is 236.

According to Plaintiffs, these disclosure numbers are incomplete, incorrect, false and fraudulent. Among other things, the disclosure as to the number of license agreements is false because InventHelp include sham "60-day license agreements" in those numbers. Mr. and Mrs. Byrne were not presented with disclosures on behalf of Western InventHelp at this meeting. However,

9

Mr. Werner gave them the impression that InventHelp and Western InventHelp were one and the same. Thus, they had no reason to believe that they should have been provided with disclosures from Western InventHelp separate and apart from the InventHelp disclosures. (*Id.* ¶¶ 142-44.)

After signing the BIP agreement, Mr. and Mrs. Byrne met with Mr. Werner at InventHelp's offices for a second time on September 25, 2017. Mr. Werner told them that the results of the BIP were very promising and pressured them to sign a $11,900 Submission Agreement with Western InventHelp. When they expressed reservations about the extremely high cost of these services, Mr. Werner emphasized that they could just use their existing contract with "private money lender" UPC to pay off the Submission Agreement. Mr. Werner also said that the terms of the Submission Agreement protected them because if they needed to stop making payments. (*Id.* ¶¶ 145-47.) Mr. and Mrs. Byrne financed the Submission Agreement through their retail installment contract with UPC, which is identical to that signed by all Named Plaintiffs and proposed class members.

Based on Mr. Werner's representations, Mr. and Mrs. Byrne signed a "Submission Agreement" with Western InventHelp for $11,900, and an Intromark Proposal at the same time. Mr. Werner signed the agreement on behalf of InventHelp, Western InventHelp, UPC and Intromark. Those agreements are identical to those signed by all of the named Plaintiffs and proposed class members. (*Id.* ¶ 148.)

The Byrnes were not informed at that meeting of the accurate number of customers the InventHelp Defendants had in the last five years, the number of positive and negative evaluations, the accurate number of customers who received a net profit from inventions, the accurate number of customers who received license agreements, or the names and addresses of invention promotion companies with whom InventHelp Defendants or its officers were affiliated

10

in the last ten (10) years. (*Id.* ¶¶ 149-50.)

The Byrnes were provided disclosures from Western InventHelp for the first time at the September 25, 2017 meeting. The Western InventHelp disclosures state: "The total number of customers who have contracted with Company prior to the last 30 days is 63,859. The number of customers that have received, by virtue of this invention developer's performance, an amount of money in excess of the amount of money paid by the customer to this invention promoter is 0." The Western InventHelp disclosures provided no information whatsoever as to number of license agreements, among other omissions, and thus are ipso facto in violation of the AIPA. (*Id.* ¶¶ 151-52.)

Plaintiffs assert that to the extent the Western InventHelp disclosure is a stand-alone disclosure, it is in violation of the AIPA because it omits the number of licensing agreements, among other reasons. To the extent the Western InventHelp disclosure is a supplement to InventHelp disclosures provided to Mr. and Mrs. Byrne at the July 13, 2017 meeting, the disclosures are in violation of the AIPA because their numbers contradict one another. Mr. and Mrs. Byrne were provided with no AIPA disclosures from Intromark Incorporated. (*Id.* ¶¶ 153-54.)

### D. Discussion

1. <u>AIPA Claims</u>

The AIPA provides as follows:

> (a) In General.--An invention promoter shall have a duty to disclose the following information to a customer in writing, prior to entering into a contract for invention promotion services:
>
> (1) the total number of inventions evaluated by the invention promoter for commercial potential in the past 5 years, as well as the number of those inventions that received positive evaluations, and the number of those inventions that received negative evaluations;

11

>   (2) the total number of customers who have contracted with the invention promoter in the past 5 years, not including customers who have purchased trade show services, research, advertising, or other nonmarketing services from the invention promoter, or who have defaulted in their payment to the invention promoter;
>
>   (3) the total number of customers known by the invention promoter to have received a net financial profit as a direct result of the invention promotion services provided by such invention promoter;
>
>   (4) the total number of customers known by the invention promoter to have received license agreements for their inventions as a direct result of the invention promotion services provided by such invention promoter; and
>
>   (5) the names and addresses of all previous invention promotion companies with which the invention promoter or its officers have collectively or individually been affiliated in the previous 10 years.

35 U.S.C. § 297(a).

>   Further, the AIPA provides that:
>
>   (b) Civil Action.--(1) Any customer who enters into a contract with an invention promoter and who is found by a court to have been injured by any material false or fraudulent statement or representation, or any omission of material fact, by that invention promoter (or any agent, employee, director, officer, partner, or independent contractor of such invention promoter), or by the failure of that invention promoter to disclose such information as required under subsection (a), may recover in a civil action against the invention promoter (or the officers, directors, or partners of such invention promoter), in addition to reasonable costs and attorneys' fees--
>
>   (A) the amount of actual damages incurred by the customer; or
>
>   (B) at the election of the customer at any time before final judgment is rendered, statutory damages in a sum of not more than $5,000, as the court considers just.

35 U.S.C. § 297(b).

The InventHelp Defendants argue that the AIPA claims in Count I based on mandated disclosure omissions should be dismissed because they are insufficient to state a claim upon which relief may be granted. Specifically, they contend that, although Plaintiffs allege that they

12

did not receive all of the required disclosures, in fact, they received all necessary disclosures from InventHelp. *See* ECF No. 46 Exs. A, B, C.

