**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Etta Calhoun, Sherry Porter, and Cynthia Gray, on behalf of themselves and all other persons similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>Invention Submission Corporation d/b/a InventHelp, Technosystems Consolidated Corp., Technosystems Service Corp., Western Invention Submission Corp., Universal Payment Corporation, Intromark Incorporated, Robert J. Susa, Thomas Frost, P.A., Thomas Frost, John Doe Companies 1-10, John Doe Individuals 1-10,<br><br>     Defendants. | No. 2:18-cv-01022<br><br>Magistrate Judge Patricia L. Dodge |

This Document Also Relates To:

*Carla Austin, et al. v. Invention Submission Corporation, et al.*, No. 2:19-cv-01396

*Geta Miclaus, et al. v. Invention Submission Corporation, et al.,* No. 2:20-cv-681

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

I.    INTRODUCTORY STATEMENT ................................................................. 1

II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................... 2

    A.    Plaintiffs' Initial Pleadings ................................................................. 2

    B.    Defendants' Motions to Dismiss and Motions to Strike ........................... 4

    C.    The Parties Engaged in Extensive Discovery ......................................... 7

    D.    Mediation and Settlement ................................................................. 9

    E.    Notable Settlement Terms ................................................................. 10

        1.    Settlement Consideration ......................................................... 10

        2.    Settlement Administration and Claim Submission ................................... 14

        3.    The Notice Plan ......................................................................... 15

III.  ARGUMENT ..................................................................................... 17

    A.    Preliminary Approval of the Proposed Settlement is Warranted ..................... 17

    B.    The Settlement Should Be Approved Under Rule 23(e)(2) ........................... 18

        1.    Plaintiffs and Class Counsel Have Adequately Represented the Class and the Settlement Is the Product of Arm's Length Negotiations by Experienced Counsel (Rule 23(e)(2)(A-B)) ................................................ 19

        2.    The Settlement Relief Provided is Adequate Under Rule 23(e)(2)(C) ..... 21

        3.    The Settlement Agreement Treats Settlement Class Members Fairly ...... 24

        4.    Defendants Cannot Withstand a Greater Judgment ................................... 24

        5.    The Additional *Girsh* Factors Favor Preliminary Approval ..................... 27

    C.    The Court Should Conditionally Certify The Settlement Class ........................... 28

        1.    Numerosity Under Rule 23(a)(1). ............................................... 28

        2.    Commonality Under Rule 23(a)(2). ............................................ 29

        3.    Typicality Under Rule 23(a)(3). ............................................... 30

        4.    Adequacy of Representation Under Rule 23(a)(4). .............................. 30

         5.      The Predominance and Superiority Requirements of Rule 23(b)(3). 31

   D.      The Court Should Approve The Proposed Notice Plan. ........................................ 34

   E.      A Final Approval Hearing Should be Scheduled .................................................. 36

IV.   CONCLUSION ................................................................................................................. 36

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ................................................. 28, 32

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ................................................................................................ 29

*Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*,
   622 F.3d 275 (3d Cir. 2010) .......................................................................................... 30

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) .......................................................................................... 30

*Brandenburg v. Cousin Vinny's Pizza, LLC*,
   No. 3:16-cv-516, 2019 WL 6310376 (S.D. Ohio Nov. 25, 2019) ............................................ 26

*Calhoun v. Invention Submission Corp.*,
   No. 18-1022, 2019 WL 1547372 (W.D. Pa., Apr. 9, 2019) ................................................... 4, 5

*Figueroa v. Conner Logistics, Inc.*,
   No. 1:19-cv-01004-NONE-BAM, 2021 WL 164872 (E.D. Cal. Jan 19, 2021) ...................... 26

*Frederick v. Range Resources-Appalachia, LLC*,
   No. 08-228, 2010 WL 11561286 (W.D. Pa. 2010) ............................................... 17, 20, 34, 35

*Giercyk v. National Union Fire Ins. Co. of Pittsburg*,
   No. 2:12-cv-6272, 2016 WL 7209649 (D.N.J. Oct. 13, 2016) ................................................ 34

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975) ................................................................................... 1, 18, 21

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
   525 Fed. Appx. 94 (3d Cir. 2013) .................................................................................. 30

*Hickton v. Enterprise Rent-A-Car Company*,
   Nos. 2:09-mc-00210, 2:09-mc-00210, 2013 WL 12137092 (W.D. Pa. Apr. 29, 2013) .... 27, 35

*Hill v. Udren Law Offices, P.C.*,
   No. 13-419, 2020 WL 6785537 (W.D. Pa. Nov. 18, 2020) ......................................... 27, 28, 33

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013) .......................................................................................... 35

*In re CertainTeed Corp. Roofing Shingle Products Liability Litig.*,
   269 F.R.D. 468 (E.D. Pa. 2010) .................................................................................... 24

*In re Chambers Development Sec. Litig.*,
  912 F.Supp. 822 (W.D. Pa. 1995) ........................................................... 26

*In re Cigna Corp. Secs. Litig.*,
  No. 02-8088, 2007 WL 2071898 (E.D. Pa. July 13, 2007) ......................... 21

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
  No. 05-CV-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................ 23

*In re Hydrogen Peroxide Antitrust Litig*,
  552 F.3d 305 (3d Cir. 2008) ..................................................................... 32

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ..................................................................... 33

*In re Nat'l Football League Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ............................................................... passim

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ................................................................ 19, 34

*In re Warfarin Sodium Antitrust Litig.*,
  391 F.3d 516 (3d Cir. 2004) ..................................................................... 19

*In re WorldCom, Inc. Sec. Litig.*,
  388 F.Supp.2d 319 (S.D.N.Y. 2005) ......................................................... 23

*Ins. Brokerage Antitrust Litig.*,
  282 F.R.D. 92 (D.N.J. 2012). .................................................................... 22

*Jackson v. Wells Fargo Bank, N.A.*,
  No. 2:12-cv-01262-DSC, 2014 WL 12600178 (W.D. Pa. Oct 27, 2014) ......................... 20, 34

*Johnson & Johnson*,
  900 F. Supp. 2d 467 (D.N.J. 2012) .......................................................... 27

*Legere-Gordon v. Firstcredit Incorporated*,
  No. 1:19-cv-360 WBS, 2021 WL 276695 (D. Idaho Jan. 26, 2021) ........................ 26

*Marchese v. Cablevision Sys. Corp.*,
  No. CV102190MCAMAH, 2016 WL 7228739 (D.N.J. Mar. 9, 2016) ................... 28, 32

*Marcus v. BMW of N. Am., LLC*,
  687 F.3d 583 (3d Cir. 2012) ................................................................. 28, 29

*Murphy v. Charles Tyrwhitt, Inc.*,
  No. 20-cv-00056, 2020 WL 8513583 (W.D. Pa., Nov. 25, 2020) .................... 17, 20, 22, 27

iv

*Murphy v. Eyebobs, LLC*,
   No. 1:21-cv-00017, 2021 WL 4594679 (W.D. Pa.  Oct. 6, 2021) ........................................... 27

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   259 F.3d 154 (3d Cir. 2001) ........................................................................................................ 30

*O'Brien v. Brain Research Labs, LLC*,
   No. CIV.A. 12-204, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) ................................................ 33

*Reyes v. Netdeposit, LLC*,
   802 F.3d 469 (3d Cir. 2015) ........................................................................................................ 32

*Shapiro v. All. MMA, Inc.*,
   No. CV 17-2583 (RBK/AMD), 2018 WL 3158812 (D.N.J. June 28, 2018) ........................... 21

*Stewart v. Abraham*,
   275 F.3d 220 (3d Cir. 2001) ................................................................................................. 28, 29

*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3rd Cir. 2011) ............................................................................................... 24, 32

*Varacallo v. Massachusetts Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005) .................................................................................................... 32

*Vines v. Covelli Enterprises*,
   No. 12–0028, 2012 WL 5992114 (W.D. Pa. Nov. 30, 2012)........................................... *passim*

**Statutes**

35 U.S.C. § 297 ................................................................................................................................ 1, 13

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................................... *passim*

**Other Authorities**

Manual for Complex Litigation (Fourth), § 21.632 (2011) .......................................................... 17

## I.      INTRODUCTORY STATEMENT

After years of hard-fought litigation and several rounds of arm's-length settlement negotiations and mediation, ultimately overseen by U.S. Magistrate Judge Lisa Pupo Lenihan, the Parties[1] reached a Settlement Agreement that includes a package of substantial and meaningful relief that includes both monetary and non-monetary benefits. The relief addresses Plaintiffs' core allegations concerning the InventHelp Defendants' violations of the American Inventors Protection Act, 35 U.S.C. § 297 ("AIPA") and breach of contract stemming from the failure to perform invention promotion services as promised. Under the Settlement Agreement, the Settlement Class[2] will receive benefits including economic relief, credit repair services, and detailed changes to the InventHelp Defendants' policies that directly address the core allegations and ensure that the alleged wrongful conduct does not continue.

