# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Etta Calhoun, Sherry Porter, and Cynthia Gray, on behalf of themselves and all other persons similarly situated, | No. 2:18-cv-01022 |
| | Magistrate Judge Patricia L. Dodge |
| Plaintiffs, | |
| v. | |
| Invention Submission Corporation d/b/a InventHelp, Technosystems Consolidated Corp., Technosystems Service Corp., Western Invention Submission Corp., Universal Payment Corporation, Intromark Incorporated, Robert J. Susa, Thomas Frost, P.A., Thomas Frost, John Doe Companies 1-10, John Doe Individuals 1-10, | |
| Defendants. | |

This Document Also Relates To:

*Carla Austin, et al. v. Invention Submission Corporation, et al.*, No. 2:19-cv-01396

*Geta Miclaus, et al. v. Invention Submission Corporation, et al.,* No. 2:20-cv-681

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES & SERVICE AWARDS

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................................... 3

    A.    Plaintiffs' Allegations ................................................................................. 3

    B.    Plaintiffs Defeated Motions To Dismiss And Motions To Strike .......................... 4

    C.    Plaintiffs Aggressively Pursued Discovery .................................................. 6

    D.    Plaintiffs Engaged In Arm's-Length Mediation And Settlement Negotiations ...... 7

    E.    The Settlement Provides Significant Material Benefits To Class Members ........... 8

III.  LEGAL ARGUMENT ....................................................................................... 10

    A.    The Proposed Settlement Is Fair And The Requested Fees Are Reasonable ....... 10

    B.    The Fee Request Is Reasonable Under The Lodestar Method ........................... 11

    C.    Plaintiffs' Fee Request Also Satisfies The Percentage-of-Recovery Method ...... 14

    D.    Class Counsel's Expenses Are Reasonable And Should Be Approved ............... 22

    E.    The Court Should Approve The Requested Service Awards .............................. 23

IV.   CONCLUSION ................................................................................................ 24

## TABLE OF AUTHORITIES

Pages

Cases

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ................................................................. 11
*Altnor v. Preferred Freezer Servs.*,
  197 F.Supp. 3d 746 (E.D. Pa. July 18, 2016) ....................................................... 14
*Blum v. Stenson*,
  465 U.S. 886 (1984) ............................................................................................... 13
*Calhoun v. Invention Submission Corp.*,
  No. CV 18-1022, 2019 WL 1547372 (W.D. Pa., Apr. 9, 2019) .............................. 5
*Carroll v. Stettler*,
  No. 10-2262, 2011 WL 5008361 (E.D. Pa. Oct. 19, 2011) ................................... 23
*D.R. by M.R. v. East Brunswick Bd. of Educ.*,
  109 F.3d 896 (3d Cir. 1997) ................................................................................. 11
*Deposit Guar. Nat. Bank, Jackson, Miss v. Roper*,
  445 U.S. 326 (1980) ............................................................................................... 11
*Dungee v. Davison Design & Devt. Inc.*,
  674 Fed.Appx. 153 (3d Cir. 2017) ......................................................................... 12
*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ........................................................................... 10, 11
*Erie Cnty. Retirees Ass'n v. Cnty. of Erie, Pennsylvania*,
  192 F.Supp.2d 369 (W.D.Pa. 2002) ................................................................ 21, 23
*Fleisher v. Fiber Composites, LLC*,
  No. 12-1326, 2014 WL 866441 (E.D. Pa. Mar. 5, 2014) .................................. 12, 13
*Flores v. Express Services, Inc.*,
  No. 14-3298, 2017 WL 1177098 (E.D. Pa. March 29, 2017) ................................ 21
*Frederick v. Range Resources-Appalachia*, LLC,
  No. 08-288, 2011 WL 1045665 (W.D. Pa. Mar. 17, 2011) .............................. 14, 20
*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ................................................................................. 18
*Haught v. Summit Resources, LLC*,
  No. 15-cv-0069, 2016 WL 1301011 (M.D. Pa. Apr. 4, 2016) ............................ 14, 20
*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ............................................................................................... 13
*In re Cendant Corp. PRIDES Litig.*,
  243 F.3d 722 (3d Cir. 2001) ................................................................................. 14
*In re Chambers Dev. Sec. Litig.*,
  912 F.Supp. 852 (W.D.Pa. 1995) ...................................................................... 23, 24
*In re Diet Drugs*,
  582 F.3d 524 (3d Cir. 2009) ................................................................................. 15
*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) ............................................................................. 11, 23

*In re KeySpan Corp. Sec. Litig.*,
   No. CV 2001-5852 (ARR) (MDG), 2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005)............... 18

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   Nos. 18-2012, *et al.*, 814 F. App'x 678 (3d Cir.).................................................... 14

*In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)........................................................................ 11, 14

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)........................................................................ 12, 13

*Jackson v. Wells Fargo Bank, N.A.*,
   136 F.Supp.3d 687 (W.D. Pa. 2015)........................................................... passim

*Kapolka v. Anchor Drilling Fluids USA, LLC*,
   No. 2:18-CV-01007-NR, 2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) ......................... passim

*Kirsch v. Delta Dental of New Jersey*,
   534 F. App'x 113 (3d Cir. 2013) ............................................................................ 22

*Lan v. Ludrof*,
   No. 1:06cv114SJM, 2008 WL 763763 (W.D. Pa. Mar. 21, 2008) .................................. passim

*Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*,
   487 F.2d 161 (3d Cir. 1973)................................................................................ 12

*Palamara v. Kings Family Restaurants*,
   No. 07-317, 2008 WL 1818453 (W.D. Pa. April 22, 2008) ................................... 20

*Pennwalt Corp. v. Plough, Inc.*,
   676 F.2d 77 (3d Cir. 1982)................................................................................ 10

*Perdue v. Kenny A. ex rel Winn*,
   559 U.S. 542 (2010)........................................................................................ 12

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3d Cir. 1990)........................................................................ 13, 22

*Sullivan v. DB Invs., Inc.*,
   667 F.3d 273 (3d Cir. 2011)........................................................................ 10, 18

*Varacallo v. Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 207 (D.N.J. 2005)............................................................................ 15

Statutes

35 U.S.C. § 297........................................................................................................ 4
35 U.S.C. § 297(a)(1)-(5).......................................................................................... 4

Rules

Fed. R. Civ. P. 23.................................................................................................. 11
Fed. R. Civ. P. 23(h) ......................................................................................... 1, 11

## I.     **INTRODUCTION**

Pursuant to Fed. R. Civ. P. 23(h) and as set forth in the Parties' Settlement Agreement[1] and this Court's Order granting preliminary approval of the Settlement (ECF No. 235), Class Counsel respectfully seek the Court's final approval of attorneys' fees in the amount of $1,500,000.00, reimbursement of Class Counsels' out-of-pocket expenses in an amount up to $150,000.00, and modest service awards of $3,000.00 for each of the Class Representatives.