In response, Plaintiffs contend that the InventHelp Defendants directly contradict the position they took in the *Calhoun* Action. In moving to dismiss the omission claims in that case, the InventHelp Defendants argued that InventHelp and Western InventHelp were two distinct entities and that each had its own set of disclosure numbers. But in this case, the InventHelp Defendants are arguing the opposite, namely, that only InventHelp was required to present disclosures. Therefore, Plaintiffs contend that Defendants' current position is barred by the doctrines of judicial estoppel and by the law of the case.

In a reply brief, the InventHelp Defendants contend that their position has always been consistent: only InventHelp is an "invention promoter" under the AIPA and Western InventHelp is not an invention promoter but, pursuant to certain state laws (such as those of California), additional disclosures were required and were provided.

2. Calhoun Action Memorandum Order

In the *Calhoun* Action, Judge Bissoon issued a Memorandum Order on April 9, 2019 (ECF No. 55), that resolved the InventHelp Defendants' motion to dismiss. Judge Bissoon concluded that Plaintiff Calhoun raised three kinds of AIPA claims: "type 1" claims, which consisted of omissions from InventHelp's AIPA-mandated disclosures; "type 2" claims, which consisted of misrepresentations in the AIPA-mandated disclosures; and "type 3" claims, which consisted of other misrepresentations made by InventHelp beyond the mandated disclosures. Judge Bissoon then held that Plaintiff Calhoun's type 1 claims were time-barred because she filed them more than four years after signing the agreements at issue (which would have put her on notice immediately that certain mandated disclosures were missing).

Judge Bissoon concluded that type 2 claims were not time-barred. However, they were subject to dismissal on the ground that, despite her allegations of inconsistency, Calhoun "has provided no basis on which the Court could infer that these figures are mutually inconsistent or inaccurate and has failed to raise a reasonable expectation that discovery will reveal those numbers to be wrong." (ECF No. 55 at 8.) Specifically, Judge Bissoon concluded that any apparent inconsistencies in the disclosure numbers were explained by the fact that they were submitted by two different entities, InventHelp and Western InventHelp.

Thus, in the *Calhoun* Action, the InventHelp Defendants did not argue, nor did Judge Bissoon hold, that Western InventHelp is not an invention promoter or that only InventHelp has to provide AIPA mandated disclosures. In fact, the opposite is true: the InventHelp Defendants argued that each entity filed its own set of disclosures and that is why they did not have to be consistent. For purposes of resolving the motion to dismiss, Judge Bissoon accepted this position.

### 3. Judicial Estoppel

Plaintiffs contend that the InventHelp Defendants' argument that Western InventHelp and Intromark did not have to submit AIPA disclosures is barred by the doctrine of judicial estoppel.

The purpose of judicial estoppel is to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 732, 749 (2001). It prohibits parties from changing positions according to the exigencies of the moment. *Id.* As an equitable doctrine, it may be invoked by a court at its discretion. *Id.* Intended to prevent a party from improper use of the judicial process, it prevents a party from taking inconsistent positions that, in combination, indicate that either the initial or subsequent court has been misled. *See Microsoft Corp. v. Baker*, 137 S.Ct. 1702, 1714, (2017) ("where a party assumes a certain position in a legal proceeding, and succeeds in

maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position") (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)); *Beltz v. Erie Indem. Co.*, 733 F. App'x. 595, 600 (3d Cir. 2018) ("Judicial estoppel bars a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.) (citation omitted).

In the *Calhoun* Action, the InventHelp Defendants persuaded the Court to dismiss some of the plaintiff's allegations on the basis that InventHelp and Western InventHelp were separate entities whose AIPA disclosure numbers would be different. Now, these same defendants ask the Court to excuse the lack of disclosures from Western InventHelp and Intromark on the ground that these entities did not have to submit disclosures under the AIPA. This change in position is appropriately barred by the doctrine of judicial estoppel.[4]

Moreover, even if this doctrine is not applied, the Court cannot resolve the disputed issue of the status of these entities. The InventHelp Defendants assert that Western InventHelp and Intromark are not "invention promoters" because they do not "hold [themselves] out through advertising in any mass media as providing such services," 35 U.S.C. § 297(c)(3).[5] Plaintiffs contest this conclusion (ECF No. 48 at 7 n.5). Clearly, this issue can't be resolved at the motion to dismiss stage.

The InventHelp Defendants further contend that what appear to be partial AIPA mandated disclosures from Western InventHelp are actually disclosures made pursuant to

---

[4] Plaintiffs also contend that the change in position is barred by the doctrine of law of the case. The Court need not reach this alternative argument.

[5] While the InventHelp Defendants also contend that Plaintiffs do not allege that these entities are invention promoters, the Complaint states otherwise. See Compl. ¶ 224 ("Defendants are invention promoters, officers, and their agents, as defined by the American Inventors Protection Act of 1999, 35 U.S.C. § 297 ("AIPA"). Defendants work in concert to perpetrate this scheme.")

California's Invention Development Services Contract Act, not the AIPA. (ECF No. 46 at 4.) Again, this issue cannot be resolved in the context of a motion to dismiss.

Accepting Plaintiffs' allegations as true at this stage of the proceedings, they did not receive all mandated AIPA disclosures from Western InventHelp and Intromark (Compl. ¶¶ 4-5, 119, 121-22, 153-54). Therefore, the partial motion to dismiss with respect the disclosure omission claim in Count I should be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by March 22, 2021. Any party opposing the objections shall file a response by April 5, 2021. Failure to file timely objections will waive the right of appeal.

Dated: March 8, 2021                                    Respectfully submitted,


                                                        /s/Patricia L. Dodge
                                                        PATRICIA L. DODGE
                                                        United States Magistrate Judge