Moreover, the Settlement, which results from a Mediator's Proposal by Magistrate Judge Lenihan, is an excellent result for the Settlement Class in light of the risks of continuing to litigate this matter that are addressed in detail below and in the supporting declarations. The proposed Settlement is fair, reasonable, and adequate, and therefore meets the standards for preliminary settlement approval set forth in FED. R. CIV. P. 23 and the factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). Accordingly, Plaintiffs respectfully request that the Court enter the Parties' proposed Preliminary Approval Order (*see* Exhibit 4 to the Settlement Agreement): (1)

---

[1] All capitalized terms herein have the meanings defined in the Parties' Settlement Agreement that is attached hereto as Exhibit 1. Attached hereto as Exhibit 2 is the Declaration of Shanon J. Carson in Support of Plaintiffs' Motion for Preliminary Approval of Settlement Agreement (cited herein as "Carson Decl. ¶ __").

[2] The term "Settlement Class" means "All United States residents who purchased services from any of the InventHelp Defendants from January 1, 2014 to June 30, 2021." SA, ¶ 48. The Settlement Class excludes: (a) employees/officers/agents of the InventHelp Defendants; and (b) any judicial officer assigned to the Litigation. *Id.*

preliminarily approving the Settlement as fair, reasonable, and adequate and in the best interest of the Settlement Class; (2) reaffirming current Interim Lead Class Counsel as Lead Class Counsel for the Settlement Class; (3) conditionally certifying the Settlement Class pursuant to FED. R. CIV. P. 23(a) and (b)(3); (4) authorizing the Parties' proposed Notice Plan; and (5) scheduling a Final Approval Hearing approximately 115 days from the date of the Preliminary Approval Order.

## II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Plaintiffs' Initial Pleadings

Prior to filing their clients' complaints, counsel for Plaintiffs conducted a thorough investigation of the facts and law relating to AIPA and Defendants' conduct, including analyzing the InventHelp Defendants' policies and practices. Carson Decl. ¶ 9.  On June 1, 2018, the first plaintiff filed a class action complaint in the U.S. District Court for the Eastern District of Pennsylvania, *Calhoun, et al. v. Invention Submission Corp. d/b/a InventHelp, et al.*, No. 18-cv-1022, against certain of the Defendants for violations of AIPA, Pennsylvania's Unfair Trade Practices and Consumer Protection Act ("UTPCPA"), breach of contract, and related causes of action. Carson Decl. ¶ 10. That case was transferred to this Court on July 27, 2018, and amended complaints were filed on September 18, 2018 and April 29, 2019, adding plaintiffs and modifying the causes action. *Id*.

On October 25, 2019, Plaintiffs Carla Austin and Nil Leone filed their complaint asserting claims against Defendants InventHelp, Western InventHelp, Intromark Incorporated, and Technosystems Service Corporation. *Austin, et al. v. Invention Submission Corp., et al.*, No. 19-cv-01396 (W.D. Pa.). Carson Decl. ¶ 11.  The *Austin* plaintiffs brought claims under AIPA and for breach of contract on behalf of a class of U.S. residents who signed a Submission Agreement with

the InventHelp Defendants and made payments to these entities for invention promotion services. *Id*.

Plaintiffs Geta Miclaus and Vim and Kevin Byrne filed a third complaint on May 8, 2020, *Miclaus, et al. v. Invention Submission Corp., et. al.*, No. 2:20-cv-681, for violations of AIPA, fraud, negligent misrepresentation, breach of contract, unjust enrichment and breach of fiduciary duty. Carson Decl. ¶ 12.  Thereafter, the *Calhoun*, *Austin*, and *Miclaus* matters were consolidated for discovery. *Id*.

Specifically, Plaintiffs allege that the InventHelp Defendants failed to provide certain invention promotion services promised to customers, including with respect to: (a) the introductory Basic Information Package Agreement offered by certain InventHelp Defendants ("BIP Agreements"), that includes the preparation of a bound report of approximately 30 pages describing a customer's invention and potentially applicable market opportunities, along with an optional "Preliminary Patentability Opinion" authored by Defendant Thomas Frost; and (b) the far more extensive "Submission Agreement" or "SUB Agreement" meaning the Submission Agreement between either Invention Submission Corporation or Western Invention Submission Corporation and a Settlement Class Member for the purchase of invention submission services. Carson Decl. ¶ 13.  Under the SUB Agreement, InventHelp agreed to submit prescribed product information to approximately 100 companies, a majority of whom were purportedly registered in the InventHelp Defendants' proprietary "Data Bank" as having agreed to review those submissions in confidence and good faith. Carson Decl. ¶ 14.  Among other things, Plaintiffs alleged that the InventHelp Defendants misrepresented material information about these services that caused customers to enter into service contracts that they would not have entered into had they known the truth. *Id*.

B.      **Defendants' Motions to Dismiss and Motions to Strike**

Defendants moved to dismiss and/or strike Plaintiffs' pleadings at several junctures, arguing that Plaintiffs failed to sufficiently plead their claims and that the class action allegations should be stricken. Carson Decl. ¶ 15.  These efforts were largely unsuccessful as the Court preserved Plaintiffs' core claims and rejected the notion that the Litigation was not suitable for class treatment. *Id.*

Specifically, on October 2, 2018, Defendants InventHelp, Western InventHelp, Technosystems Consolidated, Technosystems Service Corporation, Universal Payment Corp., Intromark Incorporated, and Robert J. Susa moved to dismiss the *Calhoun* amended complaint and strike certain allegations. ECF No. 29 in *Calhoun*.[3] On November 14, 2018, the remaining defendants also filed a motion to dismiss. ECF No. 38. Following briefing, on January 3, 2019, U.S. Magistrate Judge Robert C. Mitchell issued a Report and Recommendation that the motions to dismiss be granted in part and denied in part. ECF No. 48. Following Defendants' objections and further briefing, Judge Cathy Bissoon entered an Order adopting, modifying, and rejecting the report in part. *Calhoun v. Invention Submission Corp.*, No. 18-1022, 2019 WL 1547372 (W.D. Pa., Apr. 9, 2019). The Order denied the motion to dismiss with respect to (1) Plaintiffs' AIPA claim to the extent it was based on materially false representations or omissions unrelated to AIPA-mandated disclosures; (2) Plaintiffs' fraud claim; (3) Plaintiffs' negligent misrepresentation claim; (4) Plaintiffs' breach of contract claim; and (5) Defendants' motion to strike. *Calhoun*, 2019 WL 1547372, at *10. The Order granted the motion with respect to dismissing Robert Susa as a party and in dismissing the UTPCPA, TCPA, breach of duty of good faith and fair dealing, unjust enrichment, and breach of fiduciary duty claims. *Id.*  The Court also granted the motion to dismiss

---

[3] Unless otherwise noted. "ECF No. __", refers to docket entries in the *Calhoun* matter.

with respect to Plaintiffs' AIPA claim to the extent it rested on AIPA-mandated disclosures. *Id*. The Court denied the motion to dismiss with respect to defendants Thomas Frost and Thomas Frost, P.A. but granted the motion and dismissed defendants Kyle A. Fletcher, the Law Office of Kyle Fletcher, P.C., and Kaufhold & Dix. *Id*. !

When the *Calhoun* plaintiffs filed a second amended complaint, that too was the subject of a motion to dismiss and motion to strike class allegations filed by the InventHelp Defendants. ECF No. 65. On January 16, 2020, U.S. Magistrate Judge Patricia L. Dodge entered a Report and Recommendation that plaintiffs' claims "arising out of misrepresentations in InventHelp's disclosures should not be dismissed" and that the motion to dismiss should be denied with respect to AIPA except with respect to the mandated disclosure omission claims. ECF No. 78. Though the Court granted Defendants' motion to dismiss with respect to the UTPCPA and Lanham Act claims, and dismissed the breach of contract claim against Robert Susa, it denied Defendants' motion to strike the class allegations, finding the complaint alleged that (1) the Plaintiffs' claims are typical of the claims of class members, "in that they all signed identical contracts and paid for the same services, they all received false and misleading AIPA disclosures and were all subjected to the same course of fraudulent conduct" and (2) there are questions of fact and law common to all class members that predominate over questions which may affect individual members including, by way of example, whether the disclosures set forth in Defendants' contracts and advertisements – which are identical and uniform – are truthful and in compliance with AIPA, and whether Defendants made false and misleading statements concerning the legitimacy of their invention services. *Id*. The Court found that the plaintiffs' allegations "that class members all received false disclosures (which would all be the same in any given year), that they all signed identical contracts with either InventHelp or Western InventHelp" are sufficient class allegations at the pleading stage. *Id*. Judge

Bissoon adopted Magistrate Judge Dodge's January 16, 2020 Report and Recommendation in a subsequent Order dated March 25, 2020. ECF No. 96.