After over four years of hard-fought litigation, Class Counsel secured a significant settlement that combines both economic and remedial relief that directly addresses Plaintiffs' claims in the litigation, including cash and credit relief relating to Class Members' contracts, additional invention promotion services, credit repair and negative tradeline deletion request services, and enhanced processes that Defendants have agreed to implement to ensure that the alleged wrongful conduct will not continue.

This is an excellent result under the circumstances of the case and given the very real risks inherent in continuing to litigate this matter and obtaining less or no benefits for the Class. Indeed, absent the Settlement, Plaintiffs would face significant additional risk including contested class certification proceedings, summary judgment, and establishing liability and damages at trial and sustaining that judgment on appeal. Moreover, based on their extensive investigation into Defendants' financial circumstances, that was described in the preliminary approval briefing and supported by accompanying declarations, (ECF 70-4, 70-5), Plaintiffs determined that continuing to litigate this matter would have the effect of further draining the

---

[1] Unless otherwise stated capitalized terms used herein are as defined in the Class Action Settlement Agreement ("Settlement Agreement") filed with the Court on August 19, 2022 (Dkt. 70-1), and references to "ECF __" are to docket entries in the *Calhoun* action. References to "Carson Decl. ¶___" are to paragraphs in the Declaration of Shanon J. Carson in support of the present Motion, attached hereto as Exhibit A.

finite financial resources that Defendants have available to fund a settlement and compensate Class Members. Thus, instead of continuing with risky, prolonged, and costly additional litigation, Class Members are here provided with tangible, immediate, and substantive benefits.

To achieve this result, Plaintiffs and Class Counsel overcame several rounds of motions to dismiss their pleadings and motions to strike their class allegations; engaged in substantial formal and informal investigation and discovery that began before the filing of the first complaint and continued until the Parties entered into the Settlement Agreement; and participated in multiple mediation sessions and settlement conferences that ultimately led to the Settlement. Class Counsel undertook this work on a purely contingent basis and have received no payment or reimbursement of their expenses for their services.

For their successful efforts, and in consideration of the work already performed on behalf of the Settlement Class and additional work going forward, the requested fee is eminently fair and reasonable considering the total value of the settlement package that was obtained. Moreover, it is also consistent with fees awarded in similar matters, when analyzed under either the "lodestar" or "percentage of the fund" methods recognized in the Third Circuit. Indeed, the requested fee represents far less than the actual lodestar billed by Class Counsel in this litigation (*i.e.*, it represents a *negative* multiplier on Class Counsels' collective current lodestar), decidedly below the range of multipliers commonly accepted in the Third Circuit. The fee is also reasonable when considered as a percentage of the benefits provided to the Class in the Settlement, and the present application more than satisfies the traditional *Gunter/Prudential* factors that courts in this Circuit use to determine the reasonableness of a fee request.

Accordingly, given the many risks assumed, the complexity and amount of work involved, the skill and expertise required, and the excellent benefits achieved for the Class, the Court should approve the requested fee, reimbursement of expenses, and service awards.

## II.    STATEMENT OF FACTS

### A.    Plaintiffs' Allegations

Prior to filing the actions, Class Counsel invested substantial time and resources in investigating Defendants' conduct and the issues relevant to this matter. Carson Decl. ¶5.  On June 1, 2018, the first plaintiff, Etta Calhoun, filed a class action complaint in the U.S. District Court for the Eastern District of Pennsylvania. *Id*. at ¶6. *Calhoun* was subsequently transferred to this Court on July 27, 2018. *Calhoun, et al. v. Invention Submission Corp. d/b/a InventHelp et al.*, No. 18-cv-1022 (W.D. Pa.). Ms. Calhoun asserted claims against Defendants InventHelp, Western InventHelp, Technosystems Consolidated Corporation, Technosystems Service Corporation, Universal Payment Corporation, Intromark Incorporated, Robert J. Susa ("InventHelp Defendants"), as well as Thomas Frost, P.A. and Thomas Frost ("Frost Defendants"). *Id*. at ¶6. Plaintiff filed Amended Complaints on September 18, 2018 and April 29, 2019, adding plaintiffs and modifying causes of action. *Id*.

On October 25, 2019, Plaintiffs Carla Austin and Nil Leone filed their complaint asserting claims against Defendants InventHelp, Western InventHelp, Intromark Incorporated and Technosystems Service Corporation, *Austin, et al. v. Invention Submission Corp., et al.*, No. 19-cv-01396 (W.D. Pa.). *Id*. at ¶7.  Plaintiffs Geta Miclaus and Vim and Kevin Byrne filed a third complaint on May 8, 2020, *Miclaus v. Invention Submission Corp.*, No. 2:20-cv-681 (W.D. Pa.), against the Defendants named in the *Calhoun* action. *Id*. at ¶8.