The Defendants in *Austin* also moved to dismiss claims in that complaint and strike the class allegations. ECF. No. 9 in *Austin*. After briefing, on April 13, 2020, Magistrate Judge Dodge issued a Report and Recommendation denying the motion with the limited exception of dismissing Technosystems Service Corp. and Intromark Incorporated. Carson Decl. ¶ 22.   In denying the motion to dismiss the AIPA claim, the Court found that the plaintiffs provided several examples of companies to whom InventHelp allegedly sent their inventions, but which do not exist or currently operate and "raised a plausible claim that InventHelp was not making efforts to 'maintain' the Data Bank." ECF No. 23 in *Austin*. Plaintiffs also "stated a plausible claim that Defendants failed to perform basic quality control screening of Data Bank companies and did not screen the Company Submission Reports to verify their accuracy and reliability, so inventions were sent to companies that were not even a general industry match." *Id*. The Court also refused to dismiss the breach of contract claim finding "Plaintiffs have plausibly stated claims that InventHelp did not fulfill its contractual obligations to maintain its Data Bank and match their inventions with appropriate companies that might be interested in them." *Id*. Finally, the Court denied the motion to strike class allegations noting that Plaintiffs asserted sufficient allegations that "class members all received the same promises, that they all signed identical contacts with either [InventHelp] or [Western InventHelp], and that their inventions were likely sent to companies that do not exist or are non-operational or that manufacture products in fields far removed from their inventions, as happened to the two named Plaintiffs." *Id*. Judge Bissoon adopted Magistrate Judge Dodge's April 13, 2020 Report and Recommendation. ECF No. 30 in *Austin*.

Defendants also filed a partial motion to dismiss Count I of the *Miclaus* complaint. Carson Decl. ¶ 25.   Following briefing, in a March 8, 2021 Report and Recommendation, Magistrate Judge Dodge found the plaintiffs' allegations sufficient to show they did not receive all mandated AIPA disclosures from Western InventHelp and Intromark. ECF No. 53 in *Miclaus.* The Defendants' argument that Western InventHelp and Intromark did not have to submit AIPA disclosures was rejected on the basis of judicial estoppel given that, in *Calhoun*, the Defendants had argued that each InventHelp entity filed its own set of disclosures. *Id*. Judge Bissoon adopted Magistrate Judge Dodge's Report and Recommendation on June 29, 2021. *See* ECF No. 202 in *Calhoun*.

## C.     The Parties Engaged in Extensive Discovery

On July 15, 2020, the Court entered an Order consolidating *Calhoun*, *Austin*, and *Miclaus* for "discovery and other pretrial proceedings," ECF No. 148, and on August 25, 2020 entered an Order appointing Shanon J. Carson and Peter Kahana of Berger Montague PC as Interim Lead Class Counsel. ECF No. 156. Thereafter, Mr. Carson and Mr. Kahana worked cooperatively and efficiently with counsel for the other plaintiffs to coordinate discovery, avoid duplication of effort and minimize expenses, and to aggressively pursue documents and information from Defendants. Carson Decl. ¶ 26.

Discovery commenced on September 22, 2020. ECF No. 164. Plaintiffs served their first set of interrogatories and document requests on the InventHelp Defendants on October 26, 2020, including: (i) 117 document requests and 12 interrogatories to InventHelp and Western InventHelp; (ii) 7 document requests to Technosystems Service Corporation; (iii) 7 document requests to Technosystems Consolidated Corp.; (iv) 10 document requests to Intromark Inc.; (v) 9 document requests to Universal Payment Corp.; and (vi) 15 document requests and 7

interrogatories to Robert J. Susa, the head of InventHelp. Carson Decl. ¶ 27.  On November 18, 2020, Plaintiffs served a first set of 24 interrogatories and 13 document requests on the Frost Defendants. *Id*.

On December 21, 2020, Plaintiffs served a second set of interrogatories and document requests on certain InventHelp Defendants, consisting of (i) 5 documents requests and 9 interrogatories to Intromark Inc.; (ii) 11 interrogatories to InventHelp and Western InventHelp; and (iii) 11 interrogatories to Universal Payment Corp. Carson Decl. ¶ 28.

After the InventHelp Defendants' served objections and responses, Plaintiffs served on Defendants an extensive discovery deficiency letter and conducted numerous meet-and-confer conferences to attempt to address the deficiencies. Carson Decl. ¶ 29.  As a result of Plaintiffs' persistence, Defendants commenced rolling productions of responsive documents in early 2021 and ultimately produced approximately 22,000 documents totaling over 57,000 pages. *Id*. These productions include a tranche of 401 license agreements that purportedly represented the licenses issued to InventHelp customers between 2014 to 2019. *Id*.

The Parties also negotiated the terms pursuant to which the InventHelp proprietary Data Bank and related materials would be produced for inspection and agreed to a Stipulated Order entered by the Court on May 3, 2021. ECF No. 200; Carson Decl. ¶ 30.   The materials were produced on May 14, 2021. Carson Decl. ¶ 30.  The Parties then engaged in extensive negotiations regarding custodians and search terms to be used by the InventHelp Defendants for producing Electronically Stored Information ("ESI"). *Id*.

To understand and be informed concerning Defendants' financial circumstances and ability to potentially pay a judgment or settlement, Plaintiffs sought the production of confidential financial information and potential insurance policies held by Defendants and their regional sales

entities that might provide coverage. Carson Decl. ¶ 31.  When Defendants resisted the production, Class Counsel prepared and filed a motion to compel. *Id*.  Following briefing, the Court granted the motion and directed InventHelp to contact its regional sales entities and request copies of insurance policies in which InventHelp was a named insured. ECF No. 181. Defendants thereafter began producing such insurance materials to Plaintiffs on a rolling basis. Carson Decl. ¶ 32. In further pursuit of financial information, Class Counsel issued nearly fifty subpoena *duces tecum* to current and former regional sales directors to compel production of certificates of insurance covering the InventHelp Defendants. *Id*.

Interim Lead Class Counsel also retained expert witnesses who completed substantial work in support of Plaintiffs' case, including forensic analysis of the Data Bank and sampling of the Data Bank companies; the identification of former employees knowledgeable about the Data Bank; and Defendants' financial resources. Carson Decl. ¶ 33.  This included the review and analysis of Defendants' assets and financial wherewithal by forensic economic experts, and research concerning potentially applicable insurance coverage. *Id*.  Despite their tireless efforts, Plaintiffs eventually determined that such coverage did not exist.  *Id*.

While Plaintiffs aggressively pursued discovery, they also responded to the InventHelp Defendants' October 7, 2020 extensive Requests for Production, serving written objections and responses on November 13, 2020, making their first document production on December 30, 2020, and completing their production on April 14, 2021. Carson Decl. ¶ 34.  Thus, when the Parties mediated with Judge Lenihan, they were well-informed about the facts and allegations in the Litigation.  *Id*.