Plaintiffs collectively allege that the InventHelp Defendants failed to follow the strictures of the American Inventors Protection Act of 1999, 35 U.S.C. § 297 ("AIPA"), by virtue of

3

misrepresentations and omissions in disclosures mandated under the AIPA, and Defendants' misrepresentations of material information about their services. *Id*. at ¶¶9-10.  Plaintiffs allege the InventHelp Defendants failed to provide accurate and complete disclosure information to customers in contravention of the requirements of 35 U.S.C. § 297(a)(1)-(5), and that Defendants failed to provide certain invention promotion services promised to customers with respect to: (a) the introductory Basic Information Package Agreements ("BIP Agreements") that include preparation of bound reports describing customers' inventions and potentially applicable market opportunities, along with optional "Preliminary Patentability Opinions" authored by the Frost Defendants; and (b) the more extensive "Submission Agreements" or "SUB Agreements" under which the InventHelp Defendants agreed to submit prescribed product information to approximately 100 companies, a majority of whom were purportedly registered in the InventHelp Defendants' proprietary "DataBank" as having agreed to review those submissions in confidence and good faith. *Id*. Plaintiffs alleged that the InventHelp Defendants misrepresented material information about these services that caused customers to enter into service contracts that they would not have entered had they known the truth. *Id*.

### B.    Plaintiffs Defeated Motions To Dismiss And Motions To Strike

Defendants moved to dismiss and/or strike Plaintiffs' pleadings at several junctures, arguing that Plaintiffs failed to sufficiently plead their claims and that the class action allegations should be stricken. *Id*. at ¶11.  These efforts were largely unsuccessful as the Court preserved Plaintiffs' core claims and rejected the notion that the Litigation was not suitable for class treatment. *Id*.

Specifically, the InventHelp Defendants moved to dismiss the *Calhoun* Complaint on October 2, 2018. *Id*. at ¶12.  On November 14, 2018, the remaining defendants also filed a motion to dismiss. *Id*.  Following briefing on both motions, on January 3, 2019, U.S. Magistrate

Judge Robert C. Mitchell issued a Report and Recommendation that the motions to dismiss be denied in part and granted in part. *Id*. at ¶13.  Judge Cathy Bissoon entered an Order adopting, modifying, and rejecting the Report and Recommendation in part. *Id*. The Order denied the motion to dismiss with respect to (1) Plaintiff's AIPA claim to the extent it was based upon materially false representations or omissions unrelated to AIPA-mandated disclosures; (2) Plaintiff's fraud, negligent misrepresentation, and breach of contract claims; and (3) Defendants' motion to strike class allegations. *Calhoun v. Invention Submission Corp.*, No. CV 18-1022, 2019 WL 1547372, *10 (W.D. Pa., Apr. 9, 2019). The Court denied the Frost Defendants' motion to dismiss but granted the motion to dismiss of additional patent attorney defendants on jurisdictional grounds. *See* Carson Decl., ¶14.

On April 29, 2019, the *Calhoun* Plaintiffs filed a Second Amended Complaint that was then subject to another motion to dismiss and motion to strike class allegations by the InventHelp Defendants. *Id*. at ¶15.  On January 16, 2020, U.S. Magistrate Judge Patricia L. Dodge entered a Report and Recommendation that Plaintiffs' claims alleging violations of the AIPA by virtue of misrepresentations in the InventHelp Defendants' AIPA-mandated disclosures should be upheld. *Id*. Magistrate Judge Dodge also recommended that the AIPA claims against Defendant Robert Susa individually should stand. Finally, Magistrate Judge Dodge recommended that the InventHelp Defendants' motion to strike the class allegations be denied, finding that the allegations that putative plaintiffs "all signed identical contracts and paid for the same services, they all received false and misleading AIPA-mandated disclosures and were all subjected to the same course of fraudulent conduct" were sufficient class allegations at the pleading stage. ECF No. 78. By Order dated March 25, 2020, Judge Bissoon adopted in full Magistrate Judge Dodge's Report and Recommendation. ECF 96.

The Defendants in *Austin* also moved to dismiss and to strike the class allegations. Carson Decl., ¶18.  Following briefing, on April 13, 2020, Magistrate Judge Dodge issued a Report and Recommendation denying the motion with the limited exception of dismissing Technosystems Service Corp. and Intromark Incorporated. *Id*. Judge Bissoon adopted in full Magistrate Judge Dodge's Report and Recommendation. *Id*. at ¶20.

Defendants also filed a partial motion to dismiss Count I of the *Miclaus* Complaint, related to the InventHelp Defendants' alleged omissions in AIPA-mandated disclosures. *Id*. at ¶21.  By Report and Recommendation dated March 8, 2021, Magistrate Judge Dodge found Plaintiffs' allegations sufficient to proceed into discovery. *Id*. Judge Bissoon adopted that Report and Recommendation on June 29, 2021. *Id*.

### C.      Plaintiffs Aggressively Pursued Discovery

By Order dated July 15, 2020, the *Calhoun*, *Austin*, and *Miclaus* cases were consolidated for discovery and other pretrial proceedings. *Id*. at ¶22. On August 25, 2020, the Court entered an Order appointing Shanon J. Carson and Peter R. Kahana of Berger Montague PC as interim lead class counsel. *Id*.  Thereafter, Berger Montague worked cooperatively and efficiently with Oxman Law to coordinate discovery, avoid duplication of effort, and minimize expenses. *Id*.

Class Counsel then aggressively pursued discovery, which commenced on September 22, 2020, propounding multiple sets of document requests and interrogatories. *Id*. at ¶23. As a result of Class Counsel's efforts, Defendants produced nearly 60,000 pages of documents in response to these requests. *Id*. at ¶25.  Class Counsel also negotiated the terms pursuant to which the InventHelp proprietary Data Bank and related materials would be produced for inspection (ultimately agreeing to a Stipulated Order entered by the Court on May 3, 2021), and retained expert witnesses who completed a forensic analysis of the Data Bank and sampling of the Data Bank companies, and identified former employees knowledgeable about the Data Bank. *Id*. at

¶¶26, 29. Class Counsel also engaged in extensive negotiations regarding custodians and search terms to be applied to the InventHelp Defendants' Electronically Stored Information. *Id*. at ¶26. In addition, and as further set forth below, Class Counsel conducted extensive discovery surrounding Defendants' financial circumstances prior to entering into the Settlement Agreement. *Id*. at ¶¶27-29, 34.

**D.    Plaintiffs Engaged In Arm's-Length Mediation And Settlement Negotiations**

Prior to entering into the Settlement Agreement, the Parties engaged in multiple mediation sessions. Before each session the Parties exchanged targeted, confidential discovery to aid the mediation process. The initial settlement discussions began in June 2020, with the parties holding their first mediation session before the Hon. Diane Welsh (Ret.) of JAMS on June 4, 2020. *Id*. at ¶31.  The Parties participated in a second full-day session on July 2, 2020 but did not reach a settlement. *Id*.