### D.    Mediation and Settlement

The Parties engaged in initial settlement discussions in June 2020, after Plaintiffs defeated

Defendants' several attempts to have their claims dismissed and class allegations stricken. Carson Decl. ¶ 35.   The Parties held their first mediation session before the Hon. Diane Welsh (Ret.) of JAMS on June 4, 2020, and participated in a second full-day session on July 2, 2020, but did not reach a settlement. *Id.*

After progressing through discovery as set forth above, the Parties engaged in further  ADR beginning in August 2021, with Magistrate Judge Lenihan as the mediator. Carson Decl. ¶ 36.  While the Parties agreed to begin mediation on August 18, 2021, that session was postponed because Plaintiffs had not received all the financial information they requested from Defendants. ECF No. 212. Defendants' financial circumstances was a key issue that needed to be carefully considered. Carson Decl. ¶ 37. Ultimately, the Parties agreed their ADR efforts would include confirmatory discovery concerning Defendants' financial status. *Id.* The Parties and Judge Lenihan conducted mediation on October 18, 2021, and while that session did not result in a settlement, the Parties agreed to continue their negotiations with the assistance of Judge Lenihan. *Id.*; ECF No. 217. Subsequently, the Parties and Judge Lenihan held numerous conferences over the next several months that yielded the Settlement now before the Court. Carson Decl. ¶ 37.  The Parties' Settlement Agreement takes into account all of the facts and circumstances underlying this matter, including Defendants' financial resources which was a key issue at mediation.  *Id.*[4]

### E.      Notable Settlement Terms

#### 1.      Settlement Consideration

The Settlement delivers substantial economic and non-economic benefits to the Settlement Class as well as enhanced processes to be implemented by the InventHelp Defendants that will ensure the claimed wrongful conduct does not continue. Carson Decl. ¶ 38.  As described more fully in the Parties' attached Settlement Agreement, *see* Exhibit 1, this settlement relief includes:

---

[4] *See* Declaration of Defendant Robert J. Susa, attached hereto as Exhibit 4 (filed under seal); Declaration of Thomas Frost, Esq., attached hereto as Exhibit 5 (filed under seal).

1.      $3 million to be paid into a Gross Settlement Fund;

2.      $20 cash *outside the Gross Settlement Fund* for each customer who fully paid for their BIP Agreement that submits a Claim Form deemed timely and valid by the Settlement Administrator. 29,478 fully paid BIP Agreements fall into this category;

3.      $20 credit *outside the Gross Settlement Fund* against the outstanding balance for each customer who has not fully paid for their BIP Agreement that submits a Claim Form deemed timely and valid by the Settlement Administrator. 7,404 not fully paid BIP Agreements fall into this category;

4.      An election of an $800 credit *outside the Gross Settlement Fund* against the outstanding balance or $3,000 in services for each of the SUB customers who have SUB Agreements that are Not Fully Paid and Open that submit a Claim Form deemed timely and valid by the Settlement Administrator. 3,411 SUB Agreements Not Fully Paid and Open fall into this category;

5.      Up to a $1,500 credit *outside the Gross Settlement Fund* against the outstanding balance for each of the SUB customers who have SUB Agreements Not Fully Paid and Closed. 4,487 SUB Agreements Not Fully Paid and Closed fall into this category;

6.      A *pro rata* payment of up to $250 from the Net Settlement Fund <u>and</u> $3,000 in services for each of the SUB customers who have SUB Agreements that are Fully Paid and that submit a Claim Form deemed timely and valid by the Settlement Administrator. 10,325 SUB Agreements Fully Paid fall into this category; and

7.      Credit repair & negative tradeline deletion request services.

SA, ¶¶ 65-70 (describing more fully the above Settlement Relief); Carson Decl. ¶ 38.

### ***Multiple Claims***

Furthermore, Settlement Class Members who entered into more than one contract for services are entitled to relief as to each contract, except that SUB Agreement Customers are only entitled to relief based upon their SUB Agreements, not earlier, subsumed BIP Agreements. Carson Decl. ¶ 39; See SA, ¶ 69 (setting forth clarifying examples).

### *Consumer Reporting Relief*

In addition, the Settlement Agreement provides Class Members with assistance concerning Consumer Reporting Agencies ("CRAs") as follows:

a.    Within thirty (30) days of the Effective Date and as to those Class members whose balances are fully eliminated as a result of the Class member relief, the relevant InventHelp Defendant(s) shall contact all CRAs to which it (or anyone acting on its behalf) previously has reported information regarding outstanding payments owed by such Settlement Class member to any of the InventHelp Defendants, and request permanent removal of any negative tradelines previously reported to CRAs in the name of any of the InventHelp Defendants or anyone acting on their behalf regarding such outstanding payments. A tradeline shall be considered "negative" if it indicates that any payment was missed.

b.    Within ninety (90) days of the Effective Date and as to those Class Members whose balances are reduced, but not fully eliminated, as a result of the Class Member Relief, the relevant InventHelp Defendant(s) shall contact the CRAs and report the modified balance.

c.    If at any time following ninety (90) days after the Effective Date for any Settlement Class Member whose balance has been fully eliminated, or following one hundred twenty (120) days from the Effective Date for any Settlement Class Member whose balance has been modified, any such Settlement Class Member determines that any of the CRAs have not complied with the request of the InventHelp Defendants as set forth in this paragraph, inclusive of subsections, then the Settlement Class Member may provide written notice to the InventHelp Defendants, together with copies of any credit reports for which he or she contends the credit reporting has not been properly updated, via email or U.S. mail (as set forth in the Settlement Agreement at SA, ¶67). In that event, the relevant InventHelp Defendant will, within thirty (30) days, make a second request in writing that the CRAs update the reporting as set forth in this paragraph.

SA, ¶ 67.

### *Enhanced Processes Relief*

Plaintiffs also successfully obtained important changes to Defendants' policies and procedures going forward to ensure that the alleged wrongful conduct would not continue. Carson Decl. ¶ 41. Specifically, the InventHelp Defendants will implement the following six enhanced processes to address the practices that Plaintiffs challenged in the Litigation:

- Employ a customer care team to address complaints by Settlement Class Members on a timely basis, and retain a searchable electronic record of any and all such complaints and the InventHelp Defendants' responses;

- Prepare and implement a written policy for the InventHelp Defendants stating that they will utilize commercially reasonable best efforts to maintain and use with maximum possible accuracy the InventHelp Defendants' Data Bank, such that: (a) the Data Bank is up to date and that names, addresses, and contact information are correct and active; (b) any currently registered Data Bank company is an ongoing and active business that desires to receive the submissions; (c) the registered Data Bank companies selected to match a SUB Agreement customer's invention are companies interested in reviewing inventions and ideas that are relevant to that of the SUB Agreement customer; and (d) the InventHelp Defendants have not submitted the same invention more than once to the same Data Bank company, provided that the InventHelp Defendants can submit an idea to multiple contacts at the same company;

- Implement a customer outreach program to follow up on customers' satisfaction level regarding the InventHelp Defendants' services using commercially reasonable methods for testing and analyzing customer satisfaction;

- Modify the content of its advertising, including television, radio, print, and online advertising, to remove from their advertising the names of companies, if any, that have not registered in its Data Bank to receive client inventions;

- Prepare and implement a written policy prohibiting the use of issuing temporary license agreements for the purpose of inflating the figures required by AIPA 35 U.S.C. § 297 (a)(3) and (4); and

- Prepare and implement a written policy for the InventHelp Defendants stating that they will issue written disclosures to customers prior to a customer entering into a SUB Agreement identifying the estimated timetable for the InventHelp Defendants (or any of them) to complete each of the services they will provide under the Agreement.

SA, ¶ 21. These policies will be implemented within 30 days of the Effective Date of the Settlement, will be paid for by the InventHelp Defendants *outside of the Gross Settlement Fund*, and will exist for a period of at least five years from the Effective Date. *Id.*

13

In consideration of the settlement benefits, Defendants and their subsidiaries and affiliates (defined as the "Released Parties," SA, ¶ 86) will receive a release from claims arising out of or related to the Litigation, and which were or could have been asserted in the Litigation. SA, ¶ 87; Carson Decl. ¶ 43.

### 2.    Settlement Administration and Claim Submission

The Parties request that the Court appoint Angeion Group, LLC ("Angeion") as the independent Settlement Administrator to effectuate and administer the Notice Plan, distribute the Settlement Notice, administer the exclusion process for opt-outs, the Claim process and the distribution of payments and other benefits to Eligible Claimants. SA, ¶¶ 46, 71. Attached hereto as Exhibit 6 is the Declaration of Steven Weisbrot, Esq. on behalf of Angeion, setting forth their proposal and qualifications to be appointed. Angeion was selected following a competitive request for proposal/bidding process conducted by the Parties. Carson Decl. ¶ 44.

Each Settlement Class Member will be sent a Claim Form and Notice of Proposed Class Action Settlement substantially in the form of Exhibits 1 and 2 to the Settlement Agreement, and the Settlement Administrator will determine whether the Claimant's claim is eligible for benefits. SA, ¶¶ 22, 76. The Settlement Administrator shall receive, process, and make determinations regarding all Claim Forms as promptly as possible. SA, ¶ 76. The InventHelp Defendants shall pay any reasonable amounts invoiced by the Settlement Administrator for work performed prior to the Effective Date when due, to be subtracted from the Gross Settlement Fund. Carson Decl. ¶ 46.