After returning to formal discovery, the parties then engaged in further ADR beginning in August 2021, with Magistrate Judge Lenihan of this Court as the mediator. *Id*. at ¶¶32-33. Following this mediation session, Judge Lenihan made a Mediator's Proposal. *Id*. After numerous additional arm's-length negotiations between counsel (overseen by Judge Lenihan), the Parties finally reached a class-wide settlement based on the Mediator's Proposal that, pending the Court's final approval, fully and finally resolves the claims of Plaintiffs and the Settlement Class. *Id*.

Importantly, Class Counsel entered into the Settlement Agreement with a full appreciation of Defendants' financial circumstances and having come to the informed conclusions that (1) Defendants do not have the resources to further compensate Settlement Class Members, and (2) an adverse judgment in excess of the amount anticipated to be paid out in the proposed Settlement could lead Defendants into bankruptcy. *Id*. at ¶34. Class Counsel came to this understanding only through aggressively investigating Defendants' financial circumstances, including analyzing

detailed confidential information such as income statements, balance sheets, statements of income/expenses, details supporting business expenses (including, but not limited to, advertising expenses, detailed payroll expenses, benefit expenses, trade show attendance information, commission payouts), tax return information, and information relating to matters such as corporate structure and profitability. *Id*. Class Counsel also successfully moved to compel, and thereafter obtained and analyzed, potentially relevant insurance policies and other related information to determine if there were policies in place that would potentially cover a judgment against Defendants in this litigation. *Id*. at ¶¶27-28.  Counsel also hired experts to review and analyze these materials as they related to Defendants' financial wherewithal. *Id*. at ¶29.

Based on the foregoing, it became clear that continuing to litigate this matter would further drain the financial resources that Defendants would have available to fund a settlement and that it was in the best interests of the Settlement Class to enter into the Settlement Agreement.

**E.    The Settlement Provides Significant Material Benefits To Class Members**

The Settlement, which was preliminarily approved by the Court on August 24, 2022, is not only fair, reasonable, and adequate, but also provides an excellent result for Plaintiffs and Settlement Class Members given the circumstances. Notably, and as fully set forth in the Settlement Agreement, these benefits include:  (a) $3 million to be paid into a Gross Settlement Fund; (b) $20 cash *outside the Gross Settlement Fund* for each customer who fully paid for their BIP Agreement ("BIP Agreements Fully Paid"); (c) $20 credit *outside the Gross Settlement Fund* against the outstanding balance for each customer who has not fully paid their BIP Agreement ("BIP Agreements Not Fully Paid"); (d) election of an $800 credit *outside the Gross Settlement Fund* against the outstanding balance or services valued at not less than $3,000 for each of the SUB customers who have SUB Agreements that are not fully paid and open ("SUB Agreements Not Fully Paid and Open"); (e) up to a $1,500 credit *outside the Gross Settlement Fund* against the

outstanding balance for each of the SUB customers who have SUB Agreements not fully paid and closed ("SUB Agreements Not Fully Paid and Closed"); and (f) a *pro rata* payment of up to $250 from the Net Settlement Fund <u>and</u> services valued at not less than $3,000 for each of the SUB customers who have SUB Agreements that are fully paid ("SUB Agreements Fully Paid"). Settlement Agreement, ¶¶ 65-70.  Further, Settlement Class Members who entered into more than one contract for services are entitled to relief as to each contract, except that SUB Agreement customers are only entitled to relief based upon their SUB Agreements, not earlier, subsumed BIP Agreements. *Id*. at ¶¶ 69.

The Settlement Agreement further provides certain Settlement Class Members with credit repair assistance with Consumer Reporting Agencies. *Id*. at ¶67.  Class Counsel also successfully obtained important changes to the InventHelp Defendants' policies, including meaningful changes to Defendants' advertising and safeguards concerning InventHelp's proprietary "DataBank." *Id*. at ¶21.

As of December 15, 2022, it has been reported that at least 5,787 claims have already been submitted to and approved by the Court-appointed Settlement Administrator, demonstrating the effectiveness of the notice program and the positive reaction of the Settlement Class to the Settlement. Moreover, the Settlement Agreement provides for all Class Members with SUB Agreements Not Fully Paid and Closed contracts, who do not opt out of the Settlement, to *automatically* receive (without having to file a claim form) a credit of up to $1,500 against any outstanding balance they may owe the InventHelp Defendants.

Pursuant to the Settlement Agreement, Class Counsel now respectfully requests that the Court approve $1,500,000.00 as attorneys' fees, plus reimbursement of Counsels' expenses in an amount up to $150,000.00 (which includes amounts already incurred and amounts anticipated to

be incurred prior to the conclusion of this action), and $3,000.00 service awards for each Class Representative.  The attorneys' fees requested will compensate Class Counsel for all work already performed, as well as all of the remaining work that still remains to be completed in connection with the Settlement, which includes, without limitation, ensuring that the Settlement is fairly administered and implemented, preparing for and attending the Final Approval Hearing, and obtaining dismissal of the consolidated actions. The requested attorneys' fees and costs are in accordance with Third Circuit law, and accordingly, Class Counsel's application should be granted.[2]

## III.   LEGAL ARGUMENT

### A.    The Proposed Settlement Is Fair And The Requested Fees Are Reasonable

The Third Circuit has long had a "strong presumption in favor of voluntary settlement agreements, which [it has] explicitly recognized with approval." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010) (*citing Pennwalt Corp. v. Plough, Inc.* 676 F.2d 77, 79-80 (3d Cir. 1982)); *accord Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 311 (3d Cir. 2011); *Shop-Vac Mktg. & Sales Practices Litig.*, No. 2380, 2016 U.S. WL 7178421, at *8 (M.D. Pa. Dec. 9, 2016). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 595; *see D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997). "The law [in this Circuit] favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re General*

---

[2] Class Counsel's fee and expense application is supported by the accompanying Declaration of Shanon J. Carson attached as Exhibit A, and the Declaration of Julie Pechersky Plitt  ("Plitt Decl. ¶__") attached as Exhibit B.

*Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) (citing cases).

The Supreme Court has observed that, without the possibility of recovering an attorneys' fee, most class actions would never be filed. *Deposit Guar. Nat. Bank, Jackson, Miss v. Roper*, 445 U.S. 326, 339 (1980) (observing that "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved person may be without any effective redress unless they may employ the class action device"); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1216-17 (S.D. Fla. 2006) (parallel citations omitted). An award of attorneys' fees is within the sound discretion of the Court. Fed. R. Civ. P. 23(h). "Absent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 of the Federal Rules of Civil Procedure will be undermined and subverted to the interests of those lawyers who would prefer to take minor sums to serve their own self-interest rather than obtaining real justice on behalf of their injured clients." *Allapattah Services, Inc.* 454 F. Supp. 2d at 1217.

In the Third Circuit, there are two conventional methods of calculating attorneys' fees in class actions — the percentage of recovery method and the lodestar method. *See, e.g.*, *In Re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998). Whichever method is chosen, the use of the other to cross-check the fee calculation is recommended. *Jackson v. Wells Fargo Bank, N.A.*, 136 F.Supp.3d 687, 712 (W.D. Pa. 2015). Here, under either method, Class Counsel's fee request should be approved.

### B.   The Fee Request Is Reasonable Under The Lodestar Method

The lodestar method is a well-established practice for determining the reasonableness of fees in class action settlements in federal courts, and in cases like this one. *See Dungee v. Davison Design & Devt. Inc.*, 674 Fed.Appx. 153 (3d Cir. 2017) (directing award of attorneys' fees pursuant

to lodestar method in AIPA case). The method may be more appropriately applied where the nature of the settlement makes it difficult to make a precise calculation of the value of the settlement. *Id*. at 156. "The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). "Developed after the practice of hourly billing had become widespread, the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel Winn*, 559 U.S. 542, 551 (2010) (internal citation omitted).

To weigh the appropriateness of a lodestar calculation, courts use a two-step process. First, the "court ascertain[s] the lodestar figure by multiplying the number of hours reasonably worked by the reasonable normal hourly rate of counsel." *Fleisher v. Fiber Composites, LLC*, No. 12-1326, 2014 WL 866441, at *14 (E.D. Pa. Mar. 5, 2014) (citing *Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167-68 (3d Cir. 1973)). Second, the court may adjust the lodestar "to take into account, among other things, the result achieved, the quality of the representation, the complexity and magnitude of the litigation, and public policy considerations." *Id.* at *41 (citing *In re Rite Aid,* 396 F.3d at 305-06).

Once the court determines the reasonable hourly rate, "it multiplies that rate by the reasonable hours expended to obtain the lodestar […] [which] is presumed to be the reasonable fee." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Blum v. Stenson*, 465 U.S. 886, 897 (1984)). Once a lodestar is determined, "the district court has the discretion to make certain adjustments to the lodestar." *Id*. "Where a plaintiff has obtained excellent results, his

12

attorney should recover a fully compensatory fee. Normally, this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

Here, Class Counsel in Exhibits A and B attached hereto, have reported their lodestar using the method endorsed by the Third Circuit. Based on these figures, Class Counsel's current lodestar is approximately $5,659,256.50. Carson Decl., ¶50. This figure does not include the costs of preparing papers for and appearing at the Final Approval Hearing, or for work relating to claims administration and communicating with Settlement Class Members during the rest of the litigation. *Id.* The fee amount requested of $1.5 million represents a negative lodestar multiplier of approximately only 26.5% of Class Counsel's collective lodestar. Class Counsel is requesting a negative multiplier here because that is what was agreed to with Defendants after the parties finalized their negotiation over the substantive terms of the Settlement Agreement that was ultimately adopted as part of the mediation process overseen by Magistrate Judge Lenihan, even though Class Counsel devoted substantial time and effort on this complex matter for over four years and negotiated a settlement that delivers significant monetary and remedial benefits and has been well received by the Settlement Class.

Class Counsel's negative multiplier is well below the range of multipliers routinely approved by courts in the Third Circuit. *See e.g.*, *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 742 (3d Cir. 2001) (citing *In re Prudential*, 148 F.3d at 341) (positive multipliers ranging from one to four frequently awarded); *In re Nat'l Football League Players' Concussion Injury Litig.*, Nos. 18-2012, *et al.*, 814 F. App'x 678, 683, n.8 (3d Cir.) ("multiplier of 2.96…within the acceptable range in this Circuit"); *Frederick v. Range Resources-Appalachia*, LLC, No. 08-288, 2011 WL 1045665, at *13 (W.D. Pa. Mar. 17, 2011) (approving attorneys' fees that reflected 5.95

multiplier and acknowledging that courts in the Third Circuit frequently approve multipliers from 1 to 4 and multipliers in excess of this range are "not completely unusual."); *Lan v. Ludrof*, No. 1:06cv114SJM, 2008 WL 763763, at *27 (W.D. Pa. Mar. 21, 2008) (awarding multiplier of 3.04).

When, as here, the requested fee represents a lodestar multiplier of *less than one*, it "reveals that the fee request constitutes only a fraction of the work that the attorneys billed and thus favors approval." *Altnor v. Preferred Freezer Servs.*, 197 F.Supp. 3d 746, 767 (E.D. Pa. July 18, 2016). "A negative lodestar multiplier is thus 'below the range found to be acceptable by the Third Circuit.' Thus, because the lodestar amount is more than the requested attorneys' fee award, the multiplier indicates that the award is reasonable on its face." *Haught v. Summit Resources, LLC*, No. 15-cv-0069, 2016 WL 1301011, at *12 (M.D. Pa. Apr. 4, 2016) (internal citations omitted).

Accordingly, Class Counsel respectfully submits that the requested fee is fair and appropriate, and given the negative multiplier, reasonable on its face, and should be granted.