The Settlement Administrator shall provide Lead Class Counsel and Counsel for Defendants with a full and complete accounting for the escrow account upon request at any time. SA, ¶ 78. With respect to Eligible Claimants who are BIP Customers entitled to receive a cash

payment of $20 to be paid by the InventHelp Defendants outside of the Gross Settlement Fund, following the Claim Period, the Settlement Administrator will provide notice to the Parties of the amount to be paid. Carson Decl. ¶ 47. Following receipt of a W-9 and wiring instructions to be provided by the Settlement Administrator, and within ten business days of the Effective Date, the InventHelp Defendants will wire that amount (in addition to the amount to fund the Gross Settlement Fund) to the Settlement Administrator. SA, ¶ 65a. As soon as practicable thereafter, the Settlement Administrator will distribute these Settlement Payments to the Eligible Claimants. SA, ¶ 78.

### 3. The Notice Plan

The Parties agreed to a direct mail and email-based Notice Plan that will ensure Settlement Class Members receive adequate notice of the Settlement. SA, ¶ 74a.; Carson Decl. ¶ 48. The Notice Plan will be paid from the Gross Settlement Fund, effectuated by the Settlement Administrator, and will include (1) direct notice, (2) implementation of the Settlement Website, and (3) implementation of a toll-free Settlement Telephone Number, as follows:

*Direct Notice*. First, the Claim Form and Notice of Settlement, *see* Exhibits 1 and 2 to the Settlement Agreement, will be mailed, first-class postage prepaid, and emailed (where email addresses are available), to the Settlement Class. Within five business days of the Preliminary Approval Order Defendants shall produce a confidential Class List to the Settlement Administrator that shall include the last known contact information for the Settlement Class Members, including name, address, email, and telephone number information. SA, ¶ 74a. Class Counsel will also provide the Settlement Administrator with contact information for Settlement Class Members. Carson Decl. ¶ 48.

*Settlement Website.* The Settlement Administrator shall establish the Settlement Website www.IHSettlement.com to be maintained until thirty days after the conclusion of the 180-day check-cashing period,[5] to ensure that Settlement Class Members have continuing online notice of the Settlement and to provide: (i) information concerning deadlines for filing a Claim Form and the dates and locations of relevant Court proceedings, including the Final Approval Hearing; (ii) the toll-free phone number applicable to the Settlement; (iii) copies of the Settlement Agreement, the Notice of Settlement, the Claim Form, Court Orders regarding the Settlement, and other relevant Court documents; (iv) information concerning the submission of Claim Forms, including the ability to submit Claim Forms electronically on the Settlement Website; and (v) a Frequently Asked Questions page. SA, ¶ 74b; Carson Decl. ¶ 48.

*Toll-Free Settlement Telephone Number.* The Settlement Administrator will also establish a toll-free telephone number to be included on all Notices to provide the Settlement Class with information about the Settlement and direct them to the Settlement Website. SA, ¶ 74c. The Settlement Administrator shall provide both Interactive Voice Response as well as live operator support during regular business hours. *Id.*[6] The telephone service shall be capable of receiving requests for Claims Forms, the Notice of Settlement, and the Settlement Agreement. SA, ¶ 74c

---

[5] The Settlement Agreement provides that "[a]ll checks issued by the Settlement Administrator to any Eligible Claimants shall remain valid and negotiable for 180 days." SA, ¶ 79.

[6] The term "Claim Period" means "the time period of sixty (60) days from the Notice Date, during which verified Claim Forms must be postmarked (if sent by U.S. Mail or hard copy delivery) or submitted electronically within the Claim Period to be considered timely" SA, ¶ 11.

## III.   ARGUMENT

### A.   Preliminary Approval of the Proposed Settlement is Warranted

Rule 23 of the Federal Rules of Civil Procedure requires that a class action settlement be "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Courts initially apply a presumption of fairness in reviewing a class settlement where, as here, (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigation…." *Murphy v. Charles Tyrwhitt, Inc*., No. 20-cv-00056, 2020 WL 8513583, at *6 (W.D. Pa., Nov. 25, 2020) *quoting In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016).

At the preliminary approval stage, the Court must "only satisfy itself that the settlement as negotiated is entitled to a presumption of fairness" and must only "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Vines v. Covelli Enterprises*, No. 12–0028, 2012 WL 5992114, at *6 (W.D. Pa. Nov. 30, 2012) quoting Manual for Complex Litigation (Fourth), § 21.632 (2011). In evaluating a proposed settlement for preliminary approval, a court "need only determine whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Frederick v. Range Resources-Appalachia, LLC*, 2010 WL 11561286, at *5 (W.D. Pa.  2010) (internal citations and quotations omitted). Preliminary approval should be granted "unless a proposed settlement is obviously deficient." *Id*. At the preliminary approval stage, Rule 23(e)(1) requires that the settling

parties provide the court "information sufficient to enable it to determine whether to give notice" of the proposed settlement to the class. FED. R. CIV. P. 23(e)(1).

### B.     The Settlement Should Be Approved Under Rule 23(e)(2)

In determining the likelihood of approving the proposed settlement, Rule 23(e)(2) requires the Court to consider whether "(A) the class representatives and class counsel have adequately represented the class"; "(B) the proposal was negotiated at arm's length"; "(C) the relief provided for the class is adequate" taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and "(D) the proposal treats class members equitably relative to each other." *See* FED. R. CIV. P. 23(e)(2) (A-D).

These factors are not meant to displace the Court's consideration of other traditional factors used to assess proposed class action settlements but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e)(2) (Advisory Committee's note to 2018 amendment). Courts in the Third Circuit have long relied on the following factors set forth in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), many of which overlap with the requirements set forth in Rule 23(e)(2):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. A review of these factors and those in Rule 23(e)(2) counsel in favor of preliminary approval.

1.      **Plaintiffs and Class Counsel Have Adequately Represented the Class and the Settlement Is the Product of Arm's Length Negotiations by Experienced Counsel (Rule 23(e)(2)(A-B))**

Rule 23(e)(2)(A) and (B) require that "the class representatives and class counsel have adequately represented the class" and "the proposal was negotiated at arm's length." Subparts A and B are properly considered together along with the third *Girsh* factor, "the stage of the proceedings and the amount of discovery completed."[7]

Here, as detailed above, Plaintiffs and Class Counsel have adequately represented the Settlement Class. Plaintiffs have common interests with other Settlement Class Members to the extent they are seeking compensation for the same alleged harm suffered as a result of Defendants' alleged failure to provide certain invention promotion services and in misrepresenting those services. By proving their claims, Plaintiffs will help to prove the claims of other Settlement Class members. Plaintiffs have been actively involved in the litigation and committed to it.

Moreover, Interim Lead Class Counsel is qualified and experienced in this type of matter and have excellently represented the proposed Settlement Class to date. Class Counsel's work has included, among other things: (a) conducting a thorough investigation prior to drafting and filing the pleadings; (b) successfully opposing numerous motions to dismiss and motions to strike class allegations; (c) aggressively pursuing discovery from Defendants and third parties to obtain necessary documents and information (including through successfully moving to compel certain documents); (d) retaining and working with experts in anticipation of class certification; and (e)

---

[7] *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998) (Under the third *Girsh* factor, courts consider whether the amount of discovery completed in the case has permitted "'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) (citation omitted) (Third *Girsh* factor captures degree of case development that class counsel accomplished prior to settlement).

negotiating the proposed Settlement across several mediations. Under these circumstances, Plaintiffs' counsel adequately appreciated the merits of the case before engaging in settlement discussions. *See, e.g.*, *Murphy*, 2020 WL 8513583, at *10 (Counsel adequately appreciated the merits of the case before negotiating the settlement based on discovery and investigation coupled with class counsel's experience in litigating similar claims); *Frederick v. Range Resources-Appalachia, LLC*, No. 08-cv-288, 2010 WL 11561286, at *5 (W.D. Pa. Oct. 13, 2010) ("the proposed settlement was reached at a sufficiently advanced stage in the litigation to have allowed the parties to engage in discovery and explore the strengths and weaknesses of their respective claims and defenses prior to reaching the agreement."). Accordingly, the Court should deem Plaintiffs' and Class Counsel's representation to be adequate and the requirements of FED. R. CIV. P. 23(e)(2)(A) as having been satisfied.

In addition, given the advanced stage of discovery and counsels' familiarity with the strengths and risks of their case, the Settlement is truly the result of an arm's-length negotiation. The proposed Settlement represents the culmination of an adversarial negotiation between the Parties that played out over several years and several rounds of formal, highly contentious and drawn out mediation. *Frederick,* 2010 WL 11561286, at *5 (proposed settlement was the product of extensive negotiation conducted at arm's length and "independent judgment was exercised on behalf of each client and the prospective class members at all times.").