**C.    Plaintiffs' Fee Request Also Satisfies The Percentage-of-Recovery Method**

The Third Circuit has established criteria to calculate attorneys' fees if determined by the percentage-of-recovery method. Known as the *Gunter/Prudential* factors, these criteria are:

1. The size of the fund and the number of persons benefitted;
2. Whether members of the class have raised substantial objections to the settlement terms or fee proposal;
3. The skill and efficiency of the attorneys involved;
4. The complexity and duration of the litigation;
5. The risk of nonpayment;
6. The amount of time devoted to the case by Plaintiffs' counsel;
7. The fee awards in similar cases;
8. The value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;
9. The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained;
10. Any innovative terms of settlement.

14

*In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009). "Determining an appropriate award, however, is not an exact science." *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 248 (D.N.J. 2005) (internal citations omitted). In cases like this one, the *Gunter/Prudential* factors help weigh the reasonableness of the requested fee award, and here, strongly support the requested fee.

The first *Gunter/Prudential* factor is the size of the fund and the number of persons who will benefit. Here, the Settlement delivers substantial economic and non-economic benefits to the Settlement Class as well as enhanced processes to be implemented by the InventHelp Defendants to the benefit of current and future customers. Carson Decl. ¶¶35-38. As described more fully in the Parties' Settlement Agreement, the settlement relief includes:

1.      $3 million to be paid into a Gross Settlement Fund;

2.      $20 cash *outside the Gross Settlement Fund* for each customer who fully paid for their BIP Agreement that submits a Claim Form deemed timely and valid by the Settlement Administrator. 29,478 fully paid BIP Agreements fall into this category;

3.      $20 credit *outside the Gross Settlement Fund* against the outstanding balance for each customer who has not fully paid for their BIP Agreement that submits a Claim Form deemed timely and valid by the Settlement Administrator. 7,404 not fully paid BIP Agreements fall into this category;

4.      An election of an $800 credit *outside the Gross Settlement Fund* against the outstanding balance or services valued at not less than $3,000 for each of the SUB customers who have SUB Agreements that are Not Fully Paid and Open that submit a Claim Form deemed timely and valid by the Settlement Administrator. 3,411 SUB Agreements Not Fully Paid and Open fall into this category;

15

5.      Up to a $1,500 credit *outside the Gross Settlement Fund* against the outstanding balance for each of the SUB customers who have SUB Agreements Not Fully Paid and Closed. 4,487 SUB Agreements Not Fully Paid and Closed fall into this category;

6.      A *pro rata* payment of up to $250 from the Net Settlement Fund <u>and</u> services valued at not less than $3,000 for each of the SUB customers who have SUB Agreements that are Fully Paid and that submit a Claim Form deemed timely and valid by the Settlement Administrator. 10,325 SUB Agreements Fully Paid fall into this category; and

7.      Credit repair & negative tradeline deletion request services.

SA, ¶¶ 65-70 (describing more fully the above Settlement Relief); Carson Decl. ¶¶35-37.

As of December 15, 2022, the Settlement Administrator has reported that Settlement Class Members have already submitted over 5,787 claims, with three weeks remaining in the claims period. Class Counsel will provide the Court with updated information in advance of the Final Approval Hearing concerning the claim rates and settlement value, but it is already apparent that the notice program was effective and that the Settlement will result in monetary relief to the Settlement Class that is many multiples of the $1.5 million fee award requested.  Indeed, just (a) the $3 million Gross Settlement Fund, (b) that 4,487 Class Members with SUB Agreements Not Fully Paid and Closed are automatically entitled to receive a credit of $1,500 without having to submit a claim form, and (c) the additional monetary relief outside of the Gross Settlement Fund, will place the Settlement value at more than 6x the fee award requested. Class Counsel will report at the Final Approval Hearing as to the estimated value of the Settlement following the claims process.

Of course, the monetary benefits do not take into account the additional value of the remedial and forward-looking benefits in the Settlement, including credit repair assistance and

changes to Defendants' policies and procedures. For these reasons, the requested fee will represent *far less than 1/3 of the total settlement value*. This is well below the range of percentage recoveries awarded in similar matters. *See e.g., Lan,* 2008 WL 763763, at *19 (noting Third Circuit authority suggesting typical range of fee awards is 19%-45% of settlement fund).

The second *Gunter/Prudential* factor is whether members of the Settlement Class have raised substantial objections to the settlement terms or fee proposal. Pursuant to the Settlement Agreement and the Court's Preliminary Approval Order, notice of the Settlement was issued to Settlement Class Members on November 7, 2022. Settlement Class Members have the right to object to the fairness, reasonableness, or adequacy of the Settlement by January 6, 2023 (60 days later). As of the date of this filing, there have only been 4 objections received from over 55,105 BIP and SUB Agreements Class Members (*i.e.*, 0.007259% of the total number of Class Members have submitted an objection to date).[3] At the same time, the Settlement Administrator has already received 5,787 claims. Thus, the objection rate is miniscule. The *de minimus* number of objections will be addressed in Plaintiffs' Motion for Final Approval of the Settlement following the end of the claims period. *See Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 321 (3d Cir. 2011) (reviewing the *Girsh v. Jepson*, 521 F.2d 153, 158 (3d Cir. 1975) factors for settlement fairness and finding "the minimal number of objections and requests for exclusion are consistent with class settlements we have previously approved."); *Jackson*, 136 F.Supp.3d at 714 (where quantity and content of objections "simply insubstantial" factor supports fee request).  As such, this factor strongly supports Class Counsels' fee request.

---

[3] Further, only one of the objections received to date relates to attorneys' fees, which Class Counsel will address at the Court's Final Approval Hearing.

The third *Gunter/Prudential* factor, the skill and efficiency of the attorneys involved, was detailed in Class Counsels' prior motions for the appointment of interim class counsel. Lead Class Counsel is nationally recognized in consumer class action cases, and they put all of their skill and experience to work in the service of Plaintiffs and Settlement Class Members in this case. Lead Class Counsels' highly-informed, diligent, and efficient prosecution of this matter positioned Plaintiffs to successfully resolve this case, affording them redress, while avoiding the expense and risk attendant with a trial and possible appeal. *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-CV-01007-NR, 2019 WL 5394751, at *9 (W.D. Pa. Oct. 22, 2019) (Plaintiffs' counsels' considerable skill and experience likely facilitated settlement of case).