Indeed, the Settlement was reached only after two mediation sessions overseen by the Hon. Diane Welsh (Ret.) of JAMS, and then another session overseen by Magistrate Judge Lenihan. The assistance of such experienced mediators ensures that the negotiations between the parties were conducted at arm's length. *Jackson v. Wells Fargo Bank, N.A.*, No. 2:12-cv-01262-DSC, 2014 WL 12600178, at *1 (W.D. Pa. Oct 27, 2014) (granting preliminary approval where "[t]he

assistance of an experienced, court-appointed mediator in the settlement process support[ed] the Court's conclusion that the Settlement was fairly negotiated at arm's length."); *Shapiro v. All. MMA, Inc.*, No. CV 17-2583 (RBK/AMD), 2018 WL 3158812, at *3 (D.N.J. June 28, 2018) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties.") (internal quotations and citations omitted); *In re Cigna Corp. Secs. Litig.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("[I]t is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who was privately retained and served as mediator."). For these reasons, the Court should find that the Settlement is the result of arm's-length negotiation between experienced counsel.

### 2.     The Settlement Relief Provided is Adequate Under Rule 23(e)(2)(C)

In determining whether class-wide relief is adequate under Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C).

First, with respect to "the costs, risks, and delay of trial and appeal," and the corresponding *Girsh* factors,[8] in entering the Settlement, the Parties had a clear and well-developed understanding of the Litigation, including the strengths of their case and those of their adversaries. While Class Counsel believes the case is strong, they acknowledge the risks of continuing to litigate. Defendants have vigorously defended themselves and denied liability. To prevail Plaintiffs would

---

[8] This includes the first *Girsh* factor, "the complexity, expense and likely duration of the litigation," the fourth, "the risks of establishing liability," the fifth, "the risks of establishing damages," and the sixth, "the risks of maintaining the class action through the trial." 521 F.2d at 157.

have to complete fact and expert discovery, obtain class certification, defend an appeal(s) of the certification order and possibly subsequent motions for decertification, defend a motion for summary judgment, prevail at trial, and then prevail on the inevitable subsequent appeals. The time and expenses attributable to these events is substantial, to say nothing of the inherent risks and uncertain outcomes that come with each step along the way. Importantly, added to these risks is Defendants' financial status in this case, which was extensively discovered, researched, and investigated by Class Counsel. *See* Exhibits 4 and 5 (filed under seal with leave of Court).

In contrast to the risks, uncertainty, expense, and delay that continued litigation would bring, the proposed Settlement provides certain and timely relief to Settlement Class Members. From Plaintiffs' perspective, securing a settlement that holds Defendants accountable while providing meaningful economic and service-related benefits, as well as prospective relief that is designed to fix the alleged wrongful conduct in the future, is a far better result than continuing to litigate at great cost and with little hope for a greater recovery given Defendants' financial resources, and claim that a judgment could lead it into bankruptcy. *See* Exhibits 4-5, attached hereto. Further litigation may destroy the ability of Settlement Class Members to secure <u>any</u> meaningful relief. *Murphy*, 2020 WL 8513583, at *10 (proposed settlement allowed the plaintiffs to achieve significant benefits for class while avoiding material expense and delay that would have been required to litigate their claims, which would have not only prolonged the litigation but would have also reduced the value of any recovery to the class); *Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 103 (D.N.J. 2012) ("By reaching a favorable Settlement … Class Counsel have avoided significant expense and delay and have also provided an immediate benefit to the Settlement Class."). Thus, the relief provided in the proposed Settlement is more than adequate to satisfy this prong of Rule 23(e)(2)(C).

Second, the Court must determine whether the Settlement Agreement provides a proposed method of distributing benefits to the Settlement Class that is straightforward and not unduly demanding but deters unjustified claims. *See* FED. R. CIV. P. 23(e)(2)(C)(ii) Advisory Committee's Note to 2018 Amendment. A plan of allocation doesn't have to be perfect, *see In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007), but need only have a reasonable, rational basis and be fair and adequate. *In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 344 (S.D.N.Y. 2005) (internal citations and quotation marks omitted). Here, the Settlement Agreement easily meets these criteria. Under the Agreement, the independent Settlement Administrator, Angeion, will administer the claim process and distribution of benefits to Settlement Class Members.

Each Settlement Class Member will be provided with a simple and mostly already-completed Claim Form and will have the opportunity to submit a claim to the Settlement Administrator. Angeion will receive, process, and make determinations regarding all Claim Forms as promptly as possible. SA, ¶ 76. Angeion will provide weekly status reports to Lead Class Counsel and Counsel for Defendants setting forth all Eligible Claims and advising on the total amount of such claims. SA, ¶ 77. Within ten business days after the Effective Date, Defendants shall remit the Gross Settlement Fund amount to the Settlement Administrator. SA, ¶ 62. The Settlement Administrator will thereafter distribute Settlement Payments and/or inform Class Members of their benefits. SA, ¶ 78. Thus, the Settlement provides a proposed method of distributing benefits that is straightforward, timely, and not unduly demanding, but deters unjustified claims.

Third, the Agreement provides a process and timetable to ensure that Plaintiffs' attorneys' fees and expense reimbursement will be reasonable. *See* FED. R. CIV. P. 23(e)(2)(C)(iii). The

Agreement provides that prior to the Objection and Opt Out Deadline, Lead Class Counsel will file a Motion for Attorneys' Fees, Expenses, and Service Awards. SA, ¶ 90. The amount of attorneys' fees requested will be far less, and indeed a fraction of, Class Counsel's collective lodestar, and will also be less than one-third of the total value of the Settlement, as will be detailed in Lead Class Counsel's forthcoming fee motion.

Finally, there are no agreements required to be identified under Rule 23(e)(3). Accordingly, Rule 23(e)(2)(C) has been satisfied.

### 3. The Settlement Agreement Treats Settlement Class Members Fairly

Pursuant to Rule 23(e)(2)(D), the Court also must check whether the Settlement treats Settlement Class members equitably relative to each other. FED. R. CIV. P. 23(e)(2)(D); *see Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 326 (3rd Cir. 2011) (court must ensure settlement fund distribution is fair and reasonable as to all participants). As detailed above and in the Settlement Agreement, the proposed categories and terms of distribution satisfy this standard. Each Class Member is invited to submit a Claim Form to the Settlement Administrator, who will apply an objective method in determining the benefits that the Settlement Class Member is entitled to receive based upon their situation. SA, ¶¶ 65-66. In addition, Defendants will provide Settlement Class Members with relief concerning Consumer Reporting Agencies and implement the enhanced processes discussed above in their invention promotion services. SA, ¶¶ 21, 67. In sum, Settlement Class Members are treated equitably under the proposed Settlement Agreement.

### 4. Defendants Cannot Withstand a Greater Judgment

The seventh prong of the *Girsh* test ("the ability of the defendants to withstand a greater judgment") asks the Court to assess a defendant's ability to pay a greater judgment, including a greater settlement amount, than the current settlement. *In re CertainTeed Corp. Roofing Shingle*

*Products Liability Litig.*, 269 F.R.D. 468, 488 (E.D. Pa. 2010). This factor comes heavily into play in this Litigation and is considered more important when a defendant's inability to pay is offered to justify a settlement amount. *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 440; *Rossini v. PNC Financial Services Group, Inc.,* No. 2:18-cv-13702020, WL 3481458, at *16 (W.D. Pa. Jun. 26, 2020) (Defendants' ability to withstand a greater judgment is more of a factor where the "parties indicate that they have settled for a below-value amount because of concerns over the defendant's ability to pay, or where a court is concerned that a settlement is unduly small in light of the misconduct alleged and the defendant's demonstrable ability to pay much more.").

Here, while the Settlement provides significant relief as discussed above, discovery and the Parties' mediation process overseen by Judge Lenihan shows that Defendants do not have the resources to further compensate proposed Settlement Class Members for their purported actual damages. *See* Exhibits 4 and 5 (filed under seal with leave of Court). Specifically, Defendants have asserted that they have finite financial resources and that an adverse judgment, in excess of the amount anticipated to be paid out in the proposed Settlement, could lead them into bankruptcy. *See id*. Plaintiffs did not merely accept Defendants' representations and to the contrary, demanded and obtained extensive detailed confidential information relating to the InventHelp Defendants' financial circumstances, including but not limited to: income statements, balance sheets, statements of income/expenses, details supporting business expenses (including, but not limited to, advertising expenses, detailed payroll expenses, benefit expenses, trade show attendance information, commission payouts), tax return information, and information relating to matters such as corporate structure and profitability. In addition, Plaintiffs sought, obtained, and analyzed relevant insurance policies and related information to determine if there were policies in place that would potentially cover a judgment against Defendants in this litigation. Moreover, Plaintiffs hired

experts to review these materials and ascertain and validate Defendants' arguments concerning their financial wherewithal.