The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.[4] Here, the InventHelp Defendants are represented by very skilled and formidable attorneys from K&L Gates, LLP, a global law firm with over 1,800 attorneys and substantial resources. These attorneys demonstrated vigorous advocacy in the defense of this case. Accordingly, the third factor strongly supports the requested fee. *Lan*, 2008 WL 763763, at *23 ("[F]ormidable opposition" throughout course of litigation supports fee request).

The fourth *Gunter/Prudential* factor, the complexity and duration of the litigation, is also supported by the facts of this matter and how it was litigated. Prior to filing the case, Class Counsel expended time and resources investigating the facts and law relating to Defendants' conduct and the AIPA, obtaining and reviewing documents provided by potential plaintiffs. After the case was filed in June 2018, Class Counsel successfully organized and coordinated additional clients for amended and additional complaints, successfully opposed Defendants' various motions to dismiss

---

[4] *In re KeySpan Corp. Sec. Litig.*, No. CV 2001-5852 (ARR) (MDG), 2005 WL 3093399, at *11 (E.D.N.Y. Sept. 30, 2005) ("The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work.").

and motions to strike class allegations, vigorously pursued discovery, and participated in an extensive ADR process including three days of mediations before Judge Diane Welsh (Ret.) and then Judge Lenihan. In connection with the discovery and ADR, Class Counsel obtained and reviewed tens of thousands of pages of discovery documents and engaged in numerous and intense negotiations with the InventHelp Defendants and their counsel that took place over the course of many months. In addition, Class Counsel negotiated the Settlement, argued for and received preliminary approval of the Settlement Agreement, and aided in the dissemination of notice to the Settlement Class. Under these circumstances, the complexity and duration of this matter counsel in favor of approving the fee request. *Jackson*, 136 F.Supp.3d at 714 (fees supported when "matter was initiated nearly 3 years ago and has involved several complex questions of law and fact").

In class action cases where the case is typically based upon a contingency fee, the fifth *Gunter/Prudential* factor, "the risk of nonpayment" for hours expended is high. Class Counsel here likewise assumed a huge risk in filing and litigating this matter on a fully contingent basis, investing time, effort, and money with no guarantee of any recovery. *Kapolka*, 2019 WL 5394751, at *9 (finding that counsel incurred significant risk of nonpayment, favoring fee request, where they represented plaintiffs on "contingent basis and invested considerable time and resources litigating this case and negotiating with Defendants, all with no guarantee of recovery."). Class Counsel also proceeded knowing that there was a chance that even if Plaintiffs prevailed, Plaintiffs would be unable to enforce any judgment due to Defendants' financial resources and claim that a judgment could lead them into bankruptcy. The risk of no recovery here was very real, as was the risk that Class Counsel, after devoting thousands of hours of attorney time and advancing significant sums in out-of-pocket expenses, would receive no compensation whatsoever. *See, e.g., Palamara v. Kings Family Restaurants*, No. 07-317, 2008 WL 1818453, at *5 (W.D. Pa. April 22,

2008) (given "obstacles to obtaining a favorable verdict...the risk that class counsel would not be compensated for their work has been real and substantial" which weighs in favor of approving the requested fee).

The sixth factor, the substantial amount of time devoted to the case by counsel, discussed above, is well established by Class Counsel's contemporaneously logged time and expense records (which are reflected in the accompanying Declarations of Class Counsel). *See* Exhibits A and B. These records strongly support Class Counsel's fee request. *Kapolka*, 2019 WL 5394751, at *10 (W.D.Pa. 2019) (substantial devotion of time and effort favors approving percentage award); *Frederick*, 2011 WL 1045665, at *12 (noting "significant investment of time and resources"). Further, as discussed above, the negative multiplier for Class Counsel's requested fee demonstrates the reasonableness of the request on its face. *Haught*, 2016 WL 1301011, at *12.

The seventh factor, the fee awards in similar cases, also strongly supports approval of Class Counsel's fee request. The requested fee represents far less than one-third of the value of the monetary benefits in the Settlement, which is well below the percentage fees awarded in similar matters. *See, e.g.*, *Kapolka*, 2019 WL 5394751, at *9 (35% requested fee within "ballpark range"); *Jackson*, 136 F. Supp. 3d at 713 (awarding 25.6% of constructive common fund in attorneys' fees); *Lan*, 2008 WL 763763, at *24 (W.D. Pa. 2008) (25% of gross settlement fund is reasonably modest and well within range that courts have awarded in similar cases); *Erie Cnty. Retirees Ass'n v. Cnty. of Erie, Pennsylvania,* 192 F.Supp.2d 369, 383 (W.D.Pa. 2002) (granting fee request representing 38% of total fund).

The eighth factor, the value of benefits attributable to the efforts of Class Counsel relative to the efforts of other groups, strongly supports the fee request. Class Counsel achieved this Settlement through their experience, skill, and effort. There was no government investigation or

inquiry by another group or association exposing AIPA disclosure violations and/or fraud that Plaintiffs relied on in bringing suit. *See Lan*, 2008 WL 763763, at *25 (benefits achieved in settlement "attributable predominantly, if not exclusively, to the efforts of Class Counsel who initiated their own investigation and prosecuted this action against highly skilled defense counsel"); *Jackson*, 136 F.Supp.3d at 715 (W.D. Pa. 2015) (settlement "purely is the product of the effort of class counsel"); *Flores v. Express Services, Inc.*, No. 14-3298, 2017 WL 1177098, at *4 (E.D. Pa. March 29, 2017) ("Only class counsel, and no other group or agency, has performed work on behalf of the class").

The ninth *Gunter/Prudential* factor, a comparison of the fee to a percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained also supports the requested fee. As described above, Plaintiffs' requested fee represents far less than one-third of the economic benefits that will be provided to Settlement Class Members. This is significantly less than the fee percentage typically negotiated in private contingency fee cases, which routinely fall between one-third to forty percent of any recovery. *Kapolka*, 2019 WL 5394751, at *10; *Jackson*, 136 F.Supp.3d at 715 (typical contingent fee is 33%). Once again, the claims period is still open, and the current percentage attributable to the requested fee will likely only decrease as more claims are submitted.