It is clear that continuing to litigate this matter would have the effect of further draining the financial resources that Defendants have available to fund a settlement and compensate the Settlement Class. Thus, even if Plaintiffs were to prevail through class certification, trial, and appeals, Defendants very well could be unable to pay any such judgment, leaving the Class with nothing. Under these circumstances, Defendants' financial status counsels strongly in favor of approving the Settlement. *See e.g., In re Chambers Development Sec. Litig.,* 912 F.Supp. 822, 839 (W.D. Pa. 1995) (noting the defendant's precarious financial condition and finding it to be a major factor favoring approval of settlement and that "[w]here the ability of the defendant to take a bigger hit is in doubt, or indeed when the very life of the defendant is threatened by the continuation of the proceedings, the courts generally view this as a major factor weighing in favor of approving the settlement"); *see also Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *4 (S.D. Ohio Nov. 25, 2019) (granting motion for final approval of settlement and finding it is "a good result in light of the concerns over collectability in this case" given defendant's argument that class certification may drive defendants into bankruptcy.).[9]

---

[9] *See also Legere-Gordon v. Firstcredit Incorporated*, No. 1:19-cv-360 WBS, 2021 WL 276695 at 2 (D. Idaho Jan. 26, 2021) (granting preliminary approval after acknowledging plaintiff's estimate that a judgment would total at least $16.5 million, which would have far exceeded the defendant's ability to pay based on financial documents produced in discovery); *Figueroa v. Conner Logistics, Inc.,* No. 1:19-cv-01004-NONE-BAM, 2021 WL 164872, at *4 (E.D. Cal. Jan 19, 2021) (finding the settlement provides substantial and immediate benefit to class, which is preferable to lengthy and expensive litigation with uncertain results, where plaintiff reported that "[d]efendant provided tax documents and other information showing that Defendant lacked the financial ability to pay a significant judgment" and that "continued prosecution of the claims could have resulted in the class recovering little or nothing.").

### 5.    The Additional *Girsh* Factors Favor Preliminary Approval

The additional *Girsh* factors that are not as obviously subsumed in the Rule 23(e)(2) factors also support granting preliminary approval or do not apply. For instance, with regard to the second *Girsh* factor—the reaction of the class to the settlement—it is premature to say how the class will react at the preliminary approval stage. *Murphy v. Eyebobs, LLC*, No. 1:21-cv-00017, 2021 WL 4594679, at *10 (W.D. Pa.  Oct. 6, 2021) (potential class members will have the opportunity to object to the settlement following notice); *Murphy*, 2020 WL 8513583, at *10 (same).

The eighth and ninth *Girsh* factors are satisfied as the proposed Settlement is in the range of reasonableness in light of the best possible recovery and all the attendant risks of continued litigation. *Hickton v. Enterprise Rent-A-Car Company*, 2013 WL 12137092, at *1 (W.D. Pa.  Apr. 29, 2013) (finding on a preliminary basis that settlement falls within range of reasonableness). In making this determination, the Court should take into account the risks of further litigation set forth above and that the settlement "represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution." *Johnson & Johnson*, 900 F. Supp. 2d 467, 484 (D.N.J.) (internal quotations and citations omitted); *Hill v. Udren Law Offices, P.C.*, No. 13-419, 2020 WL 6785537, at *6 (W.D. Pa.  Nov. 18, 2020) ("The Court finds that a settlement amount of $60,000 is within a reasonable range of approval, particularly where parties negotiated for a significant length of time and had a fundamental disagreement with regards to Defendant's net worth before coming to a compromise via the Settlement Agreement."). Considering the factors set forth in Rule 23(e) and the additional *Girsh* factors, the proposed settlement is fair, adequate, and reasonable, and should be preliminarily approved.

### C.  The Court Should Conditionally Certify The Settlement Class

Plaintiffs seek preliminary certification of the Settlement Class for settlement purposes. A class may be certified for settlement purposes where the proposed class satisfies the four requirements of Rule 23(a) and one of the elements of Rule 23(b). *Vines*, 2012 WL 5992114, at *2. When considering a request for settlement-only class certification, "a court 'need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Marchese v. Cablevision Sys. Corp.*, No. CV102190MCAMAH, 2016 WL 7228739, at *1 (D.N.J. Mar. 9, 2016) (*quoting Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248, 138 L. Ed. 2d 689 (1997)).

In addition to satisfying the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, Plaintiffs must meet the predominance and superiority requirements of Rule 23(b)(3), requiring the Court to find  that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). As discussed below, these requirements are met here.

### 1.  Numerosity Under Rule 23(a)(1).

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Generally, numerosity is established where Plaintiffs demonstrate that the potential number of Plaintiffs exceeds forty. *Stewart v. Abraham*, 275 F.3d 220, 226-227 (3d Cir. 2001); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 595 (3d Cir. 2012); *see also Vines*, 2012 WL 5992114, at *3 (class of 200 to 300 persons "sufficiently numerous"); *Hill,* 2020 WL 6785537, at *6 (joinder impracticable where there are 421 class members).

Here, Defendants produced information showing there are thousands of Settlement Class Members. *See* SA, ¶¶ 6-7, 48, 55-57 (detailing exact numbers). Thus, numerosity is established.

### 2.     Commonality Under Rule 23(a)(2).

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The test for commonality is "easily met." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *In re NFL Players Concussion Injury Litig.*, 821 F.3d at 427 (meeting commonality requirement "is easy enough"). All that is required is that "the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227. It does not require identical claims or facts among class members. *Marcus v. BMW of N. Am., LLC*, 687 F.3d at 597.

As has been detailed in some of the Court's motion to dismiss opinions discussed above, there are many common questions of law and fact that exist in this case, including, without limitation: (a) whether Defendants violated AIPA by making fraudulent representations and omissions of material facts; (b) whether Defendants breached their identical contracts with Plaintiffs and Settlement Class Members; (c) whether Defendants failed to act in good faith by failing to maintain and monitor the Data Bank as set forth in the virtually identical Submission Agreements; (d) whether Defendants misrepresented that they would submit Plaintiffs' and Class members' inventions to operational companies in the appropriate industry; (e) whether Defendants failed to take appropriate measures to ensure the accuracy of its Data Bank; and (f) many other common questions set forth in the operative complaints in the Litigation. Commonality, and indeed, predominance, is therefore satisfied. *See Vines*, 2012 WL 5992114, at *4 (allegation that prohibition was the rule at all of defendant's restaurants was question of law and fact that applied

evenly across the class and was sufficient to ensure that the action can be practically maintained and that the interests of the absentees will be fairly and adequately represented).

### 3.     Typicality Under Rule 23(a)(3).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The Third Circuit has held that "'[i]f the claims of the named Plaintiffs and class members involve the same conduct by the defendant, typicality is established….'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 259 F.3d 154, 183-84 (3d Cir. 2001)); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d at 428 (holding typicality met where plaintiffs "seek recovery under the same legal theories for the same wrongful conduct as the [classes] they represent"). Here, Plaintiffs and Settlement Class Members share the same types of claims in that they all signed the same contracts and were deprived of the benefit of their bargain. The claims stem from a common course of conduct, which included the marketing and selling of the alleged deficient invention promotion services. Rule23(a)(3)'s typicality requirement is, accordingly, satisfied.

### 4.     Adequacy of Representation Under Rule 23(a)(4).

Rule 23(a)(3) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). This requirement assures that the Plaintiffs' claims "are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006); *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. Appx. 94, 100-101 (3d Cir. 2013) (alterations in original) (quoting *In re Comty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg. Loan Litig.*, 622 F.3d 275, 291 (3d Cir. 2010)) (In

determining the adequacy of representation, the court should "'evaluate [both] the named Plaintiffs' and … counsel's ability to fairly and adequately represent class interests.'").

Plaintiffs have no interests adverse to the interests of any other Settlement Class Member and have vigorously prosecuted the Litigation. Plaintiffs and the Settlement Class share common interests with respect to seeking compensation for the alleged harms suffered from Defendants' conduct. By proving their claims, Plaintiffs will help to prove the claims of other Settlement Class Members. *Vines*, 2012 WL 5992114, at *4 ("There is no discernible conflict of interest in the record or otherwise between Vines and the other class members, and given the factual and legal similarities between the claims, Vines is an adequate class representative."). !!

Moreover, Plaintiffs retained competent counsel experienced in the prosecution of consumer protection class actions, who are deeply familiar with the legal and factual issues involved in this matter and highly qualified. Carson Decl. ¶¶ 1-7. Interim Lead Class Counsel diligently prosecuted the claims at issue on behalf of Plaintiffs and the Settlement Class. Carson Decl. ¶ 8.  They invested thousands of hours and nearly $150,000 of out-of-pocket expenses, and their work has included investigating the allegations, drafting the complaints, successfully opposing multiple motions to dismiss and motions to strike class allegations, negotiating discovery disputes, issuing and responding to discovery, briefing and successfully arguing a motion to compel discovery, reviewing and analyzing extensive information and documents produced by Defendants and third parties, and retaining and working with experts.  *Id*. Further, Plaintiffs' counsel engaged in a lengthy and difficult arms-length ADR process with Defendants that included several rounds of mediation. Carson Decl. ¶¶ 35-37.  These facts show the adequacy requirement is satisfied.

     **5.**      **The Predominance and Superiority Requirements of Rule 23(b)(3) Are Met.**

Rule 23(b)(3)'s predominance inquiry "tests whether [a] proposed class[ ] [is] sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide Antitrust Litig*, 552 F.3d 305, 310–11 (3d Cir. 2008). However, "[t]here is a 'key' distinction between certification for settlement purposes and certification for litigation: when taking a proposed settlement into consideration, individual issues which are normally present in litigation usually become irrelevant, allowing the common issues to predominate." *Marchese*, 2016 WL 7228739, at *2 (D.N.J. Mar. 9, 2016; *see Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* FED. R. CIV. P. 23(b)(3)(D), for the proposal is that there be no trial.").

The Third Circuit has reiterated that the focus of the predominance inquiry is on "whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan,* 667 F.3d at 298. Predominance "does not require the absence of all variations in a defendant's conduct or the elimination of all individual circumstances", *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir. 2015), but is determined by whether "the efficiencies gained by class resolution of common issues are outweighed by individual issues." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005).

Here, the common questions of law and fact set forth above predominate over any questions that may affect individual Settlement Class Members. Plaintiffs and the Settlement Class all purchased Defendants' invention promotion services that are the subject of this litigation. Plaintiffs and the Settlement Class have the same interest in establishing liability, and they all seek damages for the same harm. Absent the Settlement, they would rely on the same evidence of Defendants'

violations of law and would rely on class-wide damages models to show the fact and amount of harm. Therefore, the predominance prong of Rule 23(b)(3) is satisfied.

Rule 23(b)(3) also requires a showing that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement is satisfied where, as here, litigating claims in one action is "far more desirable than numerous separate actions litigating the same issues." *In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 259 (3d Cir. 2009); *Hill,* 2020 WL 6785537, at *6 (class action the superior method of adjudication were contents of foreclosure complaint at issue is common to all class members and the class members' claims are identical); *Vines*, 2012 WL 5992114, at *5 (class action superior method for adjudication where all class members have the same grievance against defendant and no class member can be said to have an interest in individually controlling the prosecution or defense of a separate action because of some circumstance unique to the others.)

Because the amount of each individual Settlement Class Member's claim is small relative to the complexity of the litigation and the vast sums required to effectively litigate the matter on an individual basis, no class member would be likely to pursue separate actions for relief. *O'Brien v. Brain Research Labs, LLC,* No. CIV.A. 12-204, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) ("It is not apparent that the money potentially recoverable by an individual class member as compared to the cost to pursue recovery through a lawsuit is sufficient to make individual litigation a realistic possibility.").

Conversely, the Settlement provides the Class Members with the ability to obtain prompt, predictable, and certain relief, and avoids the substantial burdens and risk of inconsistent rulings that would come with repeated adjudication of the same issues in thousands of separate actions. Thus, a class action is the superior method for adjudicating this matter.

All the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied. Certification of the proposed Settlement Class is appropriate.

### D.     The Court Should Approve The Proposed Notice Plan.

Plaintiffs respectfully request that the Court approve the Notice Plan in the Settlement Agreement that provides Settlement Class Members with the reasonable notice to which they are entitled pursuant to FED. R. CIV. P. 23(e) and due process. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998) (the combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class satisfies due process requirements). In addition, because Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), the Court must direct "the best notice practicable under the circumstances, including individual notice to all [class] members who can be identified through reasonable efforts" including by U.S. mail, email, or other appropriate means. FED. R. CIV. P. 23(c)(2)(B).

As detailed above, the Notice Plan includes: (1) direct notice via first-class mail and email; (2) the Settlement Website, and (3) a toll-free Settlement Telephone Number. SA ¶ 74. These methods are designed to reach as many Settlement Class Members as reasonably possible and are more than sufficient to meet the requirements of FED. R. CIV. P. 23 and due process. *See Jackson,* 2014 WL 12600178, at *2 (proposed plan for mailing Class Notice and Claim Form to the last known addresses of class members deemed reasonable notice and settlement website reasonable form of supplemental notice); *Frederick,* 2010 WL 11561286, at *6 (finding reasonable and approving plan for proposed class settlement notice to be delivered to each class member by First Class Mail at the address reflected in the most current records maintained by Defendant); *Giercyk*, *National Union Fire Ins. Co. of Pittsburg*, 2016 WL 7209649, at *3 (D.N.J. Oct. 13, 2016) (notice

plan including mail, settlement website and toll-free telephone number found to be reasonable and to constitute due, adequate and sufficient notice).

The form of Notice of Proposed Class Action Settlement set forth as Exhibit 2 to the Settlement Agreement also meets the necessary requirements set forth in FED. R. CIV. P. 23(c)(2)(B), namely, that the contents of the notice state "in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)." Fed. R. Civ. P. 23(c)(2). Using plain language, the proposed Notice describes, among other things, the nature of the action and claims at issue in the litigation, the definition of the Settlement Class, the benefits of the Settlement, Class Members' rights, including the right to opt-out or object to the settlement, the binding effect of a class judgment, the date of the final approval hearing, and other critical and necessary information for Settlement Class Members to make informed decisions with respect to the Settlement. *See* SA; *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d at 435, as amended (May 2, 2016) (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013)) ("[N]otice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class."); *Hickton*, 2013 WL 12137092, at *2 (finding notices due and sufficient where they "are accurate, objective, and informative and provide Class Members with all of the information necessary to make an informed decision regarding their participation in the Settlement and its fairness."); *Frederick*, 2010 WL 11561286, at *6 (proposed class notice gives class members a fair

opportunity to consider proposed settlement where it "describes in detailed and specific terms the nature of the litigation and the claims asserted, the parties and proposed class members, the terms of the proposed settlement, …the manner in which settlement funds will be distributed between class members and named Plaintiffs…the rights of potential class members, including appropriate information as to how to challenge or opt out of the settlement… [and] the time and place of the proposed fairness hearing and the manner in which class counsel can be contacted.").

The proposed Notice Plan provides the best notice practicable under the circumstances and the proposed Notice of Settlement contains the content required by Fed. R. Civ. P. 23(c)(2). Accordingly, the Court should approve the Notice Plan.

### E. A Final Approval Hearing Should be Scheduled.

Finally, Plaintiffs request that the Court schedule a Final Approval Hearing approximately 115 days after the date of the Preliminary Approval Order to hear argument and make a final determination as to whether the Settlement Agreement is fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e)(2).

## IV. CONCLUSION

Based upon the foregoing reasons, Plaintiffs respectfully request that this Court grant this Motion and enter the Parties' proposed Preliminary Approval Order attached as Exhibit 4 to the Settlement Agreement.

August 19, 2022                                   **BERGER MONTAGUE PC**


                                                  */s/ Shanon J. Carson*
                                                  Shanon J. Carson
                                                  Peter Kahana
                                                  1818 Market Street, Suite 3600
                                                  Philadelphia, PA 19103
                                                  Tel.: (215) 875-3000
                                                  Fax: (215) 875-4604

scarson@bm.net
pkahana@bm.net

*Interim Lead Class Counsel*

**OXMAN LAW GROUP PLLC**

*/s/ Julie Pechersky Plitt*
Julie Pechersky Plitt
Marc S. Oxman
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
(914) 422-3900
(914) 422-3636 (Fax)
jplitt@oxmanlaw.com

*Counsel for Calhoun and Miclaus Plaintiffs*