Finally, the tenth *Gunter/Prudential* factor captures the essence of this Settlement Agreement. The terms here are innovative and beneficial for Settlement Class Members, providing individualized relief depending upon which package the Class Member purchased and their current payment status. The innovative terms of the Settlement provide significant relief to Class Members with less difficulty and no need for expensive, risky, and time-consuming litigation.

As set forth above, Third Circuit law regards both the percentage and lodestar methods as acceptable ways to calculate fees for class counsel in class action settlements, and often uses the lodestar as a cross-check for the reasonableness of a fee request. *Cf. Kirsch v. Delta Dental of New Jersey,* 534 F. App'x 113, 115 (3d Cir. 2013) (finding that the requested fee was reasonable calculated as a percentage fee award of 33%, using the lodestar method as a cross-check. "In fact, the District Court concluded that, based on the difficulty of the case and the resulting benefits to the class, the agreed upon fee was 'indeed a modest one.'").

Here, as the Court is aware, this case involved a substantial amount of work to bring it to successful conclusion. Since 2018, Plaintiffs conducted an extensive investigation, successfully organized and coordinated additional clients for amended and additional complaints, opposed Defendants' motions to dismiss, and participated in an extensive ADR and mediation process that included substantial discovery so that the Parties could negotiate on an entirely informed basis.

Here, a lodestar cross-check strongly supports the reasonableness of the requested fees as it will result in a significant *negative* multiplier. "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *Kirsch*, 534 F. App'x at 117. This is due in part to the fact that a lodestar calculated by multiplying a reasonable hourly rate by reasonable hours expended results in a presumably reasonable fee. *Rode*, 892 F.2d at 1183.

### D.      Class Counsel's Expenses Are Reasonable And Should Be Approved

In addition to attorneys' fees, it is well-settled that Class Counsel is "entitled to reimbursement of reasonable litigation expenses." *E.g., Carroll v. Stettler*, No. 10-2262, 2011 WL 5008361, at *9 (E.D. Pa. Oct. 19, 2011) (*citing In re General Motors Corp*, 55 F.3d at 820, n.39); *In re Chambers Dev. Sec. Litig.*, 912 F.Supp. 852, 863 (W.D.Pa. 1995) (finding plaintiffs' counsel

was entitled to be reimbursed for all reasonable expenses necessary for the successful prosecution of the litigation).

Here, Class Counsel's out-of-pocket expenses incurred in this litigation collectively total $145,335.08 to date. *See* Carson Decl. ¶¶51, 54-55. The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as copying fees, expert fees, computerized research, travel in connection with this litigation, and the costs of mediation. All of the expenses were reasonable and necessary for the successful prosecution of this case and should be approved. *Erie Cnty.*, 192 F.Supp.2d at 384 (awarding $11,618.14 for expenses incurred in copying, filing fees, postage, mileage, parking, on-line research and consultations, and finding such expenses "reasonable and appropriate" in the course of the litigation). Further, Class Counsel will incur additional expenses on this case going forward, including working with the Settlement Administrator, communicating with Settlement Class Members, overseeing the settlement administration process, drafting the Motion for Final Approval of the Settlement, and attending the Final Approval Hearing. As a part of their Settlement Agreement, the parties agreed that Plaintiffs would seek reimbursement of up to $150,000.00 in out-of-pocket expenses. Settlement Agreement, ¶90. Class Counsel accordingly requests that the Court approve reimbursement of their out-of-pocket expenses as set forth in the accompanying proposed Order.

## E.    The Court Should Approve The Requested Service Awards

Finally, the Settlement Agreement permits the Class Representatives in the litigation to apply for modest service awards of $3,000.00 each. Such an award is designed to compensate representatives of the class for the additional risk and inconvenience they take on in joining the lawsuit as named parties and should be awarded if reasonable. *In re Chambers*, 912 F.Supp. at 863; *Kapolka*, 2019 WL 5394751, at *13 (awarding $5,000 service payments to named plaintiffs

and noting that amount is consistent with "if not lower" than awards regularly provided in common fund cases); *Lan,* 2008 WL 763763, at *18 (approving "modest" incentive awards of $5,000 and $2,000 and noting that such amounts are consistent with or less than traditional amounts awarded in class action settlements, citing authority supporting $5,000-$20,0000 award range).

Accordingly, the amounts requested for the Class Representatives here are well within, if not less than, the range of awards typically granted in similar matters. The amount is also well justified given these Plaintiffs' significant contributions to the litigation and the Settlement, including by retaining counsel, assisting in preparing the complaints, and gathering records and assisting in the preparation of discovery responses, and in the mediation/settlement process. *See* Carson Decl. ¶¶57-59. Thus, the $3,000.00 service awards requested are reasonable and merit approval.

## IV.   <u>CONCLUSION</u>

Based upon the foregoing reasons, Plaintiffs respectfully request that the Court approve the requested attorneys' fees, reimbursement of expenses, and service awards in accordance with the Settlement Agreement.

Dated: December 16, 2022   Respectfully submitted,

<u>/s/ Shanon J. Carson</u>
Shanon J. Carson
Peter R. Kahana
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Email: scarson@bm.net
Email: pkahana@bm.net

*Lead Class Counsel on behalf of Plaintiffs and the Settlement Class*

Julie Pechersky Plitt *(by pro hac vice)*

Marc S. Oxman *(by pro hac vice)*
OXMAN LAW GROUP, PLLC
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
Telephone: (914) 422-3900
Email: jplitt@oxmanlaw.com
Email: moxman@oxmanlaw.com

*Class Counsel on behalf of Plaintiffs and the
Settlement Class*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing pleading was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to all attorneys of record on this the 16th day of December, 2022.

Dated: December 16, 2022                    Respectfully submitted,

                                            /s/ Shanon J. Carson
                                            Shanon J. Carson
                                            BERGER MONTAGUE PC
                                            1818 Market Street, Suite 3600
                                            Philadelphia, PA 19103
                                            Tel: (215) 875-3000
                                            Email: scarson@bm.net

                                            *Lead Class Counsel on behalf of Plaintiffs and the Settlement Class*